IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | CASE NO. |
| **PALMAZ SCIENTIFIC INC.,** | § | |
| | § | Chapter 11 |
| Debtor. | § | |

**UNSWORN DECLARATION UNDER PENALTY OF PERJURY OF DR. EUGENE SPRAGUE IN SUPPORT OF FIRST DAY MOTIONS**

I am the sole Director on the Board of Directors of Palmaz Scientific Inc. ("**Palmaz Scientific**," "**PSI**" or "**Debtor**"), the above-captioned debtor and debtor-in-possession. I am also the Designated Officer of Debtor in connection with the above-captioned chapter 11 case.

In my capacity as Director and Designated Officer, I am familiar with the day-to-day operations, business affairs, and books and records of Palmaz Scientific.

I.
BACKGROUND

A. **What is Palmaz Scientific?**

1. Palmaz Scientific is a research and development company dedicated to the advancement of the technology and science of medical implants.

2. Palmaz Scientific's corporate headquarters is at 18618 Tuscany Stone, Suite 100, San Antonio, Texas, 78258. Palmaz Scientific's research and development operations are at 3065 Skyway Court, Fremont, California, 94539.

B. **Palmaz Scientific Corporate Structure**

3. Palmaz Scientific is a Delaware corporation formed on February 12, 2008.

4. Palmaz Scientific is owned by over 300 shareholders.

49666237.4

- 1 -

5. Palmaz Scientific has three direct affiliates: Advanced Bio Prosthetic Surfaces, Ltd. ("**ABPS**"), ABPS Venture One, Ltd. ("**Venture One**") and ABPS Management, LLC ("**ABPS Management**"). Palmaz Scientific is the 100% member owner of ABPS Management. ABPS Management serves as the General Partner and one percent limited partner in ABPS. Palmaz Scientific owns the remaining 99% limited partnership interest in ABPS. Palmaz Scientific owns an 80% member interest in Venture One. The other 20% of Venture One is owned by Dr. Steve Bailey.

C. **Palmaz Scientific Assets**

6. Palmaz Scientific believes its most valuable assets are (i) its own patent portfolio, (ii) its ownership of ABPS with ABPS's valuable patent portfolio, (ii) its specialized equipment and tools, and (iii) its remaining key employees, who are essential to the ability of any buyer to quickly and efficiently benefit from Palmaz Scientific's extensive patent portfolio.

7. Together Palmaz Scientific and its affiliates own 256 issued United States and international patents and 182 active U.S. and international pending patent filings on its technologies including thin-film technologies and physical vapor deposition process innovations to produce more reliable implantable prosthetic devices. Palmaz Scientific, however, has not yet created a medical device for mass production.

8. The extensive intellectual property portfolio is the foundation for a technology platform with many potential implantable medical devices, including stents that address coronary, peripheral and intracranial indications as well as implantable devices in orthopedic and cosmetic prosthetic specialties.

9. Palmaz Scientific owns highly specialized equipment valued at approximately $1.8 million on its books.

10. Palmaz Scientific's operations have been financed by a series of equity financings. When it has had revenue, Palmaz Scientific's sources of revenue have been related to joint development agreements or other partnering agreements. Currently, Palmaz Scientific has no current source of revenue.

### D. Litigation

11. Palmaz Scientific is or has been a party to several lawsuits, which are described below.

12. **Harriman v. Palmaz Scientific, Inc., et al.; 134th Judicial District, Dallas County, Texas, Cause No. DC-15-12314.** Plaintiff Susan E. Harriman has sued defendants Palmaz Scientific, Inc., Julio Cesar Palmaz, Steven Brett Solomon, Gary Zimpelman, John Asel, John Does 1-20 and Jane Does 1-20. Defendants Palmaz Scientific, Inc., Julio Cesar Palmaz, Steven Brett Solomon have filed counterclaims against Susan E. Harriman for (1) Tortious Interference with Existing Contracts, (2) Tortious Interference with Prospective and Continuing Business Relations, (3) Defamation, and (4) Business Disparagement. Defendant (as Third Party Plaintiff) Palmaz Scientific, Inc. has filed third-party claims against Alan Chesler, Ehrenberg Chesler Interests, LLC, Ehrenberg Chesler Securities, Inc., and IMS Securities, Inc. for (1) Tortious Interference with Existing Contracts, (2) Tortious Interference with Prospective and Continuing Business Relations, (3) Defamation, and (4) Business Disparagement. Defendants Julio Cesar Palmaz and Steven Brett Solomon have filed third-party claims against Alan Chesler, Ehrenberg Chesler Interests, LLC, Ehrenberg Chesler Securities, Inc., and IMS Securities, Inc. for (1) Tortious Interference with Prospective and Continuing Business Relations, (2) Defamation, and (3) Business Disparagement.

