

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: July 14, 2016.**

_Craig A. Gargotta_
_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | CASE NO. 16-50552 |
| PALMAZ SCIENTIFIC INC., | § | |
| | § | Chapter 11 |
| Debtor. | § | |
| In re: | § | |
| | § | CASE NO. 16-50555 |
| ADVANCED BIO PROSTHETIC SURFACES, LTD., | § | |
| | § | Chapter 11 |
| Debtor. | § | |
| In re: | § | |
| | § | CASE NO. 16-50556 |
| ABPS MANAGEMENT, LLC, | § | |
| | § | Chapter 11 |
| Debtor. | § | |
| In re: | § | |
| | § | CASE NO. 16-50554 |
| ABPS VENTURE ONE, LTD., | § | |
| | § | Chapter 11 |
| Debtor. | § | (Jointly Administered Under 16-50552) |

### ORDER ON DEBTORS' MOTION FOR (A) AUTHORITY TO SELL ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES; (B) TO ESTABLISH PROCEDURES WITH RESPECT TO SUCH SALE; (C) TO CONSIDER APPROVAL <u>OF BREAK UP FEE; AND (D) TO SHORTEN AND LIMIT NOTICE</u>

Upon the Debtors' Motion For (A) Authority to Sell Assets Free and Clear of Liens,

Claims and Encumbrances; (B) to Establish Procedures with Respect to Such Sale; (C) to

Consider Approval of Break Up Fee; and (D) to Shorten and Limit Notice, dated May 23, 2016, of Palmaz Scientific Inc., Advanced Bio Prosthetic Surfaces, Ltd., ABPS Management, LLC, and ABPS Venture One, Ltd. ("Debtors" or "Debtors-in-Possession"), as debtors and debtors in possession, in the above-captioned case (the "Chapter 11 Case") [Docket #234] (the "Motion");[1] and on May 23, 2016, the Debtors having filed an Emergency Motion to Shorten Time related in part to the Motion [Docket #238]; and the Motion to Shorten Time having been granted by the Court on May 24, 2016 [Docket #241]; and the Court having held its first hearing on the Motion on May 25, 2016 and having granted the Debtors' request to approve bid procedures and set a sale date for the auction and hearing on the Motion for June 10, 2016; and an order approving the bid procedures and setting the auction and sale hearing having been entered by the Court on June 3, 2016 [Docket #259]; and on June 10, 2016, the Court having conducted the sale and held a hearing on the Motion (the "Hearing"); and the Court having considered the Motion, having examined the exhibits attached thereto, having considered the limited objection to the Motion filed by the Official Committee of Unsecured Creditors on June 8, 2016 [Docket #266], and having considered the oral objection made to the Motion at the hearing on June 10, 2016, the Court finds and determines the following:

A.    The Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is core within the meaning of 28 U.S.C. § 157(b). The statutory predicates for the relief sought herein are sections 105(a), 363 and 365 of the Bankruptcy Code, and the procedural grounds are Rules 2002, 6004, 9006 and 9007 of the Bankruptcy Rules.

---

[1] Capitalized terms used and not otherwise defined herein shall have the meaning ascribed to such terms in the Motion.

B.    Notice of the Hearing was given to (i) the Office of the United States Trustee for the Western District of Texas, (ii) counsel for the DIP Lender, (iii) and to all creditors identified on the creditor matrix. Based on the record made by the Debtors, the Court finds that appropriate notice of the Hearing has been given.

C.    The legal and factual bases set forth on the record at the Hearing establish just and sufficient cause to grant the relief granted herein. The relief granted herein is in the best interests of the Debtors, their estates, creditors, and all parties in interest.

D.    James Hoffman, representing himself, raised oral objections to the Motion at the Hearing. No written objection was timely filed. The objections are overruled.

E.    Vactronix Scientific, Inc. ("Vactronix") was the only Qualified Bidder. No other Party posted the required deposit or otherwise complied with the approved bidding procedures to qualify as a bidder.

THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.    Subject in all respects to paragraph 4 herein, the Motion is granted, and pursuant to 11 U.S.C. § 363 (b), (f), (k) and (m) and §365 (a), the Debtors are authorized to sell the Assets as set forth in the Motion and the attached Asset Purchase Agreement ("Exhibit A") free and clear of any and all liens, claims and encumbrances and assume and assign the executory contracts as set forth in the Motion and Exhibit A attached hereto to Vactronix and/or its designee.

2.    The closing of the sale approved in paragraph 1 is subject to confirmation of a Plan of Reorganization (the "Plan") of the Debtors consistent with the Term Sheet approved by the Court on May 27, 2016 [Docket #248].

3.      Upon the closing of the sale, the Debtors are authorized to pay Gerbsman Partners its previously approved $100,000.00 commission without the need for Gerbsman Partners to file a fee application.

4.      Notwithstanding Rule 6004(h) of the Bankruptcy Rules or any other term to the contrary herein, this Order shall be effective and enforceable upon the occurrence of the Effective Date of the Debtors' confirmed plan of reorganization (as such term is defined therein), and there shall be no stay of the execution or effectiveness of this Order.

# # #

# PURCHASE AND SALE AGREEMENT

by and among

## PALMAZ SCIENTIFIC INC.,
## ADVANCED BIO PROSTHETIC SURFACES, LTD.
and
## ABPS VENTURE ONE, LTD.
as Seller

and

## VACTRONIX SCIENTIFIC, INC.
as Buyer

dated

June ___, **2016**

# TABLE OF CONTENTS

| SECTION | PAGE |
|---|---|
| 1. DEFINITION OF TERMS | 1 |
| 2. PURCHASE AND SALE | 5 |
|    (a) Purchase and Sale | 5 |
|    (b) Purchase Price | 6 |
| 3. PAYMENT OF PURCHASE PRICE | 6 |
|    (a) Cash Payment | 6 |
|    (b) Credit Bid Indebtedness | 6 |
|    (c) Assumed Obligations | 6 |
| 4. BANKRUPTCY MATTERS | 6 |
| 5. COVENANTS AND AGREEMENTS OF SELLER AND BUYER | 6 |
|    (a) Mutual Covenants | 6 |
|    (b) Seller's Covenants | 6 |
|    (c) Buyer's Covenants | 7 |
| 6. WARRANTIES AND REPRESENTATIONS OF SELLER | 8 |
| 7. WARRANTIES AND REPRESENTATIONS OF BUYER | 8 |
| 8. CONDITIONS PRECEDENT TO OBLIGATIONS OF BUYER | 9 |
| 9. CONDITIONS PRECEDENT TO OBLIGATIONS OF SELLER | 9 |
| 10. CLOSING | 10 |
|    (a) Closing | 10 |
|    (b) Seller's Obligations | 10 |
|    (c) Buyer's Obligations | 10 |
|    (d) Closing Costs; Prorations of Revenue and Expenses | 11 |
| 11. TERMINATION | 11 |
|    (a) Grounds for Termination | 11 |
|    (b) Effect of Termination | 12 |
| 12. DISCLAIMER OF WARRANTIES | 12 |
| 13. DISPUTE RESOLUTION | 13 |
| 14. MISCELLANEOUS | 13 |
|    (a) Assignment | 13 |
|    (b) Notices | 13 |
|    (c) Entire Agreement | 14 |
|    (d) Governing Law | 15 |
|    (e) Absence of Other Representations | 15 |
|    (f) Survival | 15 |
|    (g) Headings | 15 |

522769 000002 16802084.21

| | | |
|---|---|---|
| (h) | Exhibits and Schedules | 15 |
| (i) | Binding Effect | 15 |
| (j) | Multiple Counterparts | 15 |
| (k) | Further Assurances | 15 |
| (l) | Partial Invalidity | 15 |
| (m) | No Third Party Beneficiaries | 15 |
| (n) | Interpretation | 15 |
| (o) | Time of the Essence | 16 |
| (p) | Public Announcements | 16 |

**EXHIBITS**

| | |
|---|---|
| Exhibit A | Subject Assets |
| Exhibit B | List of Assumed Contracts and Maximum Cure Costs |
| Exhibit C-1 | Credit Bid Indebtedness – Secured |
| Exhibit C-2 | Credit Bid Indebtedness – Unsecured |
| Exhibit D | Form of Bill of Sale, Assignment and Assumption Agreement |
| Exhibit E | Bid Procedures Order |

522769 000002 16802084.21

## PURCHASE AND SALE AGREEMENT

        **THIS PURCHASE AND SALE AGREEMENT** is made and entered into as of June ___, 2016 (the "*Execution Date*"), by and among Palmaz Scientific Inc., a Delaware corporation ("*PSI*"), Advanced Bio Prosthetic Surfaces, Ltd., a Texas limited partnership ("*ABPS*"), and ABPS Venture One, Ltd., a Texas limited partnership ("*ABPS Venture*" and, together with PSI and ABPS, "*Seller*"), and Vactronix Scientific, Inc., a Delaware corporation ("*Buyer*"). Buyer and Seller are each a "*Party*" and together the "*Parties*".

        **WHEREAS,** Seller and certain of its Affiliates have commenced cases under the protection of Chapter 11 of Title 11 of the United States Code (the "*Bankruptcy Code*") by filing voluntary petitions for relief (the "*Seller's Chapter 11 Cases*") with the United States Bankruptcy Court for the Western District of Texas, San Antonio Division (the "*Bankruptcy Court*"), on March 4, 2016, and Seller's Chapter 11 Cases are being jointly administered under Case No. 16-50552-cag;

        **WHEREAS,** Seller owns certain patents, patent applications, equipment, and related assets as hereinafter more particularly described;

        **WHEREAS,** Buyer desires to purchase the Subject Assets and Seller desires to sell the Subject Assets to Buyer, all subject to and according to the terms and conditions set forth below (such purchase and sale, the "*Sale Transaction*");

        **WHEREAS,** Seller has agreed to transfer to Buyer, and Buyer has agreed to purchase and assume, pursuant to Sections 363 and 365 of the Bankruptcy Code, the Subject Assets from the Seller, upon the terms and subject to the conditions contained in this Agreement, including obtaining an order of the Bankruptcy Court pursuant to Sections 105, 363 and 365 of the Bankruptcy Code authorizing the Sale Transaction;

        **WHEREAS,** Buyer and Seller intend to execute and perform this Agreement subject to a Bid Procedures Order (defined herein), and the parties recognize that Seller may enter into and consummate an Alternate Transaction (defined herein) with an Alternate Buyer (defined herein) as a result of complying with the Bid Procedures Order; and

        **WHEREAS,** the Parties acknowledge and agree that the purchase by Buyer of the Subject Assets is being made at arm's length and in good faith and without intent to hinder, delay, or defraud creditors of Seller.

        **NOW, THEREFORE,** in consideration of the foregoing recitals (such recitals being incorporated by reference into and expressly made part of this Agreement) and their mutual covenants and agreements herein contained and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

        **1.**    **DEFINITION OF TERMS.** For the purposes of this Agreement, including the Exhibits and Schedules hereto, the following terms shall have the meanings assigned to them and the capitalized terms defined elsewhere in this Agreement, by describing in quotation marks and/or parenthesis, shall have the meanings so ascribed to them:

522769 000002 16802084.21

"*ABPS*" has the meaning given to such term in the preamble of this Agreement.

"*ABPS Venture*" has the meaning given to such term in the preamble of this Agreement.

"*Affiliate*" means, with respect to an entity, another entity controlled by or under common control with such entity.

"*Agreement*" means this Purchase and Sale Agreement.

"*Alternate Buyer*" means a Person (other than Buyer) that submits the highest bid to purchase the Subject Assets pursuant to the Bid Procedures Order and agrees to pay Seller at least $23.1 million in cash.

"*Alternate Courts*" has the meaning given to such term in Section 13.

"*Alternate Transaction*" means, other than the Sale Transaction, any sale of the Subject Assets.

"*Assumed Contracts*" means Seller's executory contracts that are listed on Exhibit B, which executory contracts shall be assumed by Seller and assigned to the Buyer pursuant to Section 365 of the Bankruptcy Code, the Sale Order, or other order of the Bankruptcy Court.

"*Assignment*" means the Bill of Sale, Assignment and Assumption Agreement by and between Seller and Buyer, substantially in the form attached hereto as Exhibit D.

"*Bankruptcy Code*" has the meaning set forth in the recitals of this Agreement.

"*Bankruptcy Court*" has the meaning set forth in the recitals of this Agreement.

"*Bid Procedures Order*" means the Bid Procedures Order entered by the Bankruptcy Court relating to the sale of the Subject Assets and attached hereto as Exhibit E.

"*Books and Records*" mean, in whatever form or media expressed, all books, records, files or copies thereof, in Seller's possession relating to the Patents, Patent Applications, or Assumed Contracts, except those that Seller may be prohibited from disclosing or transferring by existing contractual non-disclosure or confidentiality obligations.

"*Boyle Agreement*" has the meaning given to such term on Exhibit B.

"*Boyle Amount*" means the remaining balance of under the Boyle Agreement as of the filing date of Seller's Chapter 11 Cases (regardless of any subsequent payments that may have been made by the obligors or guarantors under the Boyle Agreement).

"*Business Day*" means each and every day of the week except for Saturday, Sunday and any federally recognized holiday.

"*Buyer*" has the meaning given to such term in the preamble of this Agreement.

522769 000002 16802084.21

"*Claims*" mean all claims (including counter-claims, third party claims or claims by any Governmental Authority), damages, liabilities, obligations, costs, expenses, attorneys' fees and expenses, fines, penalties, remedial actions, causes of action or judgments of any kind or character (hereinafter referred to as "*Claim*", in the singular, and as "*Claims*", in the multiple).

"*Closing*" or "*Close*" means the consummation of the transaction contemplated by this Sale Transaction.

"*Closing Date*" means the date on which the Closing occurs.

"*Code*" means the Internal Revenue Code of 1986, as amended.

"*Credit Bid Indebtedness*" means the amounts owed by Seller to Buyer or its affiliates (a) pursuant to (i) that certain DIP Credit Agreement dated April __, 2016, among Seller and ABPS Management, L.L.C., as Borrowers, and Buyer, as Lender, (ii) the related Security Agreement among Seller and ABPS Management, L.L.C., as Grantors, and Buyer, as Lender, and (iii) the related Term Note by Seller and ABPS Management, L.L.C., as Borrowers, to Buyer, as Lender; (b) pursuant to the other secured indebtedness listed on Exhibit C-1; and (c) pursuant to the unsecured indebtedness listed on Exhibit C-2.

"*Cure Costs*" means, with respect to any Assumed Contract, any and all amounts necessary to cure all defaults, if any, and to pay all losses that have resulted from defaults under such Assumed Contract.

"*Execution Date*" has the meaning given to it in the preamble of this Agreement.

"*File, Filed, Filing*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Seller's Chapter 11 Cases.

"*Final Order*" means an Order of the Bankruptcy Court: (a) as to which the time to appeal, petition for writ of certiorari, or otherwise seek appellate review or to move for re-argument, rehearing, or reconsideration has expired and to which no appeal, petition for writ of certiorari, or other appellate review, or proceeding for re-argument, rehearing, or reconsideration shall be pending; (b) as to which any right to appeal, petition for certiorari, or move for re-argument, rehearing, or reconsideration shall have been waived in writing by the party with such right; or (c) as to which an appeal, writ of certiorari, motion for re-argument or rehearing has been Filed or sought and such order shall not have been stayed.

"*Free and Clear*" means free and clear of all liens, Claims, Litigation, encumbrances, interests, pledges, security interests, rights of setoff, restrictions or limitations on use, successor liabilities, conditions, rights of first refusal, options to purchase, obligations to allow participation, agreements or rights, rights asserted in litigation matters, rights asserted in adversary proceedings in the Seller's Chapter 11 Cases, competing rights of possession, obligations to lend, matters filed of record that relate to, evidence or secure an obligation of the Seller (and all created expenses and charges) of any type under, among other things, any document, instrument, agreement, affidavit, matter filed of record, cause, or state or federal law, whether known or unknown, legal or equitable, and all liens, rights of offset, replacement liens,

3

adequate protection liens, charges, obligations, or claims granted, allowed or directed in any order.

"*Governmental Authority*" means any and all federal, state, municipal, county or other local governmental authorities.

"*Litigation*" means all governmental and non-governmental litigation, arbitration, mediations, claims, proceedings or investigations.

"*Material Adverse Effect*" means a material adverse effect on the operations or value of the Subject Assets.

"*Minimum Cash Amount*" means the sum of (i) allowed administrative claims, provided that administrative claims for substantial contribution by shall be included only up to $150,000; and (ii) allowed unsecured claims other than the claims listed on Exhibit C-2 and other than the Boyle Amount; provided that Minimum Cash Amount shall not include (and Buyer shall not be responsible for) any claim arising from rescission of a purchase or sale of a security of Seller or of an affiliates of Seller or for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under Section 502 of the Bankruptcy Code on account of such a claim.

"*Parties*" has the meaning given to such term in the preamble of this Agreement.

"*Party*" has the meaning given to such term in the preamble of this Agreement.

"*Patents*" means Seller's US- and foreign-issued patents, including those listed on Exhibit A.

"*Patent Applications*" means Seller's pending US- and foreign-patent applications, including those listed on Exhibit A.

"*Permitted Encumbrances*" means rights of third parties arising after the Closing under the Assumed Contracts.

"*Person*" means any individual, partnership, joint venture, corporation, trust, limited liability company, unincorporated organization, government or department or agency thereof or other entity.

"*PSI*" has the meaning given to such term in the preamble of this Agreement.

"*Purchase Price*" has the meaning given to such term in Section 2(b).

"*Sale Order*" means an Order of the Bankruptcy Court approving the Sale Transaction.

"*Sale Transaction*" has the meaning given to such term in the recitals of this Agreement.

"*Seller*" has the meaning given to such term in the preamble of this Agreement.

"*Seller's Chapter 11 Cases*" has the meaning set forth in the recitals to this Agreement.

4

"*Subject Assets*" means, collectively:

(a)     the Patents, the Patent Applications, and all copyrights, copyright licenses, copyright applications, patent licenses, trademarks, trademark licenses, trademark applications, computer software (including documentation and source and object codes), trade secrets, know how, inventions, discoveries, confidential or proprietary information, technical information, data, process technology, plans, drawings and blue prints and other intellectual property rights, owned by or licensed to Seller;

(b)     the Tangible Personal Property;

(c)     All of Seller's right, title and interest in and to the Claims listed on Exhibit A;

(d)     All of Seller's right, title and interest in its approximately 2.33% limited partnership interest in TriVentures II Fund, L.P., a Delaware limited partnership;

(e)     Seller's books, records and other data relating to the operations of Seller's business, including customer lists, marketing information, credit files, price lists, operating records, vendor and supplier price lists, sales literature, computer software, computer disks and tapes and other storage media, printouts and other materials and records, but excluding minute books , employee records, financial and tax records, and any other records that Seller is required by law to retain in its possession;

(f)     All of Seller's interest in, title, and rights under the Assumed Contracts.

"*Tangible Personal Property*" means all machinery, equipment, tools, furniture, parts, equipment, computer hardware, supplies, materials, vehicles and other items of tangible personal property of every kind owned or leased by Seller (wherever located and whether or not carried on Seller's books), together with any express or implied warranty by the manufacturers or sellers or lessors of any item or component part thereof and all maintenance records and other documents relating thereto, including the items listed on Exhibit A.

"*Tax*" or "*Taxes*" shall mean any taxes, fees, levies, imposts, duties, assessments or other charges of any kind whatsoever imposed by any government or Governmental Authority, including interest, penalties and additions imposed thereon or with respect thereto.