13. **Ehrenberg, et al. v. Palmaz Scientific, Inc., et al. 162nd Judicial District, Dallas County, Texas, Cause No. DC-15-11994.** Plaintiffs Mildred V. Ehrenberg, Richard

Benedikt, M.D., Arie Salzman, M.D., and Plant Family Investments Ltd. have sued defendants Palmaz Scientific, Inc., Steven B. Solomon and Julio Palmaz, M.D.

14. **Advanced Bio Prosthetics Surfaces Ltd., et al. v Akin Gump Strauss Hauer & Feld, Baker Botts, L.L.P., and Cecil Schenker; 225th District Court, Bexar County Texas, Cause No. 2014-CI-16776.** Plaintiffs Advanced Bio Prosthetic Surfaces, Ltd. ABPS Venture One, Ltd. ABPS Management, L.L.C., Palmaz Scientific, Inc., and Dr. Julio Palmaz have sued Akin Gump Strauss Hauer & Feld, L.L.P. Baker Botts, L.L.P., and Cecil Schenker for breach of fiduciary duty, fraud, and conspiracy.

15. **Palmaz Scientific, Inc. v. Susan E. Harriman, United States District Court, Western District of Texas, San Antonio Division, Case No. 5:15-cv-734.** Plaintiff Palmaz Scientific, Inc. sued defendant Susan E. Harriman for (1) Tortious Interference with Existing Contracts, (2) Tortious Interference with Prospective and Continuing Business Relations, (3) Defamation, and (4) Business Disparagement. This action was dismissed without prejudice on October 7, 2015 for lack of subject matter jurisdiction.

E. <u>Attempts to Raise Funds; Decision to Sell Assets and File Bankruptcy</u>

16. In November 2015, Palmaz Scientific issued a Confidential Private Placement Memorandum in an effort to raise additional operational and research funds, but such fundraising did not raise sufficient funds. Palmaz Scientific's fundraising ability and business operations have been seriously disrupted over the past 18 months by litigation brought against Palmaz Scientific in Dallas, Texas. Palmaz Scientific has brought counterclaims in that litigation, which assert that the plaintiffs have spread false and disparaging information about Palmaz Scientific. Additionally, the counterclaims assert that false information was intentionally disseminated to current investors, potential business partners, the press, and even federal government authorities – resulting in substantial damages -- essentially crippling Palmaz Scientific's ability to maintain

its ongoing operations. In its counterclaims, Palmaz Scientific asserts the defamation irreparably harmed it and caused it millions of dollars in damages.

17. In light of its inability to raise additional capital, and the additional burden of pending litigation, Palmaz Scientific concluded that it should seek to sell all or substantially all of its assets in connection with a case under chapter 11.

F. **Hiring of Professionals**

18. Prior to the Petition Date, Palmaz Scientific retained the law firm of Norton Rose Fulbright US LLP to represent it as debtor in possession counsel, and seeks court approval to employ such professional.

19. Prior to or on the Petition Date, Palmaz Scientific retained the accounting firm of Groff & Rothe to assist it in its accounting, financial management and reporting functions, and seeks court approval to employ such professional.

20. Prior to or on the Petition Date, Palmaz Scientific retained UpShot Services LLC as it noticing agent for the chapter 11 case, and seeks court approval to employ such professional.

21. Palmaz Scientific intends to seek to retain the law firm of Kreagar Mitchell to represent it as corporate and transactional counsel to the debtor in possession, and will seek court approval to employ such professional.