## 2.     PURCHASE AND SALE.

(a)     **Purchase and Sale**.  On the Closing Date, Seller hereby agrees to sell all of Seller's right, title and interest in and to the Subject Assets to Buyer, and Buyer hereby agrees to purchase and assume all of Seller's right, title and interest in and to the Subject Assets from Seller, Free and Clear (except for Permitted Encumbrances) pursuant to the terms and conditions herein contained.

522769 000002 16802084.21

(b) **Purchase Price**. As consideration for the acquisition of the Subject Assets from Seller, Buyer shall pay Seller (i) $22,600,000, subject to adjustment as provided in the following sentence, or (ii) such higher amount bid by Buyer pursuant to the Bid Procedures Order (the amount determined under clause (i) or (ii) of this sentence, as applicable, referred to herein as the "***Purchase Price***"). The amount of $22,600,000 in clause (i) of the preceding sentence will be adjusted upward to the extent necessary to make the amount of cash payable pursuant to Section 3(a) equal to the Minimum Cash Amount.

**3.    PAYMENT OF PURCHASE PRICE.** At the Closing, Buyer shall pay the Purchase Price to Seller as follows:

(a) **Cash Payment**. Buyer shall pay to Seller, by wire transfer of immediately available funds to an account designated by Seller, an amount equal to (i) the Purchase Price minus (ii) the sum of (x) the Credit Bid Indebtedness and (y) the Boyle Amount.

(b) **Credit Bid Indebtedness**. Buyer shall execute an assignment to Seller of all of Buyer's rights to receive payment of Credit Bid Indebtedness; and

(c) **Assumed Obligations**. Buyer shall execute and deliver to Seller the Assignment, providing for the assumption by Buyer of liabilities and obligations arising after the Closing Date under the Assumed Contracts.

**4.    BANKRUPTCY MATTERS.** Notwithstanding any conflicting or inconsistent provision of this Agreement, Seller's and Buyer's obligations to consummate the Sale Transaction under this Agreement are subject to and contingent upon the entry of the Sale Order and the occurrence of the effective date under Seller's confirmed plan of reorganization.

**5.    COVENANTS AND AGREEMENTS OF SELLER AND BUYER.**

(a) **Mutual Covenants**.

(1) **Cooperation**. Subject to the Bid Procedures Order, Seller and Buyer mutually covenant and agree to reasonably cooperate with each other with respect to the satisfaction of any conditions contained in this Agreement and otherwise with respect to the Parties' various obligations hereunder.

(2) **Assumption**. Seller shall commence appropriate proceedings before the Bankruptcy Court and otherwise take all necessary actions in order to determine the Cure Costs with respect to the Assumed Contracts and to effect the assumption of the Assumed Contracts in accordance with the Bankruptcy Code, effective as of the Closing.

(b) **Seller's Covenants**. Seller covenants and agrees with Buyer as follows:

(1) **Compliance with Agreements**. Seller will not fail to perform any act required to keep the Patents, Patent Applications, and Assumed Contracts in full force and effect and will perform and comply with all of the covenants and conditions applicable to the Subject Assets and all agreements relating thereto.

6

(2)     **Negative Covenants**. Without the prior written consent of Buyer, Seller will not:

(A)     authorize any material operation, or make any material operational or capital expenditure on the Subject Assets;

(B)     enter into any new material agreements or commitments affecting any of the Subject Assets; or

(C)     encumber, sell, mortgage, release, abandon or otherwise dispose of any of the Subject Assets. For the avoidance of doubt, Seller will not be in violation of its covenants in this paragraph if it enters into, and closes, an Alternate Transaction with Alternate Buyer pursuant to the Bid Procedures Order.

(3)     **Litigation**.  Seller shall give Buyer prompt written notice of any Litigation which is hereafter filed with respect to Seller or the Subject Assets.

(4)     **Governmental Authority**.  Seller shall make all material filings, requests for approvals and execute any material documents or instruments as may be required by any Governmental Authority, so that, following the Closing, all material assignments of the Subject Assets that require the consent of a Governmental Authority will be approved by such Governmental Authority.

(5)     **Books and Records**.  Within ten (10) Business Days after the Closing Date, Seller shall deliver to Buyer all of the Books and Records it has in its possession, provided that Seller may retain copies of such Books and Records at its sole discretion.  With respect to originals or last remaining copies of any Books and Records provided by Seller to Buyer, for a period of six (6) months following the Closing Date Buyer will:  (i) retain the Books and Records; (ii) provide Seller with reasonable access to the Books and Records following reasonable advance notice and during normal business hours for review and copying at Seller's expense; and (iii) provide Seller with reasonable access to officers, employees, and representatives of Buyer and its Affiliates for purposes of discussing the Books and Records.

(c)     **Buyer's Covenants**.  Buyer covenants and agrees with Seller as follows:

(1)     **Governmental Authority**.  Buyer shall make all material filings, requests for approvals and execute any material documents or instruments as may be required by any Governmental Authority, so that, following the Closing, all material assignments of the Subject Assets that require the consent of a Governmental Authority will be approved by such Governmental Authority.

(2)     **Litigation**.  Buyer shall give Seller prompt written notice of any Litigation which is hereafter filed with respect to Buyer, which would have a material adverse effect on the ability of Buyer to perform its obligations hereunder.

(3)     **Cure Costs**.  Buyer shall be responsible for, and will promptly pay to Seller or the contract counterparty, as applicable, the Cure Costs associated with each and

7

every Assumed Contract, it being understood that such Cure Costs shall not exceed the amount set forth in <u>Exhibit B</u> for such Assumed Contract.  Buyer shall make such Cure Cost payments on or before the later of:  (i) fourteen (14) days after the Closing Date; or (ii) the date on which such Assumed Contract is deemed assumed and assigned.

6.  **WARRANTIES AND REPRESENTATIONS OF SELLER.**  Seller warrants and represents to Buyer that:

(a)  PSI is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware.  Each of ABPS and ABPS Venture is a limited partnership duly organized, validly existing and in good standing under the laws of the State of Texas.

(b)  Subject to Bankruptcy Court approval, each Seller possesses all powers necessary to enter into and consummate the transactions contemplated under this Agreement, and this Agreement has been, and all instruments required hereunder to be executed and delivered by each Seller at Closing shall have been, duly authorized, executed and delivered by each Seller.

(c)  Subject to Bankruptcy Court approval, this Agreement constitutes the valid and binding agreement of each Seller enforceable against each Seller in accordance with its terms and all instruments required hereunder to be executed by each Seller at Closing shall constitute valid, binding and enforceable agreements of each Seller in accordance with their terms, except as such enforceability may be limited by bankruptcy, insolvency or other laws relating to or affecting the enforcement of creditors' rights and general principles of equity (regardless of whether such enforceability is considered in a proceeding at law or in equity).

(d)  No undisclosed Litigation is pending before any court or Governmental Authority that would have a Material Adverse Effect.

(e)  No Seller has incurred broker's or finder's fees in respect to this transaction for which Buyer shall have any liability.

7.  **WARRANTIES AND REPRESENTATIONS OF BUYER**.  Buyer warrants and represents to Seller that:

(a)  Buyer is a corporation, duly organized, validly existing and in good standing under the laws of the State of Delaware.

(b)  Buyer possesses all powers necessary to enter into and consummate the transactions contemplated under this Agreement, and this Agreement and all instruments required hereunder to be executed and delivered by Buyer at Closing shall be duly authorized, executed and delivered by Buyer.

(c)  This Agreement constitutes the valid and binding agreement of Buyer enforceable against Buyer in accordance with its terms and all instruments required hereunder to be executed by Buyer at Closing shall constitute valid, binding and enforceable agreements of Buyer in accordance with their terms, except as such enforceability may be limited by bankruptcy, insolvency or other laws relating to or affecting the enforcement of creditors' rights

8

and general principles of equity (regardless of whether such enforceability is considered in a proceeding at law or in equity).

(d)     No Litigation is pending before any court or Governmental Authority that would have a material adverse effect on the ability of Buyer to perform its obligations hereunder.

(e)     Buyer has not incurred broker's or finder's fees in respect to this transaction for which Seller shall have any liability.

## 8.     CONDITIONS PRECEDENT TO OBLIGATIONS OF BUYER.

(a)     The obligations of Buyer to Close are subject to each of the following conditions being met at or prior to the Closing Date, unless waived by Buyer in writing:

(1)     Seller shall have performed and complied with, in all material respects, all obligations and complied with each and every covenant, agreement and condition necessary to be performed or complied with by it on or before the Closing Date.

(2)     Each and every representation of Seller under this Agreement shall be true and accurate in all material respects as of the Closing Date.

(3)     Seller shall have delivered, or caused to be delivered, to Buyer at Closing, the closing deliveries described in Section 10(b).

(4)     The Bankruptcy Court shall have entered a Sale Order (A) in form and substance reasonably acceptable to Buyer and not inconsistent with terms of this Agreement (i) approving the Sale Transaction and all the terms and conditions in this Agreement; (ii) finding that notice of the hearing concerning approval of the Sale Transaction was given in accordance with the Bankruptcy Code and constitutes such notice as is appropriate under the particular circumstances, finding that Buyer is a "good faith" purchaser entitled to protection afforded by Section 363(m) of the Bankruptcy Code; and (iii) providing for the sale of the Subject Assets, Free and Clear (except for Permitted Encumbrances), and (B) that has become a Final Order.

## 9.     CONDITIONS PRECEDENT TO OBLIGATIONS OF SELLER.

(a)     The obligations of Seller to Close are subject to each of the following conditions being met at or prior to the Closing Date unless waived by Seller in writing:

(1)     Buyer shall have performed and complied with, in all material respects, all obligations and complied with each and every covenant, agreement and condition necessary to be performed or complied with by it on or before the Closing Date.

(2)     Each and every representation of Buyer under this Agreement shall be true and accurate in all material respects as of the Closing Date.

(3)     Buyer shall have delivered, or caused to be delivered, to Seller at Closing, the closing deliveries described in Section 10(c).

9

(4)     The Bankruptcy Court shall have entered a Sale Order (A) in form and substance reasonably acceptable to Seller and not inconsistent with terms of this Agreement (i) approving the Sale Transaction and all the terms and conditions in this Agreement; (ii) finding that notice of the hearing concerning approval of the Sale Transaction was given in accordance with the Bankruptcy Code and constitutes such notice as is appropriate under the particular circumstances, finding that Buyer is a "good faith" purchaser entitled to protection afforded by Section 363(m) of the Bankruptcy Code; and (iii) providing for the sale of the Subject Assets, Free and Clear (except for Permitted Encumbrances), and (B) that has become a Final Order.

**10.     CLOSING.**  The following provisions shall be applicable with respect to Closing.

(a)     **Closing.**  The Closing shall take by the remote exchange of deliverables by the Parties as set forth in this Section 10 on the date established under the Seller's confirmed plan of reorganization.

(b)     **Seller's Obligations.**  At Closing, Seller shall:

(1)     Execute and deliver the Assignment to Buyer in sufficient counterparts to facilitate recording with the applicable Governmental Authorities and such that the Subject Assets are conveyed to Buyer Free and Clear (excluding Permitted Encumbrances);

(2)     On forms supplied by Buyer and reasonably acceptable to Seller, execute and deliver letters directing all licensees to make payment to Buyer of royalties and other payments attributable to the Assumed Contracts or the Subject Assets from and after the Closing Date, for delivery by Buyer to the licensees under the Assumed Contracts;

(3)     Deliver to Buyer an executed statement described in Treasury Regulation Section 1.1445-2(b)(2) for Seller certifying that Seller is not a foreign person or is a disregarded entity whose owner is not a foreign person within the meaning of Section 1445 of the Code; and

(4)     Execute and deliver to Buyer any and all other instruments, documents and conveyances required by any Governmental Authority, as may be reasonably requested by Buyer.

(c)     **Buyer's Obligations.**  At Closing, Buyer shall:

(1)     Pay and deliver to Seller the Purchase Price pursuant to the terms of Section 3;

(2)     Execute and deliver the Assignment and the assignment contemplated by Section 3(b) to Seller;

(3)     Execute and deliver to Seller any and all other instruments, documents and other items reasonably necessary to effectuate the terms of this Agreement, as may be reasonably requested by Seller.

10

(d)     **Closing Costs; Prorations of Revenue and Expenses**.  Closing costs and other expenses incidental to this Agreement shall be paid as follows:

(1)     Since this transaction is an isolated sale, no sales tax will be collected from Buyer.  If, however, this transaction is later deemed to be other than an occasional sale, Buyer agrees to be solely responsible for, and Buyer shall indemnify and hold Seller harmless from any and all sales or transfer taxes or fees (including related penalty, interest or legal costs) due by virtue of this transaction on the material and property hereby assigned and conveyed, and Buyer shall remit such sales or transfer taxes at that time.  Seller and Buyer agree to cooperate with each other in demonstrating that the requirements for an occasional or isolated sale or any other sales tax exemption have been met.

(2)     Buyer will pay all fees relating to the filing of assignments transferring title of the Subject Assets to Buyer.

(3)     All other costs and expenses incurred by any Party in connection with this transaction, including attorney's fees, accounting fees and the expense of title examination, shall be borne by the Party incurring the same, except as otherwise provided in this Agreement.

(4)     All costs, expenses and obligations attributable or chargeable to the Subject Assets which accrue with respect to events or activities occurring prior to the Closing Date or which accrue under the Assumed Contracts prior to the Closing Date shall be paid and discharged by Seller, except for Cure Amounts which shall be paid by Buyer as provided in Section 5(c)(3).  All costs, expenses and obligations attributable to the Subject Assets which accrue with respect to events or activities occurring after the Closing Date or which accrue under the Assumed Contracts after the Closing Date shall be paid and discharged by Buyer.

(5)     Any monies received by either Party that under the terms of this Agreement belong or are owed to the other Party shall immediately be paid over to the other Party.  Similarly, any expenses invoiced to either Party and paid for by such Party which under the terms of this Agreement are to be paid for by the other Party shall immediately be reimbursed to the Party which paid the same.  If any invoice or other evidence of an obligation is received which is applicable to periods prior to and after the Closing Date and is thus partially the obligation of one Party and partially the obligation of the other Party, then the Parties shall consult each other and each shall pay its portion of such obligation to the obligee.

11.     **TERMINATION**.

(a)     **Grounds for Termination**.  This Agreement may be terminated and the transactions contemplated by this Agreement may be abandoned at any time, prior to the Closing Date only as follows:

(1)     by mutual written consent of Buyer and Seller;

(2)     by Buyer if (A) the conditions to the obligations of Seller have been satisfied (or waived by Seller) and (B) Seller fails or refuses to close the Sale Transaction in

11

accordance with the terms of this Agreement within five days of receiving written notice from Buyer that Buyer intends to terminate the Agreement under this section;

(3)     by Seller if (A) the conditions to the obligations of Buyer have been satisfied (or waived by Buyer) and (B) Buyer fails or refuses to close the Sale Transaction in accordance with the terms of this Agreement within five days of receiving written notice from Seller that Seller intends to terminate the Agreement under this section; or

(4)     by Buyer or Seller, if any court of competent jurisdiction of any Governmental Authority shall have issued an order, decree or ruling or taken any other action restraining, enjoining or otherwise prohibiting the transactions contemplated hereby and such order, decree, ruling or other action shall have become final and non-appealable.

(b)     **Effect of Termination**.

(1)     Except as provided in Sections 11(b)(2) and 11(b)(3) below, if this Agreement is terminated in accordance with Section 11(a), such termination shall be without liability of any Party or any Affiliate, officer, director, or employee of such Parties, and Seller will be free to pursue alternate sales to other parties without any restriction under this Agreement.

(2)     If this Agreement is terminated because of Buyer's failure or refusal to close on the Subject Assets in breach of this Agreement, Buyer shall be liable for any and all damages to Seller, and Seller shall be entitled to seek any remedy, including specific performance, against Buyer, unless any of the conditions precedent to Buyer's obligation to Close provided in Section 8 are also unmet at the time set for Closing (in which case Section 11(b)(3) shall apply).

(3)     If this Agreement is terminated because of Seller's failure or refusal to close on the Subject Assets in breach of this Agreement, Seller shall be liable for any and all damages to Buyer, and Buyer may seek any remedy, including specific performance, against Seller in accordance with applicable law, unless Buyer is in breach of this Agreement.

(4)     The obligations contained in this Section 11 and terms set forth in Section 1, Section 13, and Section 14 shall survive any termination of this Agreement.

**12.     DISCLAIMER OF WARRANTIES.**     The express representations and warranties of Seller contained in this Agreement are exclusive and are in lieu of all other representations and warranties, express, implied, or statutory.  Except as provided in Section 6, SELLER HAS NOT MADE, AND SELLER HEREBY EXPRESSLY DISCLAIMS AND NEGATES, AND BUYER HEREBY EXPRESSLY WAIVES, ANY REPRESENTATION OR WARRANTY, EXPRESS, IMPLIED, AT COMMON LAW, BY STATUTE OR OTHERWISE RELATING TO (I) THE ACCURACY, COMPLETENESS OR MATERIALITY OF ANY INFORMATION, DATA OR OTHER MATERIALS (WRITTEN OR ORAL) NOW, HERETOFORE OR HEREAFTER FURNISHED TO BUYER BY OR ON BEHALF OF SELLER, (II) ANY IMPLIED OR EXPRESS WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, (III) ANY IMPLIED OR EXPRESS WARRANTY OF CONFORMITY TO MODELS OR SAMPLES OF MATERIALS OR NON-

12

INFRINGEMENT OR FREEDOM TO OPERATE, (IV) ANY RIGHTS OF PURCHASERS UNDER APPROPRIATE STATUTES TO CLAIM DIMINUTION OF CONSIDERATION, AND (V) ANY AND ALL IMPLIED WARRANTIES EXISTING UNDER APPLICABLE LAW; IT BEING THE EXPRESS INTENTION OF BOTH BUYER AND SELLER THAT SUBJECT TO AND WITHOUT LIMITING SELLER'S EXPRESS REPRESENTATION AND WARRANTIES CONTAINED HEREIN, THE PERSONAL PROPERTY, EQUIPMENT AND FIXTURES INCLUDED WITHIN THE PROPERTIES ARE TO BE CONVEYED TO BUYER IN THEIR PRESENT CONDITION AND STATE OF REPAIR, AND THAT BUYER HAS MADE OR CAUSED TO BE MADE SUCH INSPECTIONS AS BUYER DEEMS APPROPRIATE. SELLER AND BUYER AGREE THAT, TO THE EXTENT REQUIRED BY APPLICABLE LAW TO BE EFFECTIVE, THE DISCLAIMERS OF CERTAIN WARRANTIES CONTAINED IN THIS SECTION ARE "CONSPICUOUS" DISCLAIMERS FOR THE PURPOSES OF ANY APPLICABLE LAW, RULE OR ORDER.

      **13.**    **DISPUTE RESOLUTION.** All disputes arising out of this Agreement shall be resolved by: (i) to the extent it possesses jurisdiction to hear such dispute, the Bankruptcy Court; or (ii) to the extent the Bankruptcy Court does not have jurisdiction over such dispute, the state and federal courts located in Bexar County, Texas (such courts, the "*Alternate Courts*"). Each of the Parties submits to the exclusive jurisdiction of the Bankruptcy Courts or Alternate Courts for purposes of resolving any dispute, claim, or controversy arising out of, relating to, or in any way connected with this Agreement.

      **14.**    **MISCELLANEOUS.** The following provisions shall apply with respect to this Agreement:

      (a)    **Assignment**. This Agreement shall be binding on the Parties hereto and their respective successors and assigns. It is understood that Buyer shall have the right to assign its rights and obligations under this Agreement, in whole or in part, to an Affiliate of Buyer prior to the Closing, but the Buyer shall remain liable for performing this Agreement.