22. Palmaz Scientific intends to seek to retain the law firm of Andy Taylor & Associates to represent it as litigation counsel to the debtor in possession in connection with the above-described Litigation and also in connection with matters involving the State of Texas Emerging Technology Fund, and will seek court approval to employ such professional.

23. Prior to the Petition Date, Palmaz Scientific retained investment banker Gerbsman Partners to assist Palmaz Scientific in marketing its assets, and will seek court approval to employ such professional.

### G. Termination of Non-Essential Employees; Suspension of Operations

24. Prior to the Petition Date, PSI terminated ten of its 17 employees, leaving seven active employees in Freemont. In addition in San Antonio, Palmaz Scientific utilizes the part time services of bookkeeper Carol Dukes. Ms. Dukes is also employed part time by Palmaz Scientific's former accountant, Asel &Associates PLLC. Palmaz Scientific pays $1000 per month for Ms. Dukes' services.

25. The remaining Palmaz Scientific personnel are as follows:

**Table I**

| Name | Title | Responsibilities |
| --- | --- | --- |
| Scott Carpenter | Director of R&D | Management of Freemont Facilities & People |
| David Xu | PVD Process Eng. & Pilot Mfg. Mgr. | PVD Process Management |
| Silvio Ouchi | Equipment Engineering Mgr. | Maintenance of specialized equipment |
| Li Hou | Principal Process Engineer | Process Management |
| Efrain Velazquez | Electrical Engineer | Support of other essential functions |
| Miguel Marquez | Principal Technician | Maintenance of specialized equipment |
| Jay Sharma | Principal Technician | Maintenance of specialized equipment |
| Carol Dukes | Bookkeeping/HR | Bookkeeping |

26. The key employees are just a few of the people in the world who understand how to operate, rebuild, calibrate, adjust, and otherwise use Palmaz Scientific's highly specialized equipment. Any potential bidder for Palmaz Scientific's assets will realize substantially more value from the assets with these key employees than without them.

27. Prior to the Petition Date, Palmaz Scientific suspended operations in Fremont. Palmaz Scientific's raw materials, supplies, and equipment remain on site in Freemont in preparation for bidder review and due diligence.

### H. Pre-Petition Loans

28. Prior to the Petition Date, Palmaz Scientific has the following existing facilities:

- Draw Note dated June 2, 2015 pay to the order of JULIO PALMAZ in an amount up to $1,000,000.

- Promissory Note dated July 24, 2014 pay to the order of Lennox Capital Partners, LP with Allonge pay to the order of Oak Court Partners, Ltd. in the original principal amount of $1,000,000.

- Promissory Note dated July 24, 2014 pay to the order of Lennox Dallas Partners, LP with Allonge pay to the order of Oak Court Partners, Ltd. in the original principal amount of $1,500,000.

- Convertible Draw Note dated June 16, 2015 pay to the order of Oak Court Partners, Ltd. in an amount up to $4,500,000.

- Convertible Draw Note dated September 17, 2015 pay to the order of Oak Court Partners, Ltd. in an amount up to $3,000,000.

- Draw Note dated December 30, 2015 pay to the order of Oak Court Partners, Ltd. in an amount up to $1,500,000.

### I. Changes in Directors and Officers

29. At the beginning of 2016, Palmaz Scientific had the following Directors and Officers:

**Table II**

| Name | Director? | Officer |
| --- | --- | --- |
| Dr. Phillippe Marco | Yes | Chief Executive Officer |
| John Asel | Yes | Chief Financial Officer |
| Dr. Julio Palmaz | Yes | |
| Phillip Romano | Yes | |
| Dr. Eugene Sprague | Yes | |

30. Effective February 19, 2016, Dr. Phillippe Marco resigned as Director and Chief Executive Officer of Palmaz Scientific.

31. Effective March 3, 2016, John Asel resigned as Director and Chief Financial Officer of Palmaz Scientific.

32. Effective March 4, 2016, the Palmaz Scientific board of directors resolved to reduce the number of directors from five to one, and appointed Dr. Eugene Sprague as the sole director and Designated Representative.