      (b)    **Notices**. Any notice or other communication required or permitted hereby shall be in writing and the same shall be deemed given upon delivery thereof in person, one Business Day after such notice is deposited with an overnight delivery service such as Federal Express or Airborne or immediately when sent by facsimile transmission and addressed or faxed as follows:

      If to Sellers:       Palmaz Scientific Inc.
                                c/o Asel & Associates, PLLC
                                18618 Tuscany Stone, Suite 100
                                San Antonio, Texas 78258
                                Attention: Gene Sprague, Ph.D.
                                Fax: (210) 314-7077

With copy (which shall not constitute notice) to:

    Bill Kingman
    Law Offices of William B. Kingman, P.C.
    4040 Broadway, Suite 450
    San Antonio, TX 78209
    Fax: (210) 821-1114
    bkingman@kingmanlaw.com

With a copy (which shall not constitute notice) to:

    Kreager Mitchell PLLC
    7373 Broadway, Suite 500
    San Antonio, Texas 78209
    Attention: Michael L. Kreager
    Fax: (210) 821-6672
    mkreager@kreagermitchell.com

If to Buyer:    Vactronix Scientific, Inc.
    c/o Asel & Associates, PLLC
    18618 Tuscany Stone, Suite 100
    San Antonio, Texas 78258
    Attention: John C. Asel
    Fax: (210) 314-7077

With a copy (which shall not constitute notice) to:

    Thompson & Knight, LLP
    1722 Routh Street, Suite 1500
    Dallas, Texas 75201
    Attention: Michael Titens
    Fax: (214) 880-3159

From time to time, either Party may designate another address or facsimile telephone number for all purposes of this Agreement by giving to the other Party written notice of such change of address or facsimile telephone number in accordance with the provisions hereof. The failure or refusal of a Party to accept receipt of a notice hereunder shall in no manner invalidate the notice.

   (c)  **Entire Agreement**. This Agreement constitutes the entire agreement by and among the Parties with respect to the subject matter hereof and supersedes all prior written or oral statements, writings, agreements or negotiations by and among the Parties with respect thereto, and may not be modified or amended except by an instrument in writing signed by all Parties hereto. No Party is relying on any promise or inference that is not otherwise expressly stated in the text of this Agreement.

(d)     **Governing Law**.  This Agreement shall be governed by and construed in accordance with the laws of the State of Texas (without regard to any conflicts of law principles).

(e)     **Absence of Other Representations**.  Neither Seller nor Buyer has made any representations or warranties to the other regarding this transaction except as set forth herein, and, subject to the express covenants, representations and warranties of Seller herein, this sale is being made on an "as is, where is" basis.

(f)     **Survival**.  The provisions of this Agreement shall survive Closing.

(g)     **Headings**.  The headings used herein are for convenience only and shall not be used in interpreting this Agreement.

(h)     **Exhibits and Schedules**.  Any reference to an exhibit or schedule in this Agreement is deemed to refer to an exhibit or schedule attached to this Agreement, unless the context clearly indicates otherwise, and such exhibit or schedule is deemed incorporated into and made a part of this Agreement.

(i)     **Binding Effect**.  This Agreement shall be binding upon Seller and Buyer and their respective successors, heirs, legal representatives, successors and permitted assigns.

(j)     **Multiple Counterparts**.  This Agreement may be executed in multiple original counterparts, each of which shall be deemed to be an original, but which together shall constitute but one and the same instrument.  Further, pages containing signatures may be detached from their respective counterparts and reassembled together to form a completely executed document.  Additionally, the Parties agree that signatures appearing on copies of this Agreement transmitted by facsimile transmission shall be deemed to be original signatures and shall be binding on the Parties as if originally signed by any such Party.  In the event facsimile signatures are utilized for execution, the Parties agree to thereafter, and as soon as is reasonably practicable, deliver to the other Party original executed copies of this Agreement.

(k)     **Further Assurances**.  Seller and Buyer each agree to take such further actions and execute and deliver such further documents as may be reasonably necessary or appropriate to consummate the transaction contemplated hereby.

(l)     **Partial Invalidity**.  If any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any of the other provisions hereof, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

(m)     **No Third Party Beneficiaries**.  This Agreement does not create, and shall not be construed as creating, any rights enforceable by any Person not a Party to this Agreement.

(n)     **Interpretation**.  Whenever the context hereof shall so require, the singular shall include the plural, the male gender shall include the female gender and the neuter, and vice versa.  Unless the context shall otherwise require, the terms "herein", "hereof", "hereby", and

15

"hereunder", or other similar terms, refer to this Agreement as a whole and not only to the particular Article, Section, or other subdivision in which any such terms may be employed; references to Articles, Sections, and other subdivisions refer to the Articles, Sections, and other subdivisions of this Agreement; and "including" (and with correlative meaning "include") means including without limiting the generality of any description preceding such term.  Furthermore, this Agreement was negotiated by the parties with the benefit of legal representation, and any rule of construction or interpretation otherwise requiring this Agreement to be construed or interpreted against any party shall not apply to any construction or interpretation hereof.

(o)     **Time of the Essence**.  Time shall specifically be deemed to be of the essence with respect to this Agreement and each and every provision thereof.

(p)     **Public Announcements**.     Neither Party shall make any public announcement concerning this Agreement or its subject matter without the prior written approval of the other Party (which shall not be unreasonably withheld or delayed), except as disclosed in the Bankruptcy Court or required by law.

*[Remainder of page has been intentionally left blank]*

16

**IN WITNESS WHEREOF,** Seller and Buyer have caused this Agreement to be executed, as of the day and year first written.

PSI:

**PALMAZ SCIENTIFIC INC.**

By: _Eugene Sprague_
Name: _Eugene Sprague_
Title: _Director_

ABPS:

**ADVANCED BIO PROSTHETIC SURFACES, LTD**

By:     ABPS Management, L.L.C.,
        its general partner

By: _Eugene Sprague_
Name: _Eugene Sprague_
Title: _Director_

ABPS VENTURE:

**ABPS VENTURE ONE, LTD.**

By:     ABPS Management, L.L.C.,
        its general partner

By: _Eugene Sprague_
Name: _Eugene Sprague_
Title: _Director_

*[Seller Signature Page]*

**BUYER:**

**VACTRONIX SCIENTIFIC INC.**

By: /s/ JOHN ASEL

Name: _____

Title: _____

# EXHIBIT A

## SUBJECT ASSETS

I.  Patents

[*See attached list.*]

II.  Patent Applications

[*See attached list.*]

III.  Tangible Personal Property

[*See attached list.*]

IV.  Claims[1]

See Exhibit D-2

---

[1] As provided in Section 14(a), Buyer reserves the right to assign its obligation to purchase the Claims (and all rights and obligations related thereto) to an Affiliate of Buyer.

EXHIBIT A

PALMAZ SCIENTIFIC EQUIPMENT INVENTORY LOG

FEBRUARY 14, 2016

| Equipment number | Manufacturer | Manufacturer part # | Description |
|---|---|---|---|
| PS 0021 | LM Air Technology | n/a | Acid Laminar Fume Hood |
| PS 0155 | LM Air Technology | n/a | Acid Sink |
| PS 0028 | Mettler Toledo | AX-504 | Balance |
| PS 0047 | Mettler Toledo | AX-205DR | Balance |
| PS 0412 | MKS Technology | 627D1TBD1B | Baratron 0.1 Torr |
| PS 0411 | MKS Technology | 627B01TBC1B | Baratron 1.0 Torr |
| PS 0309 | Thorlabs GmbH | BP209 | Beam Profiler BP209 |
| PS 0419 | Control Company | 89140-196 | Big-Digit Dual Channel Timer |
| PS 0423 | Control Company | 89140-196 | Big-Digit Dual Channel Timer |
| PS 0180 | Branson | 2510-DTH | Branson 2510 Ultrasonic Cleaning |
| PS 0153 | Fowler | 54-100-312-0 | Caliper 12 Inch |
| PS 0096 | MKS Technology | 627B01TBC1B | Capacitance Manometer |
| PS 0224 | MKS Technology | 627B01TBC1B | Capacitance Manometer |
| PS 0284 | MKS Technology | 627D-29720 | Capacitance Manometer |
| PS0285 | MKS Technology | 627D-29720 | Capacitance Manometer |
| PS 0286 | MKS Technology | 627D-29720 | Capacitance Manometer |
| PS 0359 | Laminar Technologies | MKS 627D_02TBC2B | Capacitance Manometer |
| PS 0177 | Cimarec | SP46925 | Capacitance Manometer |
| PS 0385 | N/A | N/A | Cimarec 2 Hot Stir Plate |
| PS 0179 | Myron L Co | Ultrameter 4P 11 | Clean Room |
| PS 0058 | Omega | CN9000A | conductivity/resistivity meter |
| PS 0059 | Digi Sense | 89000-10 | Control Temperature |
| PS 0255 | Corning (Hot Plate ) | PC-40D | Control Temperature |
| PS 0048 | Gamry | FASI | Corning Hot plate |
| PS 0045 | Genesis | AG2503 | Corrosion Tester |
| PS 0199 | MSI | SNO130 | Crest Ultrasonic Cleaner |
| PS 0313 | Blockwise Engineering | RMC | Crimper |
| PS 0085 | Helix Technology Corp. | CTI-8200 | Crimper |
| | | | Cryo Compressor |

PALMAZ SCIENTIFIC EQUIPMENT INVENTORY LOG

FEBRUARY 14, 2016

| Equipment number | Manufacturer | Manufacturer part # | Description |
|---|---|---|---|
| PS 0089 | Helix Technology Corp. | CTI-8200 | Cryo Compressor |
| PS 0414 | MKS Technology | 1179A00411CR1BV | Cryogenic 8200 compressor |
| PS 0415 | CTI | 8032S50G5001 | Cryogenic 8200 compressor |
| PS 0341 | Omega | 13050312 | Data Logger Thermometer |
| PS 0251 | BK Precision | 1670A | DC Power Supply |
| PS 0253 | Mastech | HY5020 E | DC Power Supply |
| PS 0257 | Hewlett Packard | E3614A | DC Power Supply |
| PS 0258 | NuLine | CED936 | DC Power Supply |
| PS0259 | NuLine | CED936 | DC Power Supply |
| PS 0307 | Agilent Technologies | N5747A | DC Power Supply |
| PS 0290 | Advanced Energy | 6645A | DC Power Supply |
| PS 0299 | Agilent Technologies | 6675A | DC Power Supply |
| PS 0300 | Hewlett Packard | 6641A | DC Power Supply |
| PS 0303 | Agilent Technologies | N5747A | DC Power Supply |
| PS 0307 | Agilent Technologies | N5747A | DC Power Supply |
| PS 0318 | Agilent Technologies | N5746A | DC Power Supply |
| PS 0319 | Agilent Technologies | N5746A | DC Power Supply |
| PS 0320 | Agilent Technologies | N5746A | DC Power Supply |
| PS 0326 | Agilent Technologies | N8740A | DC Power Supply |
| PS 0354 | Agilent Technologies | N8740A | DC Power Supply |
| PS 0371 | Agilent Technologies | N8761A | DC Power Supply |
| PS 0372 | Advanced Energy | MDX-10 | DC Power Supply |
| PS 0373 | GW | GPR-3060D | DC Power Supply |
| PS 0374 | Korad | KA3005D | DC Power Supply |
| PS 0375 | Hewlett Packard | E3614A | DC Power Supply |
| PS 0376 | Hyelec | HY15503D | DC Power Supply |
| PS 0400 | Agilent | E3646A | DC Power Supply |
| PS 0401 | Agilent | N8740A | DC Power Supply |
| | Agilent | 6555A | DC Power Supply |

PALMAZ SCIENTIFIC EQUIPMENT INVENTORY LOG

FEBRUARY 14, 2016

| Equipment number | Manufacturer | Manufacturer part # | Description |
|---|---|---|---|
| PS 0408 | Agilent | N5746A | DC Power Supply |
| PS 0409 | Agilent | N5746A | DC Power Supply |
| PS 0410 | Agilent | N5746A | DC Power Supply |
| PS 0370 | HP | 241B | DC pulse generator |
| PS 0196 | Mititoyo | 0"-1" | Depth Gage |
| PS 0015 | TA Instruments | Q1000 | Differential Scanning Calorimeter |
| PS 0082 | Mitutoyo | 500-193 | Digimatic Caliper, 12 inch |
| PS 0150 | Mitutoyo | CD-6" CSX | Digital Caliper |
| PS 0304 | Mitutoyo | 500-196-20 | Digital Caliper |
| PS 0305 | Mitutoyo | 500-196-20 | Digital Caliper |
| PS 0327 | Mitutoyo | CD-6"-CSX | Digital Caliper |
| PS 0328 | Mitutoyo | CD-6"-CSX | Digital Caliper |
| PS 0329 | Mitutoyo | CD-6"-CSX | Digital Caliper |
| PS 0330 | Mitutoyo | CD-6"-CSX | Digital Caliper |
| PS 0331 | Mitutoyo | CD-6"-CSX | Digital Caliper |
| PS 0033 | VWR | 62379-531 | Digital Caliper 6" |
| PS 0112 | Starrett | n/a | Digital Caliper 6" |
| PS 0114 | Fluke | 187 | Digital multimeter |
| PS 0115 | Fluke | 73 III | Digital multimeter |
| PS 0151 | Mitutoyo | 317-351 | Digital Pin Micrometer |
| PS 0037 | Fluke | 51 II | Digital Thermometer |
| PS 0038 | Fluke | 51 II | Digital Thermometer |
| PS 0036 | Fluke | 51 II | Digital Thermometer |
| PS 0121 | Mitutoyo | CD 6" CSX | Digital, Caliper |
| PS 0386 | Control Company | 5127 | Double Display Timer |
| PS 0416 | Control Company | 5127 | Double Display Timer |
| PS 0420 | Control Company | 5127 | Double Display Timer |
| PS 0398 | Kashiyama | NEODRY 30E | Dry pump |

PALMAZ SCIENTIFIC EQUIPMENT INVENTORY LOG

FEBRUARY 14, 2016

| Equipment number | Manufacturer | Manufacturer part # | Description |
|---|---|---|---|
| PS 0172 | Procedyne | HT-1250DI-2036 | Fluidized Bed |
| PS 0237 | Sentry Air Systems Inc. | N/A | FT Fume Hood |
| PS 0023 | Genie Scientific | 1000 PHS | Fume Hood #2 |
| PS 0061 | Thermolyne | F62735 | Furnace |
| PS 0389 | Meyer Gages | 100.00MM + c/z B61 | Gage Pins |
| PS 0390 | Meyer Gages | 20.00mm+ c/z L14 | Gage Pins |
| PS 0391 | Meyer Gages | 25.00mm = c/z G64 | Gage Pins |
| PS 0120 | Meyer | M-1 .060/.250 | Gage Pins .060 thru .250 |
| PS 0358 | BW Technologies | GA24XT-X | Gas Alert Clip Extreme |
| PS 0324 | Control Company | 89087-398 | Giant-Digit Timer |
| PS 0325 | Control Company | 89087-398 | Giant-Digit Timer |
| PS 0133 | Gage Master | KR-814 (1x3x.125) | Glass Slide |
| PS 0002 | Kanomax | 3887 | Handheld Laser Particle Counter |
| PS 0275 | Hanna Instruments | HI-99104 | Hanna Ph meter |
| PS 0116 | Steinel | HG2000E | Heat Gun |
| PS 0117 | Wagner | HI499 | Heat Gun |
| PS 0118 | Steinel | HG2000E | Heat Gun |
| PS 0249 | IKA Works | CERAMAG | Heated Spin Plate |
| PS 0250 | IKA Works | CERAMAG | Heated Spin Plate |
| PS 0256 | Neslab | EX-111 | Heater Recirculator Bath |
| PS 0265 | Banstead Thermdyne | HP-133425 | Hot Plate |
| PS 0022 | Corning Stirrer | PC-610 | Hot Plate Stirrer |
| PS 0247 | Ceramag | n/a | Hot Plate Stirrer |
| PS 0239 | Essick humidifier | Model # H12 300 | Humidifier |
| PS 0240 | Seasick humidifier | Model # H12 300 | Humidifier |
| PS 0377 | ILT & Spectra-Physics | 115298 | ILT/Spirit 4 Watt Laser System |
| PS 0183 | n/a | n/a | Inspection Roller Fixture |
| PS 0017 | Instron | 554306395 | Instron |

PALMAZ SCIENTIFIC EQUIPMENT INVENTORY LOG

FEBRUARY 14, 2016

| Equipment number | Manufacturer | Manufacturer part # | Description |
|---|---|---|---|
| PS 0171 | Lesco | ARB1010 | Intensity Meter |
| PS 0395 | Zygo | | Interferometer |
| PS 0396 | Kashiyama | NEODRY 30E | Kashiyama Pump |
| PS 0397 | Kashiyama | NEODRY 30E | Kashiyama Pump |
| PS 0399 | Kashiyama | NEODRY 30E | Kashiyama pump |
| PS 0169 | Kashiyama | NEODRY 30E | Kashiyama pump |
| PS 0360 | Keyence | VHX-1000 | Keyence |
| PS 0056 | Keyence | LS-9030M | Keyence High Speed Optical Micrometer |
| PS 0050 | ICOM Mechanical Inc. | n/a | Laminar Hood |
| PS 0066B | Keyence | 4102809 | Laser Micrometer |
| PS 0067B | Leica | DFC320 | Leica digital camera |
| PS 0068B | Leica | DFC320 | Leica digital camera |
| PS 0137B | Leica | DFC320 | Leica digital camera |
| PS 0267 | Leica | DFC320 | Leica digital camera |
| PS 0174 | Fowler | 582 | Level |
| PS 0077 | Lindberg/Blue | MO1440A-1 | Lindberg/ Blue Convection Oven |
| PS 0029 | Palmaz Scientific | n/a | Litho Room |
| PS 0406 | Buehler | 11-1180-160 | Low Speed Saw |
| PS 0407 | MKS Technology | GE50A005201RBV010 | Mass Flow Controller |
| PS 0364 | MKS Technology | 1179B01322CR1BV | Mass Flow Controller |
| PS 0113 | Megger | MIT310EN | Megger Mit310 Insulation Tester |
| PS 0306 | Fluke | 1520 | Megohmmeter |
| PS 0079 | MKS Technology | GE50A005201RBV010 | MFC KR 20SCCM 15PD LCEA |
| PS 0060 | Fowler | 15770 | Micrometer |
| PS 0066A | Leica | Mz75 | Microscope |
| PS 0067A | Leica | DM4000M | Microscope |
| PS 0068A | Leica | DM4000M | Microscope |
| | Leica | S8AP0 | Microscope |

PALMAZ SCIENTIFIC EQUIPMENT INVENTORY LOG

FEBRUARY 14, 2016

| Equipment number | Manufacturer | Manufacturer part # | Description |
|---|---|---|---|
| PS 0070 | Leica | S8AP0 | Microscope |
| PS 0071 | Nikon | 520658 | Microscope |
| PS 0137A | Leica | DM4000M | Microscope |
| PS 0141 | Leica | MZ75 | Microscope |
| PS 0187 | Leica | Leica S6E | Microscope |
| PS 0228 | Zygo | NV7005 Microscope | Microscope |
| PS 0343 | Graphtec America INC | GL220 | MIDILOGGER |
| PS 0344 | Graphtec America INC | GL220 | MIDILOGGER |
| PS 0345 | Graphtec America INC | GL220 | MIDILOGGER |
| PS 0352 | Graphtec America INC | GL220 | MIDILOGGER |
| PS 0353 | Graphtec America INC | GL220 | MIDILOGGER |
| PS 0046 | Buehler | 69-1000-160 | Minimet Polisher |
| PS 0266 | Reptifogger | RF-10 | Mist Humidify |
| PS 0001 | Fischer | MMS-P | Multi Measuring System |
| PS 0111 | Omega | MDSS25B-K | Omega Monogram temperature display |
| PS 0280 | Omega | HH806AU | Omega Temperature Data Logger |
| PS 0026 | Oakton | pH 5 Acorn Series | pH Meter |
| PS 0262 | Hanna Instruments | HI 9812-5N | pH/Conductivity meter |
| PS 0241 | Clean Air Products | 6 Model 112 HEPA filters | Photo Lithography Lab |
| PS 0213 | Toppan Photomask Inc. | n/a | Photomask |
| PS 0081 | ABPS | n/a | Physical Vapor Deposition System #6 |
| PS 0134 | ABPS | N/A | Physical Vapor Deposition System #7 |
| PS 0294 | Palmaz Scientific | N/A | Physical Vapor Deposition. System #1 |
| PS 0288 | ABPS | N/A | Physical Vapor Deposition. System #3 |
| PS 0289 | Palmaz Scientific | N/A | Physical Vapor Deposition. System#8 |
| PS 0355 | Palmaz Scientific | N/A | Physical Vapor Deposition System#9 |
| PS 0278 | Meyer | 0.011" TO 0.060" | Pin gage set 0.011 in to 0.060 inch |
| PS 0064 | Meyer | 0.22mm to 1.5mm | Pin Gages .22mm thru 1.50mm |