33. Effective March 4, 2016, Dr. Julio Palmaz resigned as Director of Palmaz Scientific.

34. Effective March 4, 2016, Phillip Romano resigned as Director of Palmaz Scientific.

J. **Chapter 11 Case Filed**

35. Effective March 4, 2016, Palmaz Scientific resolved to file this chapter 11 case.

36. On March 4, 2016 ("**Petition Date**"), Palmaz Scientific filed a voluntary petition commencing the above-captioned voluntary chapter 11 case.

37. Debtor continues to manage and operate its business as debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No creditors' committee has been appointed in these cases by the United States Trustee. Further, no trustee or examiner has been requested or appointed.

II.
**FIRST DAY MOTIONS**

38. This Declaration is made in support of the following "First Day" Motions in the above-captioned chapter 11 case:

**Table III**

| First Day Motion |
|---|
| Debtor-In-Possession's Expedited Application For Entry Of An Order Authorizing Employment Of Norton Rose Fulbright US LLP As Counsel (Nunc Pro Tunc As Of The Petition Date) ("**Norton Rose Application**") |
| Debtor's Emergency Ex Parte Interim Application To Employ Accountants Groff & Rothe and Jennifer L. Rothe, C.P.A. ("**Groff & Rothe Application**") |
| Emergency Ex Parte Interim Application To Employ Noticing Agent UpShot Services LLC Nunc Pro Tunc ("**UpShot Application**") |
| Debtor's Emergency Motion Regarding Maintenance Of Bank Accounts And Existing Cash Management ("**Bank Accounts Motion**") |
| Debtor's Emergency Motion For Order (I) Allowing Certain Employees' Prepetition Priority Claims Pursuant To 11 U.S.C. § 507(A) For Certain Benefits Accrued Prepetition; (Ii) Authorizing The Debtor To (A) Maintain And Honor Its Employee Compensation Obligations And (B) Pay Employees' Priority Claims; And (III) Compelling Certain Financial Institutions To Honor Prepetition Transfers ("**Employee Motion**") |
| Debtor's Emergency Motion To Establish Interim Notice Procedures ("**Notice Procedures Motion**") |
| Debtor's Emergency Motion Pursuant To 11 U.S.C. § 366, For Entry Of Interim Order (A) Determining Adequate Assurance Of Payment For Future Utility Services And (B) Restraining Utility Companies From Discontinuing, Altering, Or Refusing Service ("**Utility Motion**") |
| Debtor's Emergency Motion to Extend Time to File Schedules of Assets and Liabilities, Schedules of Executory Contracts and Unexpired Leases, and Statement of Financial Affairs ("**Schedules Motion**") |
| Debtor's Emergency Motion For Interim Approval Of Post-Petition Secured And Super Priority Financing Pursuant To Section 364(c) Of The Bankruptcy Code ("**Financing Motion**") |

A. <u>**Immediate Relief Requested**</u>

39. Debtor contends that immediate and irreparable harm will come to the estate if the First Day motions are not granted. Debtor has little cash available and must act quickly to prosecute the bankruptcy case.

40. Debtor needs immediate relief on the Norton Rose Application, the Groff & Rothe Application, and the UpShot Application. Debtor needs the services of these professionals immediately to begin prosecution of the case. Parties in interest are not harmed by such immediate hiring of professionals because approval is sought only an on interim basis, with final approval to occur only after 21 days' notice of the motions.

41. Debtor needs immediate relief on the Bank Account Motion because it must use cash immediately for its budgeted activities. I am informed that, pursuant to the Bankruptcy Court for the Western District of Texas' Standing Order on First Day Motions in Chapter 11 Cases, Order No. 01-4, this motion is a recognized first day motion (10. Motion to vary U.S. Trustee's requirements, such as Motion to Authorize Maintenance of Existing Bank Accounts, Existing Business Forms, Cash Management System, Investment Procedures, etc.), which should be automatically set without the need for a motion for expedited or emergency consideration.