PALMAZ SCIENTIFIC EQUIPMENT INVENTORY LOG

FEBRUARY 14, 2016

| Equipment number | Manufacturer | Manufacturer part # | Description |
|---|---|---|---|
| PS 0369 | Advanced Energy | 3152433-359B | Pinnacle Plus---pulse DC plasma generator |
| PS 0392 | N/A | N/A | Polisher |
| PS 0308 | Abatement Technologies | PRED600 | Portable Air Scrubber |
| PS 0167 | Thorlabs GmbH | S310C | Power Meter |
| PS 0168 | Thorlabs GmbH | S122C | Power Meter |
| PS 0093 | Advanced Energy | MDX-5 | Power Supply |
| PS 0094 | Hewlett Packard | 6030A | Power Supply |
| PS 0095 | Hewlett Packard | 6645A | Power Supply |
| PS 0097 | Advanced Energy | MDX-5 | Power Supply |
| PS 0098 | Agilent | 6030A | Power Supply |
| PS 0099 | Agilent | 6645A | Power Supply |
| PS0103 | Hewlett Packard | 6645A | Power Supply |
| PS 0104 | Agilent | 6030A | Power Supply |
| PS 0106 | Advanced Energy | MDX-5 | Power Supply |
| PS 0191 | Sorenson | XT120-0.5 | Power Supply |
| PS 0214 | BK Precision | 1785 | Power Supply |
| PS 0215 | BK Precision | 1785 | Power Supply |
| PS 0242 | GW | GW Model DPC-6030 | Power Supply |
| PS 0246 | BK Precision | 167OOA | Power Supply |
| PS 0281 | AMETEK | XPH42-10 | Power Supply |
| PS 0282 | Agilent Technologies | N5747A | Power Supply |
| PS 0283 | Agilent Technologies | N5747A | Power Supply |
| PS 0361 | Hewlett Packard | 6645A | Power Supply |
| PS 0417 | Pinnacle Power Supply | 3152433-359-B | Power Supply |
| PS 0166 | RU | 0 PSI TO 200 PSI | Pressure Gage |
| PS 0388 | MKS Technology | 722B21TCD2FK | Pressure Transducer |
| PS 0402 | MKS Technology | 627D-29720 | Pressure Transducer |
| PS 0403 | Pfeiffer | PKR251 | Pressure Transducer |

PALMAZ SCIENTIFIC EQUIPMENT INVENTORY LOG

FEBRUARY 14, 2016

| Equipment number | Manufacturer | Manufacturer part # | Description |
|---|---|---|---|
| PS 0404 | MKS Technology | 627D-29720 | Pressure Transducer |
| PS 0405 | Pfeiffer | PKR251 | Pressure Transducer |
| PS 0418 | MKS Technology | 627D-29720 | Pressure Transducer |
| PS 0198 | Sunbeam | SCM3609P | Purified Mist Humidifier |
| PS 0080 | Lufkin | QR1425 | Quikread 25" Tape Measure |
| PS 0421 | Blockwise Engineering | TTR2 | Radial Force Tester |
| PS 0312 | Julabo | FP50 | Refrigerated and Heating Circulator |
| PS 0090 | Neslab | CFT-75 | Refrigerated Recirculator |
| PS 0200 | Lascar | EL USB-2 | RH-Temp US Data Logger |
| PS 0176 | n/a | n/a | SAS Fume Hood |
| PS 0156 | Aspex (RJ Lee) | PSEM2000 40P05430 | Scanning Electron Microscope (SEM) |
| PS 0413 | MKS Technology | 1179A00411CR1BV | Sccm 100 (calibrated to N2) |
| PS 0086 | Anest-Iwata | ISP-500 | Scroll Type Vacuum Pump |
| PS 0088 | Anest-Iwata | ISP-500 | Scroll Type Vacuum Pump |
| PS 0091 | Anest-Iwata | ISP-500B | Scroll Type Vacuum Pump |
| PS 0101 | Anest-Iwata | ISP-500 | Scroll Type Vacuum Pump |
| PS 0109 | Anest-Iwata | ISP-90 | Scroll Type Vacuum Pump |
| PS 0185 | Anest-Iwata | ISP-500B | Scroll Type Vacuum Pump |
| PS 0227 | Anest-Iwata | ISP-90 | Scroll Type Vacuum Pump |
| PS 0110 | Spectroline | SB-100PY | Scroll Type Vacuum Pump |
| PS 0164-A/B | Lutron | PS100-50BAR | Semi-Conductor Wafer Inspection Lamp |
| PS 0170 | n/a | 1 G TO 1K | Sensor, Pressure |
| PS 0165 | LM Air Technology | PPWS8-A3 | Set of Dead Weights |
| PS 0119 | Meyer | M-O .011/.060 | Sink #1 |
| PS 0349 | Meyer Gage Company Inc. | N/A | Small Gage Pins .011 thru .060 |
| PS 0144 | Weller | Wes50 | Small Pin Gages |
| PS 0192 | Laser Machine | n/a | Soldering Iron |
| PS 0123 | GEI International, Inc. | 2020A | Stage Micrometer Slide |
| | | | Stainless Steel Ruler 12" |

PALMAZ SCIENTIFIC EQUIPMENT INVENTORY LOG

FEBRUARY 14, 2016

| Equipment number | Manufacturer | Manufacturer part # | Description |
|---|---|---|---|
| PS 0124 | GEI International, Inc. | 2020A | Stainless Steel Ruler 12" |
| PS 0125 | GEI International, Inc. | 2020A | Stainless Steel Ruler 12" |
| PS 0126 | GEI International, Inc. | 2020A | Stainless Steel Ruler 12" |
| PS 0127 | GEI International, Inc. | 2020A | Stainless Steel Ruler 12" |
| PS 0128 | GEI International, Inc. | 2020A | Stainless Steel Ruler 12" |
| PS 0129 | GEI International, Inc. | 2020A | Stainless Steel Ruler 12" |
| PS 0122 | GEI International, Inc. | 2020A | Stainless Steel Ruler 24" |
| PS 0131 | GEI International, Inc. | 2020A | Stainless Steel Ruler 6" |
| PS 0130 | GEI International, Inc. | 2020A | Stainless Steel Ruler 6" |
| PS 0132 | GEI International, Inc. | 2020A | Stainless Steel Ruler 6" |
| PS 0194 | VLSI Standards Inc. | SHS-50.0 Q | Step Height Standard 48 um |
| PS 0193 | VLSI Standards Inc. | SHS-9400 QC | Step Height Standard 9456 A |
| PS 0182 | N/A | 3357 | Storage Refrigerator |
| PS 0229 | Lesco | Super Spot Max VSM3002-HP | Super Spot Max UV Source |
| PS 0230 | Lesco | Super Spot Max VSM3002-HP | Super Spot Max UV Source |
| PS 0062 | Fisher Scientific | ISO-Temp 3016 | Temperature Bath |
| PS 0216 | Lascar | EL-USB-1-LCD | Temperature indicator with LCD display |
| PS 0152 | Madge Tech | n/a | Temperature Recorder |
| PS 0363 | Control Company | 62344-734 | Therm Clock Humidity Monitor |
| PS 0357 | Control Company | 62344-734 | Therm./Clock/Humidity Monitor |
| PS 0378 | Thermco Products, inc | N/A | Thermometer -110 TO 200°C |
| PS 0379 | Thermco Products, inc | N/A | Thermometer -110 TO 200°C |
| PS 0380 | Thermco Products, inc | N/A | Thermometer -110 TO 200°C |
| PS 0381 | Thermco Products, inc | N/A | Thermometer -110 TO 200°C |
| PS 0382 | Thermco Products, inc | N/A | Thermometer -110 TO 200°C |
| PS 0383 | Thermco Products, inc | N/A | Thermometer -110 TO 200°C |
| PS 0201 | ThorLabs GmbH | PM100D | ThorLabs Laser Power Meter |

PALMAZ SCIENTIFIC EQUIPMENT INVENTORY LOG

FEBRUARY 14, 2016

| Equipment number | Manufacturer | Manufacturer part # | Description |
|---|---|---|---|
| PS 0279 | Toppan Photomask Inc. | n/a | Toppan Photomask |
| PS 0393 | Control Company | 62344-734 | Trem/Clock/Humidity Monitor |
| PS 0394 | Control Company | 62344-734 | Trem/Clock/Humidity Monitor |
| PS 0158 | Raydiance | n/a | ultrashort pulse laser (femtosecond ) |
| PS 0238 | Branson | Branson 8510 | Ultrasonic |
| PS 0024 | Branson | 2510R-MT | Ultrasonic Cleaner |
| PS 0063 | Branson | 3510R-MTH | Ultrasonic Cleaner |
| PS 0252 | Cole Parmer | 08895-12 | Ultrasonic Cleaner |
| PS 0147 | Mark-10 | ST-J50 | Universal Digital Torque Indicator |
| PS 0107 | Gamry | 990-00168 | Universal Dummy Cell |
| PS 0367 | Ceram Optec | n/a | UV Fiber Optic Light Guide |
| PS 0232 | Lesco | 00570-REVA/106781 | UV Single Fiberoptic Lightguide |
| PS 0041 | ABPS | custom | Vacuum Annealer |
| PS 0384 | N/A | N/A | Vacuum Oven |
| PS 0181 | Vicks | n/a | Vicks Humidifier |
| PS 0175 | Sheldon Manufacturing/VWR | 9100710 | VWR Vacuum Oven |
| PS 0030 | Neslab | EX-111 | Water Bath |
| PS 0031 | Neslab | n/a | Water Bath |
| PS 0108 | Neslab | Neslab RTE 740 | Water Bath |
| PS 0140 | Thermo | RTE-740 | Water Bath |
| PS 0270 | Precision | n/a | Water Bath |
| PS 0248 | Precision | 280 Series | Water Bath |
| PS 0261 | NesLab | EX 111 | Water Bath Control Temperature |
| PS 0143 | Hughes | HRW 100C | Water Filter |
| PS 0190 | Palmaz Scientific | n/a | Wet Polisher |
| PS 0189 | ABPS | n/a | Wet Polisher ( Built by ABPS ) |

16-50552-cag Doc#106 Filed 03/28/16 Entered 03/28/16 20:31:50 Main Document Pg 57 of 105

SCHEDULE 22

## Palmaz Scientific Estimated Inventory

3/28/2016

| Material | Type | Estimated Quantity | Estimated cost each or per lot | Extended price |
|---|---|---|---|---|
| SST hypotubes | Raw | 800 | $ 4.50 | $ 3,600.00 |
| Nitinol targets (one lot) | Raw | 1 | $ 42,000.00 | $ 42,000.00 |
| Polished substrates | WIP | 200 | $ 15.00 | $ 3,000.00 |
| Deposited PVD tubing | WIP | 120 | $ 150.00 | $ 18,000.00 |
| PVD maintenance spares | Spares | 1 | $ 7,500.00 | $ 7,500.00 |
| Lab supplies (cleanroom garments, wipes, gloves, mats, etc.) | Supplies | 1 | $ 1,500.00 | $ 1,500.00 |
| Office and janitorial supplies | Supplies | 1 | $ 500.00 | $ 500.00 |
| Formed targets | WIP | 1 | $ 15,000.00 | $ 15,000.00 |
| 3D Printer materials | Supplies | 1 | $ 1,100.00 | $ 1,100.00 |
| Blasting media | Consumable | 1 | $ 100.00 | $ 100.00 |
| Glassware (beakers, vessels, watch glass) | Supplies/Consumables | 1 | $ 3,000.00 | $ 3,000.00 |
| Quartz tubes | Supplies | 1 | $ 800.00 | $ 800.00 |
| Total | | | | $ 96,100.00 |

ABPS PATENT PORTFOLIO

| Geography/Patent #/Status | Title (CIP: Continuation in part, PCT = Patent cooperation Treaty DIV = Divisional CON = Continuation) | Family | Expiration (Est. for Pending) |
|---|---|---|---|
| US: Patent No. 6,190,404 | Intravascular Stent and Method for Manufacture | Surface Technology | 11/7/2017 |
| EP: Patent No. 1028672 | Intravascular Stent and Method for Manufacture | Surface Technology | 11/5/2018 |
| DE: Patent No. 1028672 | Intravascular Stent and Method for Manufacture | Surface Technology | 11/5/2018 |
| FR: Patent No. 1028672 | Intravascular Stent and Method for Manufacture | Surface Technology | 11/5/2018 |
| GB: Patent No. 1028672 | Intravascular Stent and Method for Manufacture | Surface Technology | 11/15/2018 |
| JP: Patent No. 4172912 | Intravascular Stent and Method for Manufacture | Surface Technology | 11/15/2018 |
| CA: Patent No. 2308177 | Intravascular Stent and Method for Manufacture | Surface Technology | 11/15/2018 |
| AU: Patent No. 749980 | Intravascular Stent and Method for Manufacture | Surface Technology | 11/19/2019 |
| US: Patent No. 6,379,383 | Endoluminal Device Exhibiting Improved Endothelialization | Process-Device | 11/19/2019 |
| US: Patent No. 6,820,676 | Endoluminal Device Exhibiting Improved Endothelialization | Valve - Stent | 11/19/2019 |
| US: Patent No. 7,195,641 | Valvular Prostheses Having Metal or Pseudometallic Construction | Stent-Graft Device | 11/19/2019 |
| CA: Pending Patent | Endoluminal Device Exhibiting Improved | Stent-Graft Device | 11/19/2019 |
| CA: Patent No. 2616781 | Medical Device including a Thin Metallic Film Component Attached to Polymeric Component | Stent-Graft Device | 12/2/2019 |
| MX: Pending Patent | Medical Device including a Thin Metallic Film Component Attached to Polymeric Component | Material | 12/2/2019 |
| US: Patent No. 7,491,226 | Endoluminal Implantable Stent-Grafts | Stent-Graft Device | 12/22/2019 |
| AU: Patent No. 2012258286 | Covered Stent with Proximal and Distal Attachment | Stent - Graft Device | 1/9/2020 |
| US: Patent No. 8,083,908 | High Strength Vacuum Deposited Nitinol Alloy Films | Metal Balloon | 1/9/2020 |
| CA: Pending Patent | Implantable Expandable Medical Devices Having Regions of Differential Mechanical Properties | Stent | 1/9/2020 |
| US: Patent No. 8,460,333 | Balloon Catheter Having Metal Balloon | Metal Balloon | 1/19/2020 |
| AU: Patent No. 2013234393 | Balloon Catheter Having Metal Balloon and Method of Making Same | Stent-Graft Device | 5/12/2020 |
| US: Patent No. 7,670,690 | High Strength Vacuum Deposited Nitinol Alloy Films | Stent-Graft Device | 7/15/2020 |
| US: Patent No. 7,300,457 | Self-Supporting Metallic Implantable, Compliant Implantable Medical Devices | Material | 8/7/2020 |
| CA: Pending Patent | Covered Stent with Proximal and Distal Attachment, Delivery Process - Material | Embolic Protection | 3/20/2020 |
| US: Patent No. 6,849,085 | Self-Supporting Laminated Films, Structural Materials and Medical Devices | Metal Balloon | 4/29/2020 |
| CA: Pending Patent | Stent Segments Axially Connected by Thin Film | Stent - Graft Device | 4/29/2020 |
| US: Pending Patent | Metallic Drug-Releasing Medical Devices and Method of Making | Material | 5/12/2020 |
| AU: Patent No. 2013234393 | Balloon Catheter Having Metal Balloon and Method of Making Same | Stent-Graft Device | 5/12/2020 |
| CA: Pending Patent | Methods of Making Devices | Drug Delivery | 11/7/2020 |
| US: Patent No. 1237725 | Endoluminal Device Exhibiting Improved Endothelialization | Surface Technology | 11/16/2020 |
| EP: Patent No. 1237725 | Endoluminal Device Exhibiting Improved Endothelialization | Surface Technology | 11/16/2020 |
| BE: Patent No. 1237725 | Endoluminal Device Exhibiting Improved Endothelialization | Surface Technology | 11/16/2020 |
| DE: Patent No. 1237725 | Endoluminal Device Exhibiting Improved Endothelialization | Surface Technology | 11/16/2020 |
| ES: Patent No. 1237725 | Endoluminal Device Exhibiting Improved Endothelialization | Surface Technology | 11/16/2020 |
| FR: Patent No. 1237725 | Endoluminal Device Exhibiting Improved Endothelialization | Surface Technology | 11/16/2020 |
| GB: Patent No. 1237725 | Endoluminal Device Exhibiting Improved Endothelialization | Surface Technology | 11/16/2020 |
| IE: Patent No. 1237725 | Endoluminal Device Exhibiting Improved Endothelialization | Surface Technology | 11/16/2020 |
| IT: Patent No. 1237725 | Endoluminal Device Exhibiting Improved Endothelialization | Surface Technology | 11/16/2020 |
| NL: Patent No. 1237725 | Endoluminal Device Exhibiting Improved Endothelialization | Surface Technology | 11/16/2020 |
| CA: Patent No. 2390942 | Endoluminal Device Exhibiting Improved Endothelialization | PVD Process | 11/16/2020 |
| AU: Patent No. 783336 | Endoluminal Device Exhibiting Improved Endothelialization | Surface Technology | 11/16/2020 |
| EP: Pending Patent | Endoluminal Device Exhibiting Improved Endothelialization | Drug Delivery | 11/17/2020 |
| US: Patent No. 8,128,690 | Endoluminal Device for In Vivo Delivery of Bioactive Agents | Drug Delivery | 11/17/2020 |
| US: Patent No. 8,697,175 | Endoluminal Device for In Vivo Delivery of Bioactive Agents | Drug Delivery | 11/17/2020 |
| US: Pending Patent | Endoluminal Device for In Vivo Delivery of Bioactive Agents | Surface Technology | 11/17/2020 |
| US: Pending Patent | Endoluminal Device for In Vivo Delivery of Bioactive Agents | Drug Delivery | 11/17/2020 |
| US: Pending Patent | Device for In Vivo Delivery of Bioactive Agents and Method of | Stent-Graft Device | 12/9/2020 |