42. Debtor needs immediate relief on its Employee Motion to pay employees' obligations to ensure the continued services of such employees. I am informed that, pursuant to the Bankruptcy Court for the Western District of Texas' Standing Order on First Day Motions in Chapter 11 Cases, Order No. 01-4, this motion is a recognized first day motion (3. Motion to Pay Pre-Petition Employee Wage Claims (to the limit provided by Section 507), which should be automatically set without the need for a motion for expedited or emergency consideration.

43. Debtor needs immediate relief on its Notice Procedures Motion to establish interim notice procedures because the parties in interest are numerous and subsequent motions will be filed. I am informed that, pursuant to the Bankruptcy Court for the Western District of Texas' Standing Order on First Day Motions in Chapter 11 Cases, Order No. 01-4, this motion is a recognized first day motion (5. Motion to Limit Notice/Set Notice Procedures), which should be automatically set without the need for a motion for expedited or emergency consideration.

44. Debtor needs immediate relief on its Utilities Motion to ensure that utilities do not attempt to cut off service. I am informed that, pursuant to the Bankruptcy Court for the Western District of Texas' Standing Order on First Day Motions in Chapter 11 Cases, Order No. 01-4, this motion is a recognized first day motion (6. Motion to Provide Adequate Assurance to

Utilities), which should be automatically set without the need for a motion for expedited or emergency consideration.

45. Debtor needs immediate relief on its Schedules Motion to obtain an extension of time to file schedules statement of financial affairs before such schedules and statement of financial affairs are due.

**B.  Debtor's Emergency Ex Parte Interim Application For Order Authorizing Employment Of Norton Rose Fulbright US LLP As Counsel Nunc Pro Tunc**

46. As a corporation, Debtor cannot represent itself in court and must have legal counsel in this bankruptcy case. Prior to the Petition Date, Debtor consulted with Norton Rose Fulbright US LLP ("**Norton Rose**") for advice concerning the filing of a chapter 11 case for Debtor. Prior to the Petition Date, Debtor signed an engagement letter with Norton Rose and delivered a retainer payment of $150,000 to Norton Rose for such services. Debtor has selected Norton Rose Fulbright US LLP to serve as debtor-in-possession counsel in connection with this bankruptcy case. Debtor contends that Norton Rose has the bankruptcy expertise and the knowledge of the Debtor's business to make it well qualified to represent the Debtor in this case.

47. Debtor proposes that Norton Rose serve as general bankruptcy counsel to Debtor, but that Norton Rose not serve as litigation counsel or general corporate or business counsel in connection with this case and that Norton Rose not serve as counsel in connection with the State of Texas Emerging Technology Fund. Debtor requests that the court approve the Norton Rose Application.

**C.  Debtor's Emergency Ex Parte Interim Application To Employ Accountants Groff & Rothe and Jennifer L. Rothe, C.P.A.**

48. Debtor needs an accountant to assist Debtor in accounting services in connection with the administration of this estate. Groff & Rothe, and specifically Jennifer L. Rothe, C.P.A., is well qualified to assist Palmaz Scientific in its financial management, accounting and reporting

in this matter. I am informed that Jennifer L. Rothe has the appropriate accounting skills and personnel needed to perform the services of providing financial management, monitoring and accounting services required by this estate. I am informed that Jennifer L. Rothe has previously been employed as accountant for chapter 7 trustees in unrelated cases and, together with her staff, has extensive experience and expertise in performing this type of service. I am informed that Jennifer L. Rothe has agreed to perform these services and thereafter make application to this Court for compensation and has agreed to accept as her fee such amount as is determined by the Court.

49. Prior to or on the Petition Date, Debtor signed an engagement letter with Groff & Rothe and delivered a retainer payment of $5,000 to Groff & Rothe. The duties and compensation for Groff & Rothe and Jennifer L. Rothe, C.P.A. are set forth in her engagement letter. In sum, Groff & Rothe and Jennifer L. Rothe, C.P.A. shall: (a) assume primary responsibility for the preparation and filing of necessary federal tax schedules for the bankruptcy estate; (b) prepare monthly operating reports and other financial reports for the bankruptcy estate; and (c) provide other accounting services as may be required by Debtor from time to time. Debtor requests that the court approve the Groff & Rothe Application.