6/22/2016

ABPS PATENT PORTFOLIO

| Geography/Patent #/Status | Title (CIP: Continuation in part, PCT = Patent cooperation Treaty DIV = Divisional CON = Continuation) | Family | Expiration (Est. for Pending) |
|---|---|---|---|
| US: Patent No. 6,936,066 | Compliant Implantable Medical Devices and Methods | Process - Graft | 12/9/2020 |
| US: Patent No. 8,458,879 | DIV: Compliant Implantable Medical Devices | Stent-Graft Device | 12/9/2020 |
| US: Patent No. 8,910,363 | CON: Compliant Implantable Medical Devices and Methods | Stent-Graft Device | 12/9/2020 |
| US: Pending Patent | CON: Compliant Implantable Medical Devices and Methods of Making | | 2/14/2021 |
| US: Patent No. 7,625,594 | CON: In Vivo Sensor and Method of Making Same | Process | 3/12/2020 |
| US: Patent No. 8,715,335 | CON: Endoluminal Device Exhibiting Improved Endothelialization | Stent-Graft Device | 3/12/2021 |
| JP: Patent No. 5186074 | CON: Endoluminal Implantable Stent-Grafts | Stent-Graft Device | 3/20/2021 |
| CA: Patent No. 2403341 | Endoluminal Implantable Devices and Method | Stent-Graft Device | 3/20/2021 |
| AU: Patent No. 2001245884 | Endoluminal Implantable Devices and Method | Stent-Graft Device | 5/11/2021 |
| US: Pending Patent | CON: Self-Supporting Laminated Films, Structural Materials and Medical Devices | Material | 5/11/2021 |
| US: Pending Patent | CON: Self-Supporting Laminated Films, Structural Materials and Medical Devices | Material | 5/11/2021 |
| EP: Patent No. 1359865 | Methods and Apparatus for Manufacturing an Intravascular Stent | Surface Technology | 5/18/2021 |
| AT: Patent No. 1359865 | Methods and Apparatus for Manufacturing an Intravascular Stent | Surface Technology | 5/18/2021 |
| BE: Patent No. 1359865 | Methods and Apparatus for Manufacturing an Intravascular Stent | Surface Technology | 5/18/2021 |
| DE: Patent No. 1359865 | Methods and Apparatus for Manufacturing an Intravascular Stent | Surface Technology | 5/18/2021 |
| ES: Patent No. 1359865 | Methods and Apparatus for Manufacturing an Intravascular Stent | Surface Technology | 5/18/2021 |
| FR: Patent No. 1359865 | Methods and Apparatus for Manufacturing an Intravascular Stent | Surface Technology | 5/18/2021 |
| GB: Patent No. 1359865 | Methods and Apparatus for Manufacturing an Intravascular Stent | Surface Technology | 5/18/2021 |
| IE: Patent No. 1359865 | Methods and Apparatus for Manufacturing an Intravascular Stent | Surface Technology | 5/18/2021 |
| IT: Patent No. 1359865 | Methods and Apparatus for Manufacturing an Intravascular Stent | Surface Technology | 5/18/2021 |
| NL: Patent No. 1359865 | Methods and Apparatus for Manufacturing an Intravascular Stent | Surface Technology | 5/18/2021 |
| JP: Patent No. 4846171 | Methods and Apparatus for Manufacturing an Intravascular Stent | Surface Technology | 5/18/2021 |
| CA: Patent No. 2409862 | Methods and Apparatus for Manufacturing an Intravascular Stent | Surface Technology | 5/18/2021 |
| AU: Patent No. 2001264750 | Methods and Apparatus for Manufacturing Intravascular Stent | Surface Technology | 5/18/2021 |
| AU: Patent No. 2006203187 | DIV: Methods and Apparatus for Manufacturing an Intravascular Stent | Surface Technology | 5/18/2021 |
| EP: Patent No. 1769775 | Methods and Apparatus for Manufacturing an Intravascular Stent | Surface Technology | 5/18/2021 |
| BE: Patent No. 1769775 | Methods and Apparatus for Manufacturing an Intravascular Stent | Surface Technology | 5/18/2021 |
| NL: Patent No. 1769775 | Methods and Apparatus for Manufacturing an Intravascular Stent | Surface Technology | 5/18/2021 |
| SE: Patent No. 1769775 | Methods and Apparatus for Manufacturing an Intravascular Stent | Surface Technology | 5/18/2021 |
| CH: Patent No. 1769775 | Methods and Apparatus for Manufacturing an Intravascular Stent | Surface Technology | 5/18/2021 |
| DE: Patent No. 1769775 | Methods and Apparatus for Manufacturing an Intravascular Stent | Surface Technology | 5/18/2021 |
| DK: Patent No. 1769775 | Methods and Apparatus for Manufacturing an Intravascular Stent | Surface Technology | 5/18/2021 |
| ES: Patent No. 1769775 | Methods and Apparatus for Manufacturing an Intravascular Stent | Surface Technology | 5/18/2021 |
| FR: Patent No. 1769775 | Methods and Apparatus for Manufacturing an Intravascular Stent | Surface Technology | 5/18/2021 |
| GB: Patent No. 1769775 | Methods and Apparatus for Manufacturing an Intravascular Stent | Surface Technology | 5/18/2021 |
| IE: Patent No. 1769775 | Methods and Apparatus for Manufacturing an Intravascular Stent | Surface Technology | 5/18/2021 |
| IT: Patent No. 1769775 | Methods and Apparatus for Manufacturing an Intravascular Stent | Stent | 5/18/2021 |
| US: Pending Patent | CON: Medical Devices Having MEMs Functionality | Surface Technology | 5/18/2021 |
| US: Patent No. 8,512,679 | DIV: Method for Making Grooves on a Luminal Surface of an Intravascular Stent | Surface Technology | 5/18/2021 |
| US: Pending Patent | DIV: Method for Making Grooves on a Luminal Surface of an Intravascular Stent | Drug Delivery | 5/18/2021 |
| JP: Patent No. 5379195 | DIV: Methods for Manufacturing an Intravascular Stent | Surface Technology | 5/18/2021 |
| JP: Pending Patent | DIV: Methods for Manufacturing an Intravascular Stent | Process - Device | 5/18/2021 |
| JP: Patent No. 5642218 | DIV: Methods for Manufacturing an Intravascular Stent | Surface Technology | 5/18/2021 |
| US: Patent No. 8,920,660 | CON: Method for Making Grooves on a Luminal Surface of a Stent | Material | 5/21/2021 |

6/22/2016

ABPS PATENT PORTFOLIO

| Geography/Patent #/Status | Title (CIP: Continuation in part,  PCT = Patent cooperation Treaty DIV = Divisional  CON = Continuation) | Family | Expiration (Est. for Pending) |
|---|---|---|---|
| AU: Patent No. 2001261455 | Self-Supporting Laminated Films, Structural Materials and Medical Devices | Delivery System | 9/12/2021 |
| AU: Patent No. 2002236894 | Guidewires and Thin Film Catheter-Sheaths and Methods | Material | 10/24/2021 |
| US: Patent No. 7,335,426 | CIP: High Strength Vacuum Deposited Nitinol Alloy Films | Delivery System | 11/19/2021 |
| US: Pending Patent | Methods | Drug Delivery | 11/19/2021 |
| EP: Patent No. 1347791 | Device for In Vivo Delivery of Bioactive Agents and Methods | Drug Delivery | 11/19/2021 |
| AT: Patent No. 1347791 | Device for In Vivo Delivery of Bioactive Agents | Drug Delivery | 11/19/2021 |
| LU: Patent No. 1347791 | Device for In Vivo Delivery of Bioactive Agents | Drug Delivery | 11/19/2021 |
| NL: Patent No. 1347791 | Device for In Vivo Delivery of Bioactive Agents | Drug Delivery | 11/19/2021 |
| TR: Patent No. 1347791 | Device for In Vivo Delivery of Bioactive Agents | Drug Delivery | 11/19/2021 |
| BE: Patent No. 1347791 | Device for In Vivo Delivery of Bioactive Agents | Drug Delivery | 11/19/2021 |
| CH: Patent No. 1347791 | Device for In Vivo Delivery of Bioactive Agents | Drug Delivery | 11/19/2021 |
| DE: Patent No. 1347791 | Device for In Vivo Delivery of Bioactive Agents | Drug Delivery | 11/19/2021 |
| ES: Patent No. 1347791 | Device for In Vivo Delivery of Bioactive Agents | Drug Delivery | 11/19/2021 |
| FR: Patent No. 1347791 | Device for In Vivo Delivery of Bioactive Agents | Drug Delivery | 11/19/2021 |
| GB: Patent No. 1347791 | Device for In Vivo Delivery of Bioactive Agents | Drug Delivery | 11/19/2021 |
| IE: Patent No. 1347791 | Device for In Vivo Delivery of Bioactive Agents | Drug Delivery | 11/19/2021 |
| IT: Patent No. 1347791 | Device for In Vivo Delivery of Bioactive Agents | Drug Delivery | 11/19/2021 |
| JP: Patent No. 4231692 | Device for In Vivo Delivery of Bioactive Agents | Drug Delivery | 11/19/2021 |
| CA: Patent No. 2429356 | Device for In Vivo Delivery of Bioactive Agents | Drug Delivery | 11/19/2021 |
| AU: Patent No. 2002249771 | Device for In Vivo Delivery of Bioactive Agents and Method of | Drug Delivery | 11/19/2021 |
| CA: Pending Patent | Device for In Vivo Delivery of Bioactive Agents and Method of | Drug Delivery | 11/19/2021 |
| MX: Pending Patent | Device for In Vivo Delivery of Bioactive Agents and Method of | Drug Delivery | 11/19/2021 |
| CN: Pending Patent | Device for In Vivo Delivery of Bioactive Agents and Method of | Drug Delivery | 11/19/2021 |
| EP: Pending Patent | DIV: Device for In Vivo Delivery of Bioactive Agents and Method | Drug Delivery | 11/19/2021 |
| US: Pending Patent | CON: Compliant Implantable Medical Device and Method | Delivery System | 4/29/2022 |
| US: Patent No. 7,641,682 | CON: Compliant Implantable Medical Device and Method | Graft - Thin Film | 2/2/2022 |
| US: Pending Patent | CON: Guidewires and Thin Film Catheter-Sheaths and Method of Making | Metal Balloon | 4/29/2022 |
| CN: Pending Patent | CON: Balloon Catheter Having Metal Balloon and Method of Making Same | Process - Device | 4/30/2022 |
| US: Patent No. 6,537,310 | CIP: Endoluminal Implantable Devices and Method | Stent-Graft Device | 4/30/2022 |
| US: Patent No. 7,641,680 | CON: Endoluminal Implantable Stent-Grafts | Surface Technology | 5/10/2022 |
| US: Patent No. 8,037,733 | Methods and Apparatus for Manufacturing an Intravascular Stent | Valve - Stent | 7/3/2022 |
| EP: Patent No. 1408895 | Valvular Prostheses Having Metal or Pseudometallic Construction | Valve - Stent | 7/3/2022 |
| JP: Patent No. 4536794 | Valvular Prostheses Having Metal or Pseudometallic Construction | Valve - Stent | 7/3/2022 |
| DE: Patent No. 1408895 | Valvular Prostheses Having Metal or Pseudometallic Construction | Valve - Stent | 7/3/2022 |
| FR: Patent No. 1408895 | Valvular Prostheses Having Metal or Pseudometallic Construction | Valve - Stent | 7/3/2022 |
| GB: Patent No. 1408895 | Valvular Prostheses Having Metal or Pseudometallic Construction | Valve - Stent | 7/3/2022 |
| IE: Patent No. 1408895 | Valvular Prostheses Having Metal or Pseudometallic Construction | Valve - Stent | 7/3/2022 |
| IT: Patent No. 1408895 | Valvular Prostheses Having Metal or Pseudometallic Construction | Valve - Stent | 7/3/2022 |
| AU: Patent No. 2002319631 | Valvular Prostheses Having Metal or Pseudometallic Construction | Valve - Stent | 7/3/2022 |
| AU: Patent No. 2008201080 | DIV: Valvular Prostheses Having Metal or Pseudometallic Construction | Valve - Stent | 7/3/2022 |
| AU: Patent No. 2008201081 | DIV: Valvular Prostheses Having Metal or Pseudometallic Construction | Valve - Stent | 7/3/2022 |
| EP: Patent No. 2298252 | EP DIV: Valvular Prostheses Having Metal or Pseudometallic Construction | Valve - Stent | 7/3/2022 |
| CH: Patent No. 2298252 | EP DIV: Valvular Prostheses Having Metal or Pseudometallic Construction | Valve - Stent | 7/3/2022 |

6/22/2016

| Geography/Patent #/Status | Title (CIP: Continuation in part, PCT = Patent cooperation Treaty DIV = Divisional CON = Continuation) | Family | Expiration (Est. for Pending) |
|---|---|---|---|
| DE - Patent No. 2298252 | EP DIV - Valvular Prostheses Having Metal of Pseudometallic Construction | Valve - Stent | 7/3/2022 |
| FR - Patent No. 2298252 | EP DIV - Valvular Prostheses Having Metal or Pseudometallic Construction | Valve - Stent | 7/3/2022 |
| GB - Patent No. 2298252 | EP DIV - Valvular Prostheses Having Metal or Pseudometallic Construction | Valve - Stent | 7/3/2022 |
| IE - Patent No. 2298252 | EP DIV - Valvular Prostheses Having Metal or Pseudometallic Construction | Valve - Stent | 7/3/2022 |
| NL - Patent No. 2298252 | EP DIV - Valvular Prostheses Having Metal or Pseudometallic Construction | Valve - Stent | 7/3/2022 |
| EP - Patent No. 1412016 | Balloon Catheter Having Metal Balloon | Metal Balloon | 7/31/2022 |
| CH - Patent No. 1412016 | Balloon Catheter Having Metal Balloon | Metal Balloon | 7/31/2022 |
| DE - Patent No. 1412016 | Balloon Catheter Having Metal Balloon | Metal Balloon | 7/31/2022 |
| ES - Patent No. 1412016 | Balloon Catheter Having Metal Balloon | Metal Balloon | 7/31/2022 |
| FR - Patent No. 1412016 | Balloon Catheter Having Metal Balloon | Metal Balloon | 7/31/2022 |
| GB - Patent No. 1412016 | Balloon Catheter Having Metal Balloon | Metal Balloon | 7/31/2022 |
| IE - Patent No. 1412016 | Balloon Catheter Having Metal Balloon | Metal Balloon | 7/31/2022 |
| IT - Patent No. 1412016 | Balloon Catheter Having Metal Balloon | Metal Balloon | 7/31/2022 |
| NL - Patent No. 1412016 | Balloon Catheter Having Metal Balloon | Metal Balloon | 7/31/2022 |
| JP - Patent No. 4567332 | Balloon Catheter Having Metal Balloon | Metal Balloon | 7/31/2022 |
| CA - Patent No. 2455417 | Balloon Catheter Having Metal Balloon | Metal Balloon | 7/31/2022 |
| AU - Patent No. 2002323009 | Balloon Catheter Having Metal Balloon | Metal Balloon | 7/31/2022 |
| EP - Patent No. 1420717 | Self-Supporting Metallic Implantable Grafts, Compliant Implantable Medical Devices | Graft - Thin Film | 8/1/2022 |
| IT - Patent No. 1420717 | Self-Supporting Metallic Implantable Grafts, Compliant Implantable Medical Devices | Graft - Thin Film | 8/1/2022 |
| DE - Patent No. 1420717 | Self-Supporting Metallic Implantable Grafts, Compliant Implantable Medical Devices | Graft - Thin Film | 8/1/2022 |
| FR - Patent No. 1420717 | Self-Supporting Metallic Implantable Grafts, Compliant Implantable Medical Devices | Graft - Thin Film | 8/1/2022 |
| JP - Patent No. 4934269 | Self-Supporting Metallic Implantable Grafts, Compliant Implantable Medical Devices | Graft - Thin Film | 8/1/2022 |
| CA - Patent No. 2456697 | Self-Supporting Metallic Implantable Grafts, Compliant Implantable Medical Devices | Graft - Thin Film | 8/1/2022 |
| AU - Patent No. 2002321909 | Self-Supporting Metallic Implantable Grafts, Compliant Implantable Medical Devices | Graft - Thin Film | 8/1/2022 |
| EP - Patent No. 1416978 | Embolic Protection Device | Embolic Protection | 8/1/2022 |
| CH - Patent No. 1416978 | Embolic Protection Device | Embolic Protection | 8/1/2022 |
| DE - Patent No. 1416978 | Embolic Protection Device | Embolic Protection | 8/1/2022 |
| ES - Patent No. 1416978 | Embolic Protection Device | Embolic Protection | 8/1/2022 |
| FR - Patent No. 1416978 | Embolic Protection Device | Embolic Protection | 8/1/2022 |
| GB - Patent No. 1416978 | Embolic Protection Device | Embolic Protection | 8/1/2022 |
| IE - Patent No. 1416978 | Embolic Protection Device | Embolic Protection | 8/1/2022 |
| IT - Patent No. 1416978 | Embolic Protection Device | Embolic Protection | 8/1/2022 |
| JP - Patent No. 4319540 | Embolic Protection Device | Embolic Protection | 8/1/2022 |
| CA - Patent No. 2457012 | Embolic Protection Device | Embolic Protection | 8/1/2022 |
| AU - Patent No. 2002335625 | Embolic Protection Device | Embolic Protection | 8/1/2022 |
| EP - Patent No. 2298249 | EP DIV - Self-Supporting Metallic Implantable Grafts, Compliant Implantable Medical Devices | Graft - Thin Film | 9/29/2022 |
| US - Patent No. 8,932,347 | DIV - Implantable Materials Having Engineered Surfaces and Method of Making Same | Surface Technology | 9/29/2022 |
| US - Patent No. 8,372,139 | In Vivo Sensor and Method of Making Same | Sensor | 10/25/2022 |
| US - Pending Patent | CON - Implantable Medical Devices Having Controlled Surface Properties | Surface Technology | 11/16/2022 |
| US - Pending Patent | CON - Method of Making Implantable Medical Devices Having Controlled Surface Properties | Stent | 11/25/2022 |
| US - Patent No. 6,923,829 | Implantable Expandable Medical Devices Having Regions of Different Mechanical Properties | Sensor | 12/14/2022 |
| EP - Patent No. 1365710 | In Vivo Sensor and Method of Making Same | Sensor | 12/14/2022 |
| CH - Patent No. 1365710 | In Vivo Sensor and Method of Making Same | Sensor | 12/14/2022 |
| DE - Patent No. 1365710 | In Vivo Sensor and Method of Making Same | Sensor | 12/14/2022 |
| ES - Patent No. 1365710 | In Vivo Sensor and Method of Making Same | Sensor | 12/14/2022 |