D. **Debtor's Emergency Ex Parte Interim Application To Employ Noticing Agent UpShot Services LLC Nunc Pro Tunc**

50. Debtor needs a noticing agent to assist Debtor in the administration of this estate. Debtor has executed a Services Agreement with UpShot Services LLC and has paid UpShot a retainer in the amount of $2,500. In general, UpShot shall provide notices of filings or other documents in connection with this bankruptcy case to parties in interest as directed by Debtor and prepare for filing affidavits or other certificates of service in connection with the service of such documents. To the extent that any notices by publication are necessary or advisable in this

case, UpShot shall provide services in connection with such publication notice. I believe that the employment of UpShot is on reasonable terms and conditions. I am informed that noticing agents are commonly used in chapter 11 cases because they are less expensive than law firm staff, who must sometimes work overtime to conduct large mail-outs. I am informed that UpShot is experienced in providing noticing agent services in chapter 11 cases and that Debtor's counsel has had positive experiences utilizing UpShot's services in other cases. Debtor requests that the court approve the UpShot Application.

E. **Debtor's Emergency Motion Regarding Maintenance Of Bank Accounts And Existing Cash Management**

51. Prior to the Petition Date, Debtor has used the following bank accounts (collectively, the "**Bank Accounts**"):

| Bank | Type of Account | Last Four Digits of Account Number | Comment |
|---|---|---|---|
| Bank of San Antonio | Checking | 1393 | Operating Account |
| Bank of San Antonio | Checking | 2060 | Deposit Account |

52. Debtor respectfully requests the entry of an order (i) authorizing Debtor to continue using its existing business forms and records; (ii) authorizing Debtor to maintain and continue to use its existing corporate bank accounts and cash management system; and (iii) authorizing Debtor to pay its Monthly Bank Account Fees (defined below).

53. Debtor currently has control over its books and records. Debtor respectfully submits that opening a new set of books and records would create unnecessary administrative burdens as well as an administrative hardship. It would also cause unnecessary expense and delay, including with respect to Debtor's use of cash collateral. Through its use of computerized books and records, Debtor can easily distinguish between pre- and post-petition transactions by date. To the extent Debtor continues to use checks, invoices, stationary, and other business

forms in the ordinary course of business, continued use of existing business forms without unnecessary alteration would prevent unnecessary delay and hardship. Therefore, Debtor respectfully requests that it be authorized to continue to use its existing business forms and to maintain its existing business records.

F. **Debtor's Emergency Motion For Order (I) Allowing Certain Employees' Prepetition Priority Claims Pursuant To 11 U.S.C. § 507(A) For Certain Benefits Accrued Prepetition; (II) Authorizing The Debtor To (A) Maintain And Honor Its Employee Compensation Obligations And (B) Pay Employees' Priority Claims; And (III) Compelling Certain Financial Institutions To Honor Prepetition Transfers**

54. Debtor currently employs only seven key people, each of whom is essential to the Debtor's business because these employees are just a few of the people in the world who understand how to operate, rebuild, calibrate, adjust, and otherwise use the Debtor's highly specialized equipment; and any potential buyer of the Debtor's assets will realize substantially more value from the assets with these key employees than without them. Debtor is concerned that any restrictions on its ability to fulfill its payroll obligations may adversely affect Debtor's ability to continue its operations and thus maximize the value of its assets and estate for both a potential buyer and its creditors. Therefore, Debtor respectfully requests the allowance of certain employees' prepetition priority claims under section 507(a) and that it be authorized to maintain and honor its employee compensation obligations and pay employees' prepetition priority claims.

G. **Debtor's Emergency Motion To Establish Interim Notice Procedures**

Due to Debtor's limited finances and plan to sell its assets, Debtor proposes to create a limited service list that would include the following parties, and/or their counsel if requested: (a) the Office of the U.S. Trustee for the Western District of Texas; (b) all known or alleged secured creditors; (c) Debtor's twenty (20) largest unsecured creditors; (d) all known shareholders/members holding more than five (5) percent of a class of Debtor's equity interests;

(e) Debtor and Debtor's professionals; (f) the U.S. Attorney's Office for the Western District of Texas; (g) the Internal Revenue Service; (h) other government agencies, national, state and local, to the extent required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure or Local Rules; (i) all statutory committees appointed in these cases; (j) all parties requesting notice under Federal Rule of Bankruptcy Procedure 2002; and (k) all parties on whom the Court orders notice.