6/22/2016

ABPS PATENT PORTFOLIO

6/22/2016

| Geography/Patent #/Status | Title (CIP; Continuation in part, PCT = Patent cooperation Treaty DIV = Divisional, CON = Continuation) | Family | Expiration (Est. for Pending) |
| --- | --- | --- | --- |
| FR: Patent No. 1365710 | In Vivo Sensor and Method of Making Same | Sensor | 12/14/2022 |
| GB: Patent No. 1365710 | In Vivo Sensor and Method of Making Same | Sensor | 12/14/2022 |
| IE: Patent No. 1365710 | In Vivo Sensor and Method of Making Same | Sensor | 12/14/2022 |
| IT: Patent No. 1365710 | In Vivo Sensor and Method of Making Same | Sensor | 12/14/2022 |
| SE: Patent No. 1365710 | In Vivo Sensor and Method of Making Same | Sensor | 12/14/2022 |
| CA: Pending Patent | In Vivo Sensor and Method of Making Same | Sensor | 12/14/2022 |
| AU: Patent No. 2002251926 | In Vivo Sensor and Method of Making Same | Sensor | 3/19/2023 |
| US: Patent No. 7,122,049 | Metallic Implantable Grafts and Method of Making Same | Graft | 5/7/2023 |
| US: Patent No. 9,132,001 | Metallic Implantable Grafts and Method | Graft | 5/7/2023 |
| US: Pending Patent | DIV: Metallic Implantable Grafts and Method of Making Same | Graft | 5/7/2023 |
| US: Patent No. 8,313,523 | Device for In Vivo Delivery of Bioactive Agents | Drug Delivery | 8/23/2023 |
| US: Patent No. 8,252,044 | High Strength Vacuum Deposited Nitinol Alloy, Medical Thin... | Material | 9/19/2023 |
| EP: Pending Patent | High Strength Vacuum Deposited Nitinol Alloy Films, Medical Thin | Material | 9/19/2023 |
| JP: Patent No. 4995420 | High Strength Vacuum Deposited Nitinol Alloy | Material | 9/19/2023 |
| CA: Patent No. 2499961 | High Strength Vacuum Deposited Nitinol Alloy | Material | 9/19/2023 |
| AU: Patent No. 2003270817 | High Strength Vacuum Deposited Nitinol | Material | 9/24/2023 |
| US: Patent No. 7,235,092 | Implantable Graft and Methods of Making Same | Delivery System | 9/26/2023 |
| EP: Pending Patent | Guidewires and Thin Film Catheter-Sheaths | Surface Technology | 9/26/2023 |
| JP: Patent No. 2499976 | Implantable Materials Having Engineered Surfaces and Method of Making Same | Surface Technology | 9/26/2023 |
| CA: Patent No. 2507038 | Implantable Materials Having Engineered Surfaces and Method of Making Same | Surface Technology | 9/26/2023 |
| JP: Patent No. 2003291117 | Implantable Materials Having Engineered Surfaces and Method of Making Same | Surface Technology | 11/21/2023 |
| AU: Patent No. 267051 | CON: Implantable Materials Having Engineered Surfaces and Method of Making Same | Surface Technology | 11/21/2023 |
| CN: Pending Patent | CON: Implantable Graft and Methods of Making Same | Stent-Graft Device | 11/21/2023 |
| MX: Patent No. 327220 | DIV: Implantable Materials Having Engineered Surfaces and Method of Making Same | Stent-Graft Device | 11/21/2023 |
| EP: Pending Patent | DIV: Implantable Expandable Medical Devices Having Regions of Different Mechanical Properties | Stent | 11/21/2023 |
| JP: Patent No. 1610724 | Implantable Expandable Medical Devices Having Regions of Different Mechanical Properties | Stent | 11/21/2023 |
| CA: Patent No. 1610724 | Implantable Expandable Medical Devices Having Regions of Different Mechanical Properties | Stent | 11/21/2023 |
| DE: Patent No. 1610724 | Implantable Expandable Medical Devices Having Regions of Different Mechanical Properties | Stent | 11/21/2023 |
| FR: Patent No. 1610724 | Implantable Expandable Medical Devices Having Regions of Different Mechanical Properties | Stent | 11/21/2023 |
| GB: Patent No. 1610724 | DIV: Implantable Expandable Medical of Differential Mechanical Properties | Stent | 11/21/2023 |
| JP: Patent No. 5021298 | Endoluminal Stent Having Mid-Strut Interconnecting Members | Stent | 3/18/2024 |
| CA: Patent No. 2519226 | Endoluminal Stent Having Mid-Strut Interconnecting Members | Stent | 3/18/2024 |
| AU: Patent No. 2004224415 | Endoluminal Stent Having Mid-Strut Interconnecting Members | Stent | 3/18/2024 |
| MX: Patent No. 255025 | Endoluminal Stent Having Mid-Strut Interconnecting Members | Stent | 3/18/2024 |
| CN: Patent No. 2004800 | Endoluminal Stent Having Mid-Strut Interconnecting Members | Stent | 3/18/2024 |
| EP: Pending Patent | DIV: Endoluminal Stent Having Mid-Strut Interconnecting Members | Stent | 3/18/2024 |
| AU: Patent No. 2004238270 | Metallic Implantable Grafts and Method of | Graft | 5/6/2024 |
| CA: Patent No. 2525094 | Metallic Implantable Grafts and Method of | Graft | 5/6/2024 |
| JP: Patent No. 4799412 | Metallic Implantable Grafts and Method | Stent-Graft Device | 9/9/2024 |

ABPS PATENT PORTFOLIO

| Geography/Patent #/Status | Title (CIP: Continuation in part, PCT = Patent cooperation Treaty DIV = Divisional, CON = Continuation) | Family | Expiration (Est. for Pending) |
|---|---|---|---|
| JP: Patent No. 4799412 | CIP: Stents with Metallic Covers and Methods of Making Same | Drug Delivery | 9/9/2024 |
| JP: Patent No. 4799412 | CON: Device for In Vivo Delivery of Bioactive Agents | Stent | 9/20/2024 |
| CA: Pending Patent | Medical Devices Having MEMs Functionality | Stent | 9/20/2024 |
| AU: Pending Patent | Medical Devices Having MEMs Functionality | Stent | 9/20/2024 |
| MX: Pending Patent | Medical Devices Having MEMs Functionality | Stent | 9/20/2024 |
| EP: Pending Patent | Medical Devices Having MEMs Functionality | Stent | 9/25/2024 |
| US: Patent No. 8,845,713 | Medical Devices Having MEMs Functionality | Material | 10/17/2024 |
| US: Patent No. 7,235,098 | DIV: Self-Supporting Laminated Films, Structural Materials and Medical Devices | Stent | 3/24/2025 |
| US: Patent No. 7,704,274 | Implantable Graft and Methods | Drug Delivery | 7/28/2025 |
| EP: Pending Patent | Metallic Drug-Releasing Medical Devices and Method of Making | Drug Delivery | 7/28/2025 |
| JP: Patent No. 5102029 | Metallic Drug-Releasing Medical Devices and Method of Making | Drug Delivery | 7/28/2025 |
| CA: Patent No. 2574972 | Metallic Drug-Releasing Medical Devices and Method of Making | Drug Delivery | 7/28/2025 |
| AU: Pending Patent | Metallic Drug-Releasing Medical Devices and Method of Making | Drug Delivery | 7/28/2025 |
| MX: Patent No. 276255 | Metallic Drug-Releasing Medical Devices and Method of Making | Drug Delivery | 7/28/2025 |
| CN: Pending Patent | Metallic Drug-Releasing Medical Devices and Method of Making | Drug Delivery | 7/28/2025 |
| US: Patent No. 8,268,340 | DIV: Implantable Materials Having Engineered Surfaces and Method of Making Same | Surface Technology | 8/20/2025 |
| US: Patent No. 8,732,935 | DIV: Stent-Graft with Proximal and Distal Attachment | Stent-Graft Device | 8/31/2025 |
| CA: Patent No. 2,780,092 - | DIV: Methods and Apparatus for Manufacturing an Intravascular Stent | Stent-Graft Device | 8/31/2025 |
| CA: Patent No. 2780089 | DIV: Methods and Apparatus for Manufacturing and Intravascular Stent | Stent-Graft Device | 8/31/2025 |
| US: Patent No. 8,641,754 | CON: Stent-Graft with Proximal and Distal Attachment, Delivery | Stent-Graft Device | 9/9/2025 |
| US: Patent No. 8,247,020 | CON: Stent-Graft with Proximal and Distal Attachment, Delivery | Stent-Graft Device | 9/9/2025 |
| CA: Pending Patent | Stents with Metallic Covers and Methods of Making Same | Stent-Graft Device | 9/9/2025 |
| AU: Pending Patent | Stents with Metallic Covers and Methods of Making Same | Stent-Graft Device | 9/9/2025 |
| MX: Pending Patent | Stents with Metallic Covers and Methods of Making Same | Process | 9/14/2025 |
| CN: Pending Patent | Stents with Metallic Covers and Methods of Making Same | Process | 9/14/2025 |
| US: Pending Patent | Methods of Making Shape Memory Films By Chemical Vapor Deposition | Stent | 11/22/2025 |
| US: Pending Patent | CON: Implantable Expandable Devices Having Regions of Different Mechanical Properties | Stent | 12/5/2025 |
| US: Patent No. 8,641,754 | DIV: Endoluminal Stent, Self-Supporting Endoluminal Graft | Stent | 1/31/2026 |
| AU: Patent No. 2006284818 | Covered Stent with Proximal and Distal Attachment | Stent-Graft Device | 8/30/2026 |
| CA: Patent No. 2621299 | Covered Stent with Proximal and Distal Attachment | Stent-Graft Device | 8/30/2026 |
| CN: Pending Patent | CN: Covered Stent with Proximal and Distal Attachment, Delivery Attachment | Stent-Graft Device | 8/30/2026 |
| EP: Pending Patent | EP: Covered Stent with Proximal and Distal Attachment | Stent-Graft Device | 8/30/2026 |
| JP: Patent No. 5331479 | Covered Stent with Proximal and Distal Attachment | Stent-Graft Device | 8/30/2026 |
| JP: Patent No. 305389 | Covered Stent with Proximal and Distal Attachment | Process | 9/14/2026 |
| AU: Pending Patent | Methods of Making Shape Memory Films By Chemical Vapor Deposition | Process | 9/14/2026 |
| CA: Pending Patent | Methods of Making Shape Memory Films By Chemical Vapor Deposition | Process | 9/14/2026 |
| CN: Pending Patent | Methods of Making Shape Memory Films By Chemical Vapor Deposition | Process | 9/14/2026 |
| MX: Pending Patent | Methods of Making Shape Memory Films By Chemical Vapor Deposition | Stent | 12/14/2026 |
| US: Patent No. 8,529,616 | DIV: Implantable Expandable Medical Having Regions of Differential Mechanical Properties | Process - Stent-Graft | 1/31/2027 |
| AU: Patent No. 2007211284 | Methods of Making Medical Devices | Process - Stent-Graft | 1/31/2027 |
| CA: Patent No. 2640731 | Methods of Making Medical Devices | Process - Stent-Graft | 1/31/2027 |
| CN: Pending Patent | Methods of Making Medical Devices | Process - Stent-Graft | 1/31/2027 |
| EP: Pending Patent | Methods of Making Medical Devices | Process - Stent-Graft | 1/31/2027 |
| JP: Patent No. 5143025 | Methods of Making Medical Devices | Process - Stent-Graft | 1/31/2027 |
| MX: Pending Patent | Methods of Making Medical Devices | Material | 4/5/2027 |

6/22/2016

ABPS PATENT PORTFOLIO

| Geography/Patent ##/Status | Title (CIP= Continuation in part, PCT = Patent cooperation Treaty DIV = Divisional, CON = Continuation) | Family | Expiration (Est. for Pending) |
|---|---|---|---|
| AU: Patent No. 2008237206 | Thin Film Tissue Repair Matrix | Material | 4/5/2027 |
| CA: Pending Patent | Thin Film Tissue Repair Matrix | Stent | 5/2/2027 |
| US: Patent No. 8,348,990 | CON: Implantable Expandable Medical Having Regions of Differential Mechanical Properties | Stent | 5/31/2027 |
| US: Patent No. 7,980,289 | CON: Endoluminal Stent Having Mid-Strut Interconnecting Members | Stent | 8/31/2027 |
| US: Patent No. 8,187,318 | Stent-Graft with Proximal and Distal Attachment | Stent-Graft Device | 10/24/2027 |
| US: Patent No. 8,142,491 | DIV: Stent Segments Axially Connected by Thin Film | Stent-Graft Device | 11/22/2027 |
| US: Patent No. 9,107,605 | CIP: Device for In Vivo Delivery of Bioactive Agents | Drug Delivery | 11/27/2028 |
| US: Patent No. 8,147,859 | Implantable Material Patterned Surface of Raised Elements | Surface Technology | 11/27/2028 |
| US: Patent No. 8,679,517 | CIP: Implantable Materials Having Engineered Surfaces and Method of Making Same | Surface Technology | 11/27/2028 |
| US: Patent No. 8,709,066 | CON: Implantable Materials Having Engineered Surfaces and Method of Making | Surface Technology | 4/7/2028 |
| EP: Pending Patent | Thin Film Tissue Repair Matrix | Material | 4/7/2028 |
| DE: Patent No. EP 2175901 | Thin Film Tissue Repair Matrix | Material | 4/7/2028 |
| FR: Patent No. EP 2175901 | Thin Film Tissue Repair Matrix | Material | 4/7/2028 |
| GB: Patent No. EP 2175901 | Thin Film Tissue Repair Matrix | Material | 4/7/2028 |
| E: Patent No. EP 2175901 | Thin Film Tissue Repair Matrix | Material | 4/7/2028 |
| IT: Patent No. EP 2175901 | Thin Film Tissue Repair Matrix | Material | 4/7/2028 |
| NL: Patent No. EP 2175901 | Thin Film Tissue Repair Matrix | Material | 4/7/2028 |
| US: Patent No. 8,142,490 | Thin Film Tissue Repair Matrix | Material | 5/21/2028 |
| US: Patent No. 8,906,085 | CON: Stent Segments Axially Connected by Thin Film | Stent-Graft Device | 5/21/2028 |
| EP: Patent No. 2200535 | Stent Segments Axially Connected by Thin Film | Stent-Graft Device | 10/16/2028 |
| AU: Patent No. 2008212424 | Medical Sheet | Graft - Thin Film | 10/16/2028 |
| CA: Pending Patent | Medical Sheet | Graft - Thin Film | 10/24/2028 |
| EP: Pending Patent | Medical Sheet | Graft - Thin Film | 10/24/2028 |
| AU: Patent No. 2008237542 | Medical Device including a Thin Metallic Film Component Attached to Polymeric | Stent-Graft Device | 10/28/2028 |
| CA: Pending Patent | Medical Device including a Thin Metallic Film Component Attached to Polymeric Component | Stent-Graft Device | 10/28/2028 |
| EP: Patent No. 2055343 | Medical Device including a Thin Metallic Film Component Attached to Polymeric Component | Stent-Graft Device | 10/28/2028 |
| DE: Patent No. 2055343 | Medical Device including a Thin Metallic Film Component Attached to Polymeric Component | Stent-Graft Device | 10/28/2028 |
| ES: Patent No. 2055343 | Medical Device including a Thin Metallic Film Component Attached to Polymeric Component | Stent-Graft Device | 10/28/2028 |
| FR: Patent No. 2055343 | Medical Device including a Thin Metallic Film Component Attached to Polymeric Component | Stent-Graft Device | 10/28/2028 |
| GB: Patent No. 2055343 | Medical Device including a Thin Metallic Film Component Attached to Polymeric Component | Stent-Graft Device | 10/28/2028 |
| IT: Patent No. 2055343 | Medical Device including a Thin Metallic Film Component Attached to Polymeric Component | Stent-Graft Device | 10/28/2028 |
| JP: Patent No. 5400349 | Medical Device including a Thin Metallic Film Component Attached to Polymeric Component | Stent-Graft Device | 10/28/2028 |
| JP: Pending Patent | DIV: Medical Device including Thin Metallic Film Component attached Polymer Component | Stent-Graft Device | 10/28/2028 |
| US: Patent No. 7,736,687 | Medical Devices including Thin Metallic Film Component attached Polymer Component | Process - Stent-Graft | 3/12/2029 |
| US: Patent No. 8,647,700 | Medical Devices with Monolithic Construction | Process - Stent-Graft | 3/12/2029 |
| US: Pending Patent | CON: Methods of Making Medical Devices | Process - Material | 4/23/2029 |
| CH: Patent No. 1620047 | DIV: Implantable Materials Having Engineered Surfaces and Method of Making Same | Material | 11/11/2029 |
| DE: Patent No. 1620047 | Metallic Implantable Grafts and Method of Making Same | Graft - Thin Film | 11/11/2029 |
| EP: Patent No. 1620047 | Metallic Implantable Grafts and Method of Making Same | Graft - Thin Film | 11/11/2029 |
| ES: Patent No. 1620047 | Metallic Implantable Grafts and Method of Making Same | Graft - Thin Film | 11/11/2029 |
| FR: Patent No. 1620047 | Metallic Implantable Grafts and Method of Making Same | Graft - Thin Film | 11/11/2029 |
| GB: Patent No. 1620047 | Metallic Implantable Grafts and Method of Making Same | Graft - Thin Film | 11/11/2029 |
| IE: Patent No. 1620047 | Metallic Implantable Grafts and Method of Making Same | Graft - Thin Film | 11/11/2029 |
| MX: Patent No. 260709 | Metallic Implantable Grafts and Method of Making Same | Graft - Thin Film | 11/11/2029 |

6/22/2016

ABPS PATENT PORTFOLIO

| Geography/Patent #/Status | Title (CIP; Continuation in part, PCT = Patent cooperation Treaty DIV = Divisional, CON = Continuation) | Family | Expiration (Est. for Pending) |
|---|---|---|---|
| NL: Patent No. 1620047 | Metallic Implantable Grafts and Method of Making Same | Stent-Graft Device | 11/18/2029 |
| EP: Patent No. 1267749 | Endoluminal Implantable Devices and Method of Making Same | Stent-Graft Device | 11/18/2029 |
| CH: Patent No. 1267749 | Endoluminal Implantable Devices and Method of Making Same | Stent-Graft Device | 11/18/2029 |
| DE: Patent No. 1267749 | Endoluminal Implantable Devices and Method of Making Same | Stent-Graft Device | 11/18/2029 |
| ES: Patent No. 1267749 | Endoluminal Implantable Devices and Method of Making Same | Stent-Graft Device | 11/18/2029 |
| FR: Patent No. 1267749 | Endoluminal Implantable Devices and Method of Making Same | Stent-Graft Device | 11/18/2029 |
| GB: Patent No. 1267749 | Endoluminal Implantable Devices and Method of Making Same | Stent-Graft Device | 11/18/2029 |
| IE: Patent No. 1267749 | Endoluminal Implantable Devices and Method of Making Same | Stent-Graft Device | 11/18/2029 |
| NL: Patent No. 1267749 | Endoluminal Implantable Devices and Method of Making Same | Process - Device | 6/15/2030 |
| US: Pending Patent | CON: Methods of Making Medical Devices | Process - Device | 10/28/2030 |
| AU: Pending Patent | Implantable Materials Having Engineered Surfaces and Method of Making Same | Surface Technology | 5/3/2032 |
| CA: Pending Patent | Implantable Materials Having Engineered Surfaces and Method of Making Same | Surface Technology | 5/3/2032 |
| CN: Pending Patent | Implantable Materials Having Engineered Surfaces and Method of Making Same | Stent | 5/9/2032 |
| EP: Pending Patent | Implantable Materials Having Engineered Surfaces and Method of Making Same | Surface Technology | 5/14/2032 |
| JP: Pending Patent | Implantable Materials Having Engineered Surfaces and Method of Making Same | Surface Technology | 5/14/2032 |
| MX: Pending Patent | Implantable Materials Having Engineered Surfaces and Method of Making Same | Surface Technology | 8/16/2032 |