### H. Debtor's Emergency Motion Pursuant To 11 U.S.C. § 366, For Entry Of Interim Order (A) Determining Adequate Assurance Of Payment For Future Utility Services And (B) Restraining Utility Companies From Discontinuing, Altering, Or Refusing Service

55. Debtor seeks an order pursuant to Section 366 of the bankruptcy code establishing reasonable adequate assurances for its utility providers. An interim order is requested, with a hearing on a final order requested to be set within 14 days.

56. Debtor uses electric, phone, and internet from utility providers in connection with its business. Debtor is concerned that such utility providers may alter or discontinue services unless the Court sets the amount of adequate assurance of payment and enjoins such alteration or discontinuance of services. Debtor's water, gas, sewer and trash pickup services are included in Debtor's Fremont lease expense, the Fremont Lessor, Sycamore Canyon Farms, LP, successor in interest to MEPT Skyway Court LLC, the Debtor contends that the Fremont Lessor is not a utility. Only three utility services (electricity, telephone and internet service) provided by two utility providers (AT&T and PG&E) are directly subject to the Utilities Motion.

57. In February 2016, Debtor scaled back its business significantly (suspending the Fremont operations and terminating all but seven employees), so it will not be using the same level of utilities it used in the previous year. Debtor will continue to need all of its utility services while it liquidates its assets. Debtor has consistently paid all amounts due to these utility providers and should not have to deposit any funds with these providers as security but

will provide whatever security deposit the Court deems appropriate. Debtor has suggested that an adequate assurance deposit be calculated as follows: calculate the historical average bill from the utility provider over the period January 2015 through January 2016 and divide that number in half. Debtor request that its Utilities motion be granted.

I. **Debtor's Emergency Motion to Extend Time to File Schedules of Assets and Liabilities, Schedules of Executory Contracts and Unexpired Leases, and Statement of Financial Affairs**

58. The Bankruptcy Code requires Debtor to file schedules of its assets and liabilities, schedules of executory contracts and unexpired leases, and a statement of financial affairs. To accommodate these requirements, Debtor must compile all necessary information to complete its schedules and statement of financial affairs to provide the U.S. Trustee, creditors, and interest holders with an accurate statement of Debtor's assets and liabilities. Gathering and analyzing this information requires a significant amount of time, only some of which was completed during the prepetition period. Debtor also has limited resources due to the recent downsizing and now competing demands on its employees and professionals. Given the significant burdens this chapter 11 case imposes on Debtor's limited employees and resources, as well as the size and complexity of this case, "cause" exists for extending the time for filing schedules and statements beyond the normal fourteen-day period. Debtor requests that it be given an extension of time until no later than three business days before the Debtor's first meeting of creditors to file its required Schedules of Assets and Liabilities and Statements of Financial Affairs.

J. **Debtor's Emergency Motion For Interim Approval Of Post-Petition Secured And Super Priority Financing Pursuant To Section 364(c) Of The Bankruptcy Code**

59. Debtor currently has approximately $30,000, which it received from Oak Court Partners, Ltd. as prepetition equity financing, and currently has no source of revenue. Debtor needs to use Oak Court Partners, Ltd.'s cash collateral to fund its bankruptcy, pay its post-

- 17 -

petition obligations, include payroll expenses, and otherwise maintain the value of its assets. Additionally, because Debtor generates no revenue, Debtor seeks approval of post-petition secured and superpriority financing from Oak Court Partners, Ltd. to allow it to appropriately fund its bankruptcy, pay its post-petition obligations, include payroll expenses, and otherwise maintain the value of its assets for a possible sale.

I declare under penalty of perjury that the foregoing is true and correct.


[Remainder of this page intentionally left blank; signature page will follow]

Executed this 4th day of March, 2016

By: _____
Dr. Eugene Sprague
Director and Designated Officer

49666237.4

- 18 -