6/22/2016

PSI Patent Portfolio

| Geography/Patent #/Status | Title (CIP: Continuation in part, PCT = Patent cooperation Treaty DIV = Divisional, CON = Continuation) | Family | Expiration (Est. for Pending) |
|---|---|---|---|
| US: Patent No. 8,668,818 | CON: Method for Mass Transfer of Micro-Patterns onto Medical Devices | Process - Device | 10/28/2030 |
| US: Pending Patent | CON: Method for Mass Transfer of Micro-Patterns onto Medical Devices | Process | 4/5/2031 |
| US: Patent No. 8,329,021 | Method for Mass Transfer of Micro-Patterns onto Medical Device | Surface Technology | 5/3/2031 |
| US: Patent No. 8,728,565 | Endoluminal Implantable Surfaces, Stents, and Grafts and Method of Making Same | Process - Device | 5/3/2031 |
| US: Pending Patent | CON: Endoluminal Implantable Surfaces, Stents, and Grafts and Method of Making Same | Surface Technology | 5/9/2031 |
| US: Patent No. 8,632,583 | Implantable Medical Device having Enhanced Endothelial Migration Features and Method | Process - Device | 10/27/2031 |
| AU: Pending Patent | Implantable Medical Device having Enhanced Endothelial Migration Features and Method | Process - Device | 10/27/2031 |
| BR: Pending Patent | Method for Mass Transfer of Micro-Patterns onto Medical Devices | Process - Device | 10/27/2031 |
| CA: Pending Patent | Method for Mass Transfer of Micro-Patterns onto Medical Devices | Process - Device | 10/27/2031 |
| CN: Pending Patent | Method for Mass Transfer of Micro-Patterns onto Medical Devices | Process - Device | 10/27/2031 |
| EP: Pending Patent | Method for Mass Transfer of Micro-Patterns onto Medical Devices | Process - Device | 10/27/2031 |
| IL: Pending Patent | Method for Mass Transfer of Micro-Patterns onto Medical Devices | Process - Device | 10/27/2031 |
| IN: Pending Patent | Method for Mass Transfer of Micro-Patterns onto Medical Devices | Process - Device | 10/27/2031 |
| JP: Pending Patent | Method for Mass Transfer of Micro-Patterns onto Medical Devices | Process - Device | 10/27/2031 |
| MX: Pending Patent | Method for Mass Transfer of Micro-Patterns onto Medical Devices | Surface Technology | 5/3/2032 |
| AU: Pending Patent | Endoluminal Implantable Surfaces and Method of Making the Same | Surface Technology | 5/3/2032 |
| CA: Pending Patent | Endoluminal Implantable Surfaces and Method of Making the Same | Surface Technology | 5/3/2032 |
| CN: Pending Patent | Endoluminal Implantable Surfaces and Method of Making the Same | Surface Technology | 5/3/2032 |
| EP: Pending Patent | Endoluminal Implantable Surfaces and Method of Making the Same | Surface Technology | 5/3/2032 |
| JP: Pending Patent | Endoluminal Implantable Surfaces and Method of Making the Same | Surface Technology | 5/3/2032 |
| MX: Pending Patent | Endoluminal Implantable Surfaces and Method of Making the Same | Surface Technology | 5/3/2032 |
| AU: Pending Patent | Implantable Medical Device having Enhanced Endothelial Migration Features and Method | Stent | 5/9/2032 |
| CA: Pending Patent | Implantable Medical Device having Enhanced Endothelial Migration Features and Method | Stent | 5/9/2032 |
| CN: Pending Patent | Implantable Medical Device having Enhanced Endothelial Migration Features and Method | Stent | 5/9/2032 |
| EP: Pending Patent | Implantable Medical Device having Enhanced Endothelial Migration Features and Method | Stent | 5/9/2032 |
| MX: Pending Patent | Implantable Medical Device having Enhanced Endothelial Migration Features and Method | Stent | 5/9/2032 |
| JP: Pending Patent | Implantable Medical Device having Enhanced Endothelial Migration Features and Method | Stent | 5/9/2032 |
| US: Pending Patent | CON: Implantable Medical Device having Enhanced Endothelial Migration Features and Method | Stent | 5/14/2021 |
| US: Pending Patent | CIP: Grooved Drug-Eluting Medical Devices and Method of Making Same | Surface Technology | 5/18/2021 |
| AU: Pending Patent | Grooved Drug-Eluting Medical Devices and Method of Making Same | Drug Delivery | 8/16/2032 |
| CA: Pending Patent | Grooved Drug-Eluting Medical Devices and Method of Making Same | Drug Delivery | 8/16/2032 |
| CN: Pending Patent | Grooved Drug-Eluting Medical Devices and Method of Making Same | Drug Delivery | 8/16/2032 |
| EP: Pending Patent | Grooved Drug-Eluting Medical Devices and Method of Making Same | Drug Delivery | 8/16/2032 |
| JP: Pending Patent | Grooved Drug-Eluting Medical Devices and Method of Making Same | Drug Delivery | 8/16/2032 |
| MX: Pending Patent | Grooved Drug-Eluting Medical Devices and Method of Making Same | Drug Delivery | 8/16/2032 |
| US: Patent No. 9,050,394 | Method for Making Topographical Features on a Surface of a Medical Device | Stent | 11/15/2032 |
| US: Pending Patent | Stents having a Hybrid Pattern and Methods of Manufacture | Process | 8/8/2033 |
| AU: Pending Patent | Topographical Features and Patterns on a Surface of a Medical Device | Surface Technology | 10/18/2032 |
| CA: Pending Patent | Topographical Features and Patterns on a Surface of a Medical Device | Surface Technology | 10/18/2032 |
| CA: Pending Patent | Method for Making Topographical Features on a Surface of a Medical Device | Surface Technology | 10/18/2032 |
| CA: Pending Patent | Topographical Features and Patterns on a Surface of a Medical | Surface Technology | 10/18/2032 |
| US: Pending Patent | CIP: Topographical Features and Patterns on a Surface of a Medical | Surface Technology | 10/18/2032 |
| AU: Pending Patent | Inverted Cylindrical Magnetron (ICM) System and Methods of Use | Process | 8/8/2033 |
| CA: Pending Patent | Inverted Cylindrical Magnetron (ICM) System and Methods of Use | Process | 8/8/2033 |
| EP: Pending Patent | Inverted Cylindrical Magnetron (ICM) System and Methods of Use | Process | 8/8/2033 |

6/22/2016

PSI Patent Portfolio

| Geography/Patent #/Status | Title (CIP: Continuation in part, PCT = Patent cooperation Treaty DIV = Divisional, CON = Continuation) | Family | Expiration (Est. for Pending) |
|---|---|---|---|
| JP: Pending Patent | Inverted Cylindrical Magnetron (ICM) System and Methods of Use | Surface Technology | 8/8/2033 |
| US: Pending Patent | Inverted Cylindrical Magnetron (ICM) System and Methods of Use | Surface Technology | 10/16/2033 |
| EP: Pending Patent | Method for Making Topographical Features on a Surface of a | Surface Technology | 10/16/2033 |
| JP: Pending Patent | Method for Making Topographical Features on a Surface of a | Stent | 11/14/2033 |
| AU: Pending Patent | Stents having a Hybrid Pattern and Methods of Manufacture | Stent | 11/14/2033 |
| CA: Pending Patent | Stents having a Hybrid Pattern and Methods of Manufacture | Stent | 11/14/2033 |
| EP: Pending Patent | Stents having a Hybrid Pattern and Methods of Manufacture | Stent | 11/14/2033 |
| EP: Pending Patent | Stents having a Hybrid Pattern and Methods of Manufacture | Surface Technology | 2/24/2034 |
| JP: Pending Patent | Topographical Features and Patterns on a Surface of a Medical | Surface Technology | 2/24/2034 |
| EP: Pending Patent | Topographical Features and Patterns on a Surface of a Medical | Stent-Graft Device | 3/14/2034 |
| JP: Pending Patent | Topographical Features and Patterns on a Surface of a Medical | Stent-Graft Device | 3/14/2034 |
| EP: Pending Patent | Monolithic Medical Devices, Methods of Making and Using the Same | Stent-Graft Device | 3/14/2034 |
| JP: Pending Patent | Monolithic Medical Devices, Methods of Making and Using the Same | Stent-Graft Device | 3/14/2034 |
| AU: Pending Patent | Monolithic Medical Devices, Methods of Making and Using the Same | Stent-Graft Device | 3/14/2034 |
| CA: Pending Patent | Monolithic Medical Devices, Methods of Making and Using the Same | Stent-Graft Device | 3/14/2034 |
| US: Pending Patent | Monolithic Medical Devices, Methods of Making and Using the Same | Laser Cutting System | 4/25/2034 |
| US: Pending Patent | Adaptive Guide Bushing for Laser Tube Cutting Systems | Laser Cutting System | 4/27/2035 |
| PCT: Patent Pending | Adaptive Guide Bushing for Laser Tube Cutting Systems | Material | 4/27/2035 |
| US in process | PROV: Nested Crown Stent | Stent | 99/99/2036 |
| US in process | PROV: Monolithic Stent Design Features | Stent | 99/99/2036 |

6/22/2016

ABPS VENTURE ONE PATENT PORTFOLIO

6/22/2016

| Geography/Patent/#/Status | Title (CIP: Continuation in part, PCT= Patent cooperation Treaty DIV = Divisional CON = Continuation) | Family | Expiration (Est. for Pending) |
|---|---|---|---|
| US Patent No. 6,458,153 | Endoluminal Cardiac and Venous Valve Prostheses and Methods of Manufacture and Delivery Thereof | Valve Stent | 12/31/2019 |
| US Patent No. 6,652,578 DIV - Endoluminal Cardiac and Venous Valve Prostheses and Methods of Manufacture and Delivery Thereof | | Valve Stent | 12/31/2019 |
| US Patent No. 7,338,520 DIV - Endoluminal Cardiac and Venous Valve Prostheses and Methods of Manufacture and Delivery Thereof | | Valve Stent | 12/31/2019 |
| EP Patent No. 1187582 | Endoluminal Cardiac and Venous Valve Prostheses and Methods of Manufacture and Delivery Thereof | Valve Stent | 12/18/2020 |
| DE Patent No. 1187582 | Endoluminal Cardiac and Venous Valve Prostheses and Methods of Manufacture and Delivery Thereof | Valve Stent | 12/18/2020 |
| FR Patent No. 1187582 | Endoluminal Cardiac and Venous Valve Prostheses and Methods of Manufacture and Delivery Thereof | Valve Stent | 12/18/2020 |
| GB Patent No. 1187582 | Endoluminal Cardiac and Venous Valve Prostheses and Methods of Manufacture and Delivery Thereof | Valve Stent | 12/18/2020 |
| IE Patent No. 1187582 | Endoluminal Cardiac and Venous Valve Prostheses and Methods of Manufacture and Delivery Thereof | Valve Stent | 12/18/2020 |
| IT Patent No. 1187582 | Endoluminal Cardiac and Venous Valve Prostheses and Methods of Manufacture and Delivery Thereof | Valve Stent | 12/18/2020 |
| CA Patent No. 2362439 | Endoluminal Cardiac and Venous Valve Prostheses and Methods of Manufacture and Delivery Thereof | Valve Stent | 12/18/2020 |
| AU Patent No. 783906 | Endoluminal Cardiac and Venous Valve Prostheses and Methods of Manufacture and Delivery Thereof | Valve Stent | 12/18/2020 |
| US Patent No. 7,018,408 DIV - Endoluminal Cardiac and Venous Valve Prostheses and Methods of Manufacture and Delivery Thereof | | Valve Stent | 12/31/2019 |
| US Patent No. 7,799,069 DIV - Endoluminal Cardiac and Venous Valve Prostheses and Methods of Manufacture and Delivery Thereof | | Valve Stent | 12/31/2019 |
| US Patent No. 2006201194 DIV - Endoluminal Cardiac and Venous Valve Prostheses and Methods of Manufacture and Delivery Thereof | | Valve Stent | 12/31/2019 |
| AU Patent No. 8,221,493 DIV - Endoluminal Cardiac and Venous Valve Prostheses and Methods of Manufacture and Delivery Thereof | | Valve Stent | 12/31/2019 |
| AU Patent No. 2008200570 DIV - Endoluminal Cardiac and Venous Valve Prostheses and Methods of Manufacture and Delivery Thereof | | Valve Stent | 12/31/2019 |
| US Patent No. 8,992,597 CON - Endoluminal Cardiac and Venous Valve Prostheses and Methods of Manufacture and Delivery Thereof | | Valve Stent | 12/31/2019 |
| US Pending Patent | | Valve Stent | |

Page 1 of 1

| IRB NO. | Title | Inventors |
|---------|-------|-----------|
| | | |
| 2009-09-01 | | A. Garza |
| 2010-01-07 | | KH-K Young |
| 2010-03-01 | | KH-K Young |
| 2010-05-01 | | A. Garza |
| 2010-08-01 | | J. Palmaz |
| 2011-06-01 | | M. Poor |
| 2011-06-02 | | S. Carpenter & R. Baenzinger |
| 2011-06-03 | | S. Carpenter & A. Garza |
| 2011-06-01 | | J. Palmaz |
| 2011-08-02 | | A. Garza |
| 2011-08-03 | | A. Garza |
| 2011-11-01 | | J. Palmaz |
| 2012-03-01 | | M. Poor |
| 2012-04-01 | | D. Xu |
| 2012-06-01 | | D. Xu |
| 2012-07-01 | | Poor |
| 2012-07-02 | | Carpenter |
| 2013-03-01 | | Poor |
| 2013-10-01 | | (none listed) |
| 2013-10-02 | | Carpenter, Poor |
| 2013-10-03 | | (none listed) |
| 2013-10-04 | | (none listed) |
| 2013-10-05 | | (none listed) |
| 2014-06-01 | | Poor |
| 2014-07-01 | | Poor |
| 2015-09-01 | | Poor |

PSI TRADEMARKS

3/2/2016

| Mark | International Class | Goods/Services | Filed | Allowed | Registered |
|------|--------------------|--------------------|--------|---------|------------|
| MONOLITHIC | 10 | Medical devices, namely, stents | 6/7/2013 | 12/24/2013 | |

## EXHIBIT B

### LIST OF ASSUMED CONTRACTS AND MAXIMUM CURE COSTS

| | Agreement | Maximum Cure Costs |
|---|---|---|
| 1. | Settlement Agreement and Mutual Release dated as of May 19, 2014, among Christopher Boyle, Advanced Bio Prosthetic Surfaces, Ltd., ABPS Management, LLC, ABPS Venture One, Ltd., Palmaz Scientific, Inc., and Julio Palmaz (the "**Boyle Agreement**") | 0 |
| 2. | Trademark License Agreement dated as of May 19, 2008, by and between Cordis Corporation and Palmaz Scientific, Inc. | 0 |
| 3. | Third Amendment of License Agreement and Restatement Thereof dated as of May 19, 2008, by and between Cordis Corporation, Advanced Bio Prosthetic Surfaces, Ltd., and ABPS Venture One, Ltd. | 0 |
| 4. | Development Agreement dated as of November 2, 2015, by and between Palmaz Scientific, Inc. and *[name of counterparty omitted pursuant to confidentiality requirements in Section 16 of the agreement]* | 0 |
| 5. | Subscription Agreement dated as of October 31, 2010 between Palmaz Scientific, Inc. and TriVentures II Fund, L.P. | 0 |
| 6. | Amended and Restated Agreement of Limited Partnership of TriVentures II Fund, L.P., as amended by Amendment No. 3 to the Agreement of Limited Partnership of TriVentures II Fund, L.P. dated as of February 25, 2016 | 0 |

522769 000002 16802084.21

## EXHIBIT C-1

### CREDIT BID INDEBTEDNESS – SECURED

1. Promissory Note from Palmaz Scientific, Inc. to Lennox Capital Partners, LP dated July 24, 2014 in the original principal amount of $1,000,000.
   a. Letter Amendment to Promissory Notes among Lennox Capital Partners, LP, SPI Dallas Investments, LP and Palmaz Scientific, Inc. dated July 14, 2015
   b. Purchase Agreement between Lennox Capital Partners, LP and Oak Court Partners, Ltd. with Allonge for Promissory Note dated August 28, 2015
   c. Security Agreement by Palmaz Scientific, Inc., Advanced Bio Prosthetic Surfaces, Ltd., and ABPS Venture One, Ltd. dated July 22, 2015 in favor of Lennox Capital Partners, LP
   d. Intellectual Property Security Agreement by Palmaz Scientific, Inc., Advanced Bio Prosthetic Surfaces, Ltd., and ABPS Venture One, Ltd. dated July 22, 2015 in favor of Lennox Capital Partners, LP
   e. UCC-1 Financing Statement with Debtor as Palmaz Scientific, Inc. and Secured Party as Lennox Capital Partners, LP filed August 5, 2015 in Delaware as file # 2015 3396222
      i. UCC-3 Assignment to Secured Party as Oak Court Partners, Ltd. filed September 15, 2015 in Delaware as file # 20155193866
   f. UCC-1 Financing Statement with Debtors as Advanced Bio Prosthetic Surfaces, Ltd. and ABPS Venture One, Ltd., and Secured Party as Lennox Capital Partners, LP filed August 5, 2015 in Texas as file # 15-0025070696
      i. UCC-3 Assignment to Secured Party as Oak Court Partners, Ltd. filed September 15, 2015 in Texas as file # 15-00355833

2. Promissory Note from Palmaz Scientific, Inc. to SPI Dallas Investments, LP dated July 24, 2014 in the original principal amount of $1,500,000
   a. Letter Amendment to Promissory Notes among Lennox Capital Partners, LP, SPI Dallas Investments, LP and Palmaz Scientific, Inc. dated July 14, 2015
   b. Purchase Agreement between Lennox Dallas Partners, LP (f/k/a SPI Dallas Investments, LP) and Oak Court Partners, Ltd. with Allonge for Promissory Note dated August 28, 2015
   c. Security Agreement by Palmaz Scientific, Inc., Advanced Bio Prosthetic Surfaces, Ltd., and ABPS Venture One, Ltd. dated July 22, 2015 in favor of SPI Dallas Investments, LP
   d. Intellectual Property Security Agreement by Palmaz Scientific, Inc., Advanced Bio Prosthetic Surfaces, Ltd., and ABPS Venture One, Ltd. dated July 22, 2015 in favor of SPI Dallas Investments, LP

EXHIBIT C-1

    e.  UCC-1 Financing Statement with Debtor as Palmaz Scientific, Inc. and Secured Party as SPI Dallas Investments, LP filed August 5, 2015 in Delaware as file # 2015 3396107

        i.  UCC-3 Assignment to Secured Party as Oak Court Partners, Ltd. filed September 15, 2015 in Delaware as file # 20154089685

    f.  UCC-1 Financing Statement with Debtor as Advanced Bio Prosthetic Surfaces, Ltd. and and ABPS Venture One, Ltd., and Secured Party as SPI Dallas Investments, LP filed August 5, 2015 in Texas as file # 15-0025070212

        i.  UCC-3 Assignment to Secured Party as Oak Court Partners, Ltd. filed September 15, 2015 in Texas as file # 15-00295592

3. Draw Note from Palmaz Scientific, Inc. to Julio Palmaz dated June 2, 2015 in the original principal amount of up to $1,000,000

    a.  Security Agreement by Palmaz Scientific, Inc., Advanced Bio Prosthetic Surfaces, Ltd., and ABPS Venture One, Ltd. dated September 17, 2015 in favor of Julio Palmaz

    b.  UCC-1 Financing Statement with Debtor as Palmaz Scientific, Inc. and Secured Party as Julio Palmaz filed February 10, 2016 in Delaware as file # 2016 0822369

    c.  UCC-1 Financing Statement with Debtor as Advanced Bio Prosthetic Surfaces, Ltd. and Secured Party as Julio Palmaz filed February 10, 2016 in Texas as file # 16-0004507033

    d.  UCC-1 Financing Statement with Debtor as ABPS Venture One, Ltd. and Secured Party as Julio Palmaz filed February 10, 2016 in Texas as file # 16-0004506880

    e.  United States Patent and Trademark Office Notice of Recordation of Assignment Document dated February 18, 2016 #900354394 (Trademarks)

    f.  United States Patent and Trademark Office Notice of Recordation of Assignment Document dated February 26, 2016 #503692759 (Patents)

4. Convertible Draw Note from Palmaz Scientific, Inc. to Oak Court Partners, Ltd dated June 16, 2015 in the original principal amount of up to $4,500,000

    a.  Security Agreement by Palmaz Scientific, Inc., Advanced Bio Prosthetic Surfaces, Ltd., and ABPS Venture One, Ltd. dated July 22, 2015 in favor of Oak Court Partners, Ltd.

    b.  UCC-1 Financing Statement with Debtor as Palmaz Scientific, Inc. and Secured Party as Oak Court Partners, Ltd. filed February 10, 2016 in Delaware as file # 2016 0822377

    c.  UCC-1 Financing Statement with Debtor as Advanced Bio Prosthetic Surfaces, Ltd. and Secured Party as Oak Court Partners, Ltd. filed February 10, 2016 in Texas as file # 16-0004506648

**Exhibit C-1**

    d.  UCC-1 Financing Statement with Debtor as ABPS Venture One, Ltd. and Secured Party as Oak Court Partners, Ltd. filed February 10, 2016 in Texas as file # 16-0004506769

    e.  United States Patent and Trademark Office Notice of Recordation of Assignment Document dated February 18, 2016 #900354406 (Trademarks)

    f.  United States Patent and Trademark Office Notice of Recordation of Assignment Document dated February 29, 2016 #503694543 (Patents)

5.  Convertible Draw Note from Palmaz Scientific, Inc. to Oak Court Partners, Ltd dated September 17, 2015 in the original principal amount of up to $3,000,000

    a.  Security Agreement by Palmaz Scientific, Inc., Advanced Bio Prosthetic Surfaces, Ltd., and ABPS Venture One, Ltd. dated September 17, 2015 in favor of Oak Court Partners, Ltd.

    b.  UCC-1 Financing Statement with Debtor as Palmaz Scientific, Inc. and Secured Party as Oak Court Partners, Ltd. filed February 11, 2016 in Delaware as file # 2016 0838092

    c.  UCC-1 Financing Statement with Debtor as Advanced Bio Prosthetic Surfaces, Ltd. and Secured Party as Oak Court Partners, Ltd. filed February 11, 2016 in Texas as file # 16-0004555753

    d.  UCC-1 Financing Statement with Debtor as ABPS Venture One, Ltd. and Secured Party as Oak Court Partners, Ltd. filed February 11, 2016 in Texas as file # 16-0004555632

    e.  United States Patent and Trademark Office Notice of Recordation of Assignment Document dated February 18, 2016 #900354397 (Trademarks)

    f.  United States Patent and Trademark Office Notice of Recordation of Assignment Document dated February 26, 2016 #503694177 (Patents)

6.  Draw Note from Palmaz Scientific, Inc. to Oak Court Partners, Ltd dated December 30, 2015 in the original principal amount of up to $1,500,000

    a.  Security Agreement by Palmaz Scientific, Inc., Advanced Bio Prosthetic Surfaces, Ltd., and ABPS Venture One, Ltd. dated December 30, 2015 in favor of Oak Court Partners, Ltd.

    b.  UCC-1 Financing Statement with Debtor as Palmaz Scientific, Inc. and Secured Party as Oak Court Partners, Ltd. filed February 16, 2016 in Delaware as file # 2016 0917110

    c.  UCC-1 Financing Statement with Debtor as Advanced Bio Prosthetic Surfaces, Ltd. and Secured Party as Oak Court Partners, Ltd. filed February 16, 2016 in Texas as file # 16-0004971290

EXHIBIT C-1

d.  UCC-1 Financing Statement with Debtor as ABPS Venture One, Ltd. and Secured Party as Oak Court Partners, Ltd. filed February 16, 2016 in Texas as file # 16-0004971179

e.  United States Patent and Trademark Office Notice of Recordation of Assignment Document dated February 19, 2016 #900354468

f.  United States Patent and Trademark Office Notice of Recordation of Assignment Document dated February 29, 2016 #503695390 (Patents)

EXHIBIT C-1

## EXHIBIT C-2

### CREDIT BID INDEBTEDNESS – UNSECURED

Buyer intends to acquire or assume the following unsecured claims against Seller from various third parties and will include the following claims as part of its credit bid:

| Amounts originally owed by Seller to: | Amount: |
|---|---|
| The State of Texas | $ 4,375,430.14 |
| Phil Romano | $ 380,734.03 |
| Steve Solomon* | $ 1,619,298.41 |
| Oak Court Partners, Ltd. | $ 1,061,188.02 |
| Julio Palmaz | $ 298,980.23 |
| Asel & Associates | $ 350,000.00 |
| Elder Bray & Bankler, PC | $ 213,546.02 |
| Rosenbaum IP, P.C. | $ 594,318.34 |
| **Total** | **$ 8,893,495.19** |

\* Steve Solomon's claim has been acquired by Oak Court Partners, Ltd. Steve Solomon will not be a shareholder of Buyer.

EXHIBIT C-2

## EXHIBIT D

**FORMS OF BILL OF SALE, ASSIGNMENT AND ASSUMPTION AGREEMENT**

[*See attached.*]

## EXHIBIT D-1

### FORM OF VACTRONIX
### BILL OF SALE, ASSIGNMENT AND ASSUMPTION AGREEMENT

This Bill of Sale, Assignment and Assumption Agreement (this "**Assignment**") is entered into as of _____, 2016 by and among Palmaz Scientific Inc., a Delaware corporation ("**PSI**"), Advanced Bio Prosthetic Surfaces, Ltd., a Texas limited partnership ("**ABPS**"), and ABPS Venture One, Ltd., a Texas limited partnership ("**ABPS Venture**" and, together with PSI and ABPS, "**Assignor**"), and VACTRONIX Scientific, Inc., a Delaware corporation ("**Assignee**"). Capitalized terms used and not otherwise defined herein shall have the meanings given to them in the Purchase and Sale Agreement dated as of the date hereof by and among Assignor and Assignee (the "**Purchase and Sale Agreement**").

### RECITALS

WHEREAS, Assignor and Assignee entered into the Purchase and Sale Agreement, which provides, among other things, for Assignor to sell and assign to Assignee all of its right, title and interest in and to the Subject Assets, including, without limitation, the Assumed Contracts set forth on Exhibit A attached hereto (collectively, the "**Subject Contracts**"), and Assignee has agreed to assume all liabilities and obligations of Assignor arising after the Closing Date under the Subject Contracts (the "**Assumed Liabilities**"); and

WHEREAS, Assignee has assigned certain of its rights and delegated certain of its obligations under the Purchase and Sale Agreement to HC Litigation Fund, LLC;

NOW, THEREFORE, pursuant to the Purchase and Sale Agreement and in consideration of the mutual covenants and agreements made herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

### AGREEMENT

1. Assignment of Subject Assets. Assignor hereby contributes, sells, assigns, grants, conveys and transfers to Assignee all of such Assignor's right, title and interest in and to the Subject Assets, including the Subject Contracts, Free and Clear (excluding Permitted Encumbrances), but specifically excluding the Harriman litigation matter described in Part IV of Exhibit A of the Purchase and Sale Agreement and Assignee hereby accepts such assignment of the Subject Assets.

2. Assumption of Assumed Liabilities. Assignee hereby assumes the Assumed Liabilities and agrees to pay, perform and discharge, as and when due, the Assumed Liabilities.

3. Terms of the Purchase and Sale Agreement. The terms of the Purchase and Sale Agreement are incorporated herein by this reference. Assignor acknowledges and agrees that the representations, warranties, covenants, agreements and indemnities of Assignor

and its Affiliates contained in the Purchase and Sale Agreement shall not be superseded hereby but shall remain in full force and effect to the full extent provided therein. In the event of any conflict or inconsistency between the terms of the Purchase and Sale Agreement and the terms hereof, the terms of the Purchase and Sale Agreement shall govern.

4. <u>Severability</u>. If any provision of this Assignment or the application of any such provision to any person or circumstance shall be held invalid, illegal or unenforceable in any respect by a court of competent jurisdiction, such invalidity, illegality or unenforceability shall not affect any other provision hereof.

5. <u>Binding Effect</u>. This Assignment shall be binding upon, and, inure to the benefit of, Assignor and Assignee and their respective successors and assigns.

6. **<u>GOVERNING LAW</u>. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, WITHOUT REGARD TO THE PRINCIPLES OF CONFLICTS OF LAWS THEREOF.**

7. <u>Counterparts</u>. This Assignment may be executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Assignment delivered by facsimile, email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Assignment.

*[Signature pages follow.]*

IN WITNESS WHEREOF, the undersigned have executed this Assignment as of the date first written above.

**ASSIGNOR:**

PALMAZ SCIENTIFIC INC.

By: _____
Name: _____
Title: _____

ADVANCED BIO PROSTHETIC
SURFACES, LTD

By: _____,
  its general partner

  By:_____
  Name:_____
  Title:_____

ABPS VENTURE ONE, LTD.

By: _____,
  its general partner

  By:_____
  Name:_____
  Title:_____

**ASSIGNEE:**

VACTRONIX SCIENTIFIC INC.


By: _____
Name: _____
Title: _____

**EXHIBIT D-2**
**HC LITIGATION FORM BILL OF SALE and ASSIGNMENT**

This Bill of Sale and Assignment (this "**Assignment**") is entered into as of _____, 2016 by and among Palmaz Scientific Inc., a Delaware corporation ("**PSI**"), Advanced Bio Prosthetic Surfaces, Ltd., a Texas limited partnership ("**ABPS**"), and ABPS Venture One, Ltd., a Texas limited partnership ("**ABPS Venture**") (ABPS Venture, ABPS, and PSI are collectively referred to as the "**Assignor**"), and HC Litigation Fund, LLC, a Texas limited liability company ("**Assignee**") (together, Assignor and Assignee are the "**Parties**").

**RECITALS**

WHEREAS, Assignor commenced cases under the protection of Chapter 11 of Title 11 of the United States Code by filing voluntary petitions for relief ("**Assignor's Chapter 11 Cases**") with the United States Bankruptcy Court for the Western District of Texas, San Antonio Division (the "**Bankruptcy Court**"), on March 4, 2016, and Assignor's Chapter 11 Cases are being jointly administered under Case No. 16-50552-cag; and

WHEREAS, pursuant to Assignor's Plan of Reorganization as approved by the Bankruptcy Court (the "**Plan**"), Assignor desires to assign to Assignee all of Assignor's rights, title, and interest in and to that certain Litigation defined in the Plan as the "*Harriman Case,*" meaning *Harriman v. Palmaz Scientific*, Cause No. DC-15-12314, pending in the 134th Judicial District in Dallas County" (hereinafter the "**Subject Litigation**").

WHEREAS, Assignee desires to accept the assignment of the Subject Litigation pursuant to the terms of the Plan;

NOW, THEREFORE, in consideration of the mutual covenants and agreements made herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

**AGREEMENT**

1. Assignment of Subject Litigation.  **Assignor hereby contributes, sells, assigns, grants, conveys and transfers to Assignee all of such Assignor's right, title and interest in and to the Subject Litigation, including all rights, claims, causes of action, counterclaims, third-party-claims, defenses, and remedies (for damages, injunctive relief, attorney's fees or otherwise), free and clear of all liens, security interests and encumbrances, so that neither Assignor, their successors or assigns or any third parties shall at any time hereafter have, claim or demand any right or title thereto. Assignee hereby accepts such assignment of the Subject Litigation.**

2. Severability.  If any provision of this Assignment or the application of any such provision to any person, entity or circumstance shall be held invalid, illegal or unenforceable in any respect by a court of competent jurisdiction, such invalidity, illegality or unenforceability shall not affect any other provision hereof.

3

3. <u>Binding Effect</u>.  This Assignment shall be binding upon, and, inure to the benefit of, Assignor and Assignee and their respective successors and assigns.

4. **<u>GOVERNING LAW</u>.  THIS ASSIGNMENT SHALL BE GOVERNED BY AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, WITHOUT REGARD TO THE PRINCIPLES OF CONFLICTS OF LAWS THEREOF.**

5. <u>Counterparts</u>. This Assignment may be executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Assignment delivered by facsimile, e-mail or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Assignment.

*[Signature pages follow.]*

IN WITNESS WHEREOF, the undersigned have executed this Assignment as of the date first written above.

**ASSIGNOR:**

PALMAZ SCIENTIFIC INC.

By: _____

Name: _____

Title: _____


ADVANCED BIO PROSTHETIC
SURFACES, LTD.

By: _____,
    its general partner


By:_____

Name:_____

Title:_____


ABPS VENTURE ONE, LTD.

By: _____,
    its general partner


By:_____

Name:_____

Title:_____

**ASSIGNEE:**

HC LITIGATION FUND, LLC

By: _____

Name: _____

Title: _____

## <u>EXHIBIT E</u>

**BID PROCEDURES ORDER**

*[See attached.]*

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: June 03, 2016.**

_Craig A. Gargotta_
_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| PALMAZ SCIENTIFIC INC., | § | CASE NO. 16-50552 |
|     Debtor. | § | Chapter 11 |
| | § | |
| In re: | § | |
| | § | |
| ADVANCED BIO PROSTHETIC | § | CASE NO. 16-50555 |
| SURFACES, LTD., | § | Chapter 11 |
|     Debtor. | § | |
| | § | |
| In re: | § | |
| | § | |
| ABPS MANAGEMENT, LLC, | § | CASE NO. 16-50556 |
|     Debtor. | § | |
| | § | Chapter 11 |
| | § | |
| In re: | § | |
| | § | CASE NO. 16-50554 |
| ABPS VENTURE ONE, LTD., | § | Chapter 11 |
|     Debtor. | § | (Jointly Administered Under 16-50552) |

**ORDER APPROVING SALE PROCEDURES AND SETTING SALE HEARING RELATING TO DEBTORS' MOTION (A) FOR AUTHORITY TO SELL ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES; (B) TO ESTABLISH PROCEDURES WITH RESPECT TO SUCH SALE (C) TO CONSIDER APPROVAL OF BREAKUP FEE, AND (E) TO SHORTEN AND LIMIT NOTICE**

On May 25th, 2016 came on to be heard the Debtors' Motion (A) For Authority to Sell
Assets Free and Clear of Liens, Claims, and Encumbrances; (B) To Establish Procedures With
Respect to Such Sale and the Assumption, (C) To Consider Approval of Breakup Fee, and (D)
To Shorten and Limit Notice (the "Motion to Sell").

The Motion to Sell seeks, inter alia, entry of an order approving and authorizing the sale
of substantially all of the Debtors' assets on an "AS IS, WHERE IS" basis. The Debtors propose
to sell those assets described more fully in the Motion to Sell to Vactronix Scientific, Inc. or its
assigns ("Vactronix"), the initial bidder for the Debtor's assets, at a purchase price of
$22,600,000.00, or to such other proposed purchaser as may submit the highest and best offer for
the assets at an auction sale to be held prior to the hearing on the Motion to Sell.

IT IS HEREBY ORDERED, AND NOTICE IS GIVEN that the auction sale will be
conducted at 10:00 a.m. Central Daylight Time on June 10th, 2016 at the United States
Bankruptcy Court for the Western District of Texas, Courtroom No. 3, 5th Floor, 615 E. Houston
St., San Antonio, TX 78205. It is further

ORDERED that, competing bids for the assets (substantially in the form described
below) must be submitted by 4:00 p.m. Central Daylight Time on June 8th, 2016. It is further

ORDERED that, on or before 4:00 p.m. CDT on June 8th, 2016, any persons interested in
submitting a competing bid shall deliver such third party's proposed bid, a $250,000.00 deposit
and a copy of the "cash offer" asset purchase agreement attached as Exhibit A hereto, marked to
show changes,(a "Cash Offer Agreement"), to Steve Gerbsman at Gerbsman Partners, 211 Laurel
Grove Avenue, Kentfield, CA 94904, together with proof of the competing bidder's financial
ability to close the transaction (e.g., a lender's commitment letter or a balance sheet evidencing
that the bidder has available cash to close the transaction on or before June 30th, 2016). In

addition, a copy of any executed Cash Offer Agreement, should be delivered to counsel to the Debtors, bkingman@kingmanlaw.com (William B. Kingman, Law Offices of William B. Kingman, P.C., 4040 Broadway, Suite 450, San Antonio, TX 78209) and counsel to the Creditors' Committee, michellelarson@andrewskurth.com (Michelle Larson, Andrews Kurth LLP, 1717 Main Street, Suite 3700, Dallas, Texas 75201). It is further

ORDERED that Vactronix must provide the Debtors and the Creditors' Committee with proof of Vactronix's financial ability to close the cash portion of its bid on or before 4:00 p.m. CDT on June 6th, 2016. It is further

ORDERED that, in order to be qualified, any competitive bid must also:

(1) provide for a closing date on the sale which is no later than June 30th, 2016;

(2) contain substantially the same (or more favorable) terms and conditions as those contained in the Cash Offer Agreement regarding the assets;

(3) not contain any due diligence conditions or financing contingency;

(4) unless Vactronix withdraws its $22,600,000.00 offer on or before 5:00 p.m. CDT on June 3rd, 2016, proffer a competing bid of at least $23,100,000.00; and

(5) by its terms, remain open for acceptance through the later of: (a) June 10th, 2016 or (b) the closing of any transaction with a winning bidder;

ORDERED that if Debtor's counsel and/or Gerbsman Partners determines that any competing bidder is not qualified to bid at the Auction, such non-qualified bidder may request the Court to determine if such competing bidder is qualified to bid at the Auction. However, nothing herein shall give such non-qualified bidder standing to object to the sale itself. It is further

ORDERED that competing bidders who qualify to participate in the auction sale will be notified of such qualification on or before the close of business on June 9th, 2016. Bidding for

the assets at the auction sale will be conducted in minimum incremental bids of $50,000.00. It is further

ORDERED that piecemeal competing bids will be considered. If Vactronix withdraws its $22,600,00.00 offer, the deposit requirement for a competing bid shall be the lesser of $250,000 or 10% of the amount of the competing bid. It is further

ORDERED that, despite any provisions in the Motion to Sell to the contrary, the Court shall conduct the Auction in open court and shall make the final decision as to what is the highest and best offer or combination of offers, which in the aggregate makes the highest or otherwise best offer to purchase the Debtors' assets. It is further

ORDERED that the Court has scheduled a hearing on the Motion to Sell to be held in Courtroom No. 3, 5th Floor, U.S. Bankruptcy Court, 615 E. Houston St., San Antonio, Texas 78205 on June 10th, 2016 immediately following the completion of the above-described auction. Any creditor or party in interest desiring to object to the relief sought by the Debtors in the Motion to Sell must file an objection to the Motion to Sell on or before June 8th, 2016 and appear at the aforesaid hearing and argue such objection. It is further

ORDERED that, on or before June 8th, 2016, objections to the Motion to Sell, if any, shall be filed with the Clerk and served on all parties identified in the order limiting notice in these cases (Docket No. 39) It is further

ORDERED that the Breakup Fee described in the Motion to Sell is not approved. It is further

ORDERED that the asset purchase agreements attached to the Motion to Sell are not approved as a result of the entry of this order. If a sale is ultimately approved, an asset purchase agreement (as may be modified by the Court) shall be set for hearing on June 10th, 2016

following the auction.  It is further

ORDERED that notwithstanding anything to the contrary herein, the terms of the

Vactronix bid and asset purchase agreement submitted by same shall conform, **in all material**

**respects,** to the term sheet approved by the Court by Order dated May 26, 2016 (Dkt. No.  248).

It is further

ORDERED that the Debtors' counsel shall consult with Creditors' Committee and its

counsel regarding offers and bidders' qualifications and any proposed modifications to the Cash

Offer Agreement or the Vactronix asset purchase agreement.  It is further

ORDERED that Debtors' counsel or Gerbsman Partners are authorized to send to

prospective purchasers a copy of this Order or a summary of the bid procedures and notice of

auction set forth in this Order.

# # #

**Submitted by:**
William B. Kingman, SBN 11476200
LAW OFFICES OF WILLIAM B. KINGMAN, P.C.
4040 Broadway, Suite 450
San Antonio, Texas  78205
Telephone: (210) 829-1199
Facsimile: (210) 821-1114
bkingman@kingmanlaw.com

*COUNSEL FOR DEBTORS*

**WITHOUT EXHIBIT "A" ATTACHED**

# EXHIBIT "A"