**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: November 22, 2016.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 16-50552-CAG |
| | § | |
| PALMAZ SCIENTIFIC INC., | § | CHAPTER 11 |
|     Debtor. | § | |
| | § | |
| IN RE: | § | CASE NO. 16-50555-CAG |
| | § | |
| ADVANCED BIO PROSTHETIC | § | CHAPTER 11 |
| SURFACES, LTD., | § | |
|     Debtor. | § | |
| | § | |
| IN RE: | § | CASE NO. 16-50556-CAG |
| | § | |
| ABPS MANAGEMENT, LLC, | § | CHAPTER 11 |
|     Debtor. | § | |
| | § | |
| IN RE: | § | CASE NO. 16-50554-CAG |
| | § | |
| ABPS VENTURE ONE, LTD., | § | CHAPTER 11 |
|     Debtor. | § | |
| | § | (**JOINTLY ADMINISTERED UNDER** |
| | § | **16-50552-CAG)** |

### ORDER GRANTING, IN PART, AND DENYING, IN PART, JULIO PALMAZ, M.D.'S MOTION FOR ENFORCEMENT OF INJUNCTION (ECF NO. 420)

Came on to be considered the above-numbered bankruptcy cases, and, in particular, Julio

Palmaz, M.D.'s Motion for Enforcement of Injunction (ECF No. 420) (the "Motion"), Trustee's Joinder in Motion to Enforce Plan Injunction (ECF No. 429) (the "Joinder") and The Turnbull Plaintiffs' Response to Julio Palmaz, M.D.'s Motion for Enforcement of Injunction and Trustee's Joinder in Motion to Enforce Plan Injunction (ECF No. 444) (the "Response"). The Court held a hearing on the Motion on October 12, 2016, and took the matter under advisement. For the reasons stated below, the Court finds that the Motion should be GRANTED, in part, and DENIED, in part.

The Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. § 1408(1). This matter is referred to this Court under the District's Standing Order of Reference. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(L) (confirmation of plans) and (O) (other proceeding affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims), in which the Court may enter a final order. The Court finds that this is a contested matter as defined under Fed. R. Bankr. P. 9014. As such, the Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

**BACKGROUND AND PARTIES' CONTENTIONS**

On March 4, 2016, the Jointly Administered Debtors filed their bankruptcy petitions under Chapter 11 of the Bankruptcy Code, in which the Court entered an Order Jointly Administering Cases on March 9, 2016 (ECF No. 35). Subsequently, on March 10, 2016, the Court entered its Order Granting Complex Chapter 11 Bankruptcy Case Treatment (ECF No. 42). Debtors filed their Joint Disclosure Statement (ECF No. 235) and Joint Chapter 11 Plan

(ECF No. 236) on May 23, 2016, intending to sell substantially all of Debtors' assets and obtain confirmation of a plan of reorganization quickly.

Upon drawing numerous objections to the disclosure statement, proposed plan and sale motions, Debtors filed a Modified Joint Disclosure Statement (ECF No. 273) and First Amended Joint Chapter 11 Plan (ECF No. 272) on June 9, 2016. Thereafter, at a hearing held June 10, 2016, this Court approved Debtors' Sale Motion (ECF No. 234); approved, as amended, Debtors' Joint Disclosure Statement; and granted Debtors' Motion to Shorten Time For Soliciting Votes and For Opportunity to Object to Joint Plan of Reorganization and to Set Expedited Hearing on Confirmation of Joint Plan of Reorganization (ECF No. 251). Debtors filed their Amended Disclosure Statement (ECF No. 281) and Second Amended Joint Plan of Reorganization (ECF No. 282) on that same day. On June 17, 2016, the Court entered Orders approving Debtors' Disclosure Statement, as modified (ECF No. 294); and shortening time to solicit votes and to object to plan, and setting an expedited hearing on plan confirmation (ECF No. 292). The Court set the deadlines to vote on the plan and file written objections to confirmation as June 24, 2016, and required the ballot summary to be filed by June 27, 2016, at 10:30 a.m. The confirmation hearing was set for June 27, 2016, at 1:30 p.m.

On June 24, 2016, Debtors filed a First Supplement to Debtors' Second Amended Joint Plan of Reorganization (ECF NO. 305). Objections to the Plan were filed by the Official Committee of Unsecured Creditors (ECF No. 308); Stock Holder John B. Foster, Interested Parties Brad Hickman, Bradley Hickman, Clifton Hickman, Brenda Kostohryz, Keely Kostohryz and Margaret Lane (ECF No. 307); the United States Trustee (ECF No. 303); and Norton Rose Fulbright US LLP (ECF No. 298). At the confirmation hearing held June 27, 2016, the Court entertained lengthy arguments regarding discrepancies in the plan and ballot's opt-in/opt-out

3

language for releases. Ultimately, releases by parties other than those given by the Debtor and the estate were struck to avoid the requirement to re-notice the plan. Upon resolution of numerous objections on the record, the Court confirmed Debtors' Joint Plan, as amended by the modifications stated on the record. Debtor incorporated those changes into a final plan and confirmation order, inclusive of all modifications and agreed to language, which the Court signed on July 15, 2016 (ECF No. 356). As a means for funding equity claims, the Plan created a Litigation Trust allocating defined Litigation Trust Assets including Director and Officer ("D&O") Claims.

Thereafter, on July 22, 2016, a group of investors in Debtor Palmaz Scientific (the "Turnbull Plaintiffs") filed a suit against Movant in Dallas County. Additionally, prior to the bankruptcy case, a second group of investors in Debtor Palmaz Scientific (the "Ehrenberg Plaintiffs") had asserted claims against the Debtor, Dr. Palmaz and Mr. Solomon in state court in Dallas County. As a result of the bankruptcy filing, the Ehrenberg Plaintiffs' suit was stayed. The Ehrenberg Plaintiffs filed a Motion for Relief from Stay (ECF No. 119) on April 1, 2016; however, the hearing on that motion was voluntarily continued until after confirmation of the Plan and ultimately withdrawn on September 6, 2016 (ECF No. 392).

On September 30, 2016, Julio Palmaz, M.D. ("Dr. Palmaz" or "Movant") filed his Motion for Enforcement of Injunction (ECF No. 420) requesting this Court enjoin two sets of plaintiffs—the Ehrenberg Plaintiffs and Turnbull Plaintiffs—from their respective suits against Dr. Palmaz under the injunction provisions of the confirmed Joint Plan in this case. Dr. Palmaz also requested this Court award attorney's fees and costs after a hearing to establish the amount of said fees. Movant argues that the language of the confirmation order and plan prohibits commencement or continuation of any action against Litigation Trust Assets (as created by the

4

Confirmed Plan) or the D&O policies because only the Litigation Trustee has standing to commence or prosecute D&O Claims for the beneficiaries of the Litigation Trust. Thus, Movant argues that the claims alleged by the Ehrenberg or Turnbull Plaintiffs must be brought by the Litigation Trustee, if they are to be brought at all, because the claims fall within the definition of "D&O Claims" which were vested in the Litigation Trustee pursuant to the terms of the Confirmed Plan.

On October 5, 2016, the Litigation Trustee joined Movant's motion and requested this Court likewise enjoin the Ehrenberg and Turnbull Plaintiffs from commencing or continuing their suits against Dr. Palmaz. The Trustee argues, first, that the claims asserted against the former officers and directors of the Debtors are derivative claims which belong to the Debtors and that those claims were transferred to the Litigation Trust upon confirmation of the Plan. Second, the Trustee argues that, even if the shareholders are able to pursue individual claims, the recovery for such claims implicates the available director and officer liability insurance policies, which were transferred to the Litigation Trust as an asset. Therefore, the Trustee requests the injunction be enforced to safeguard the property of the Litigation Trust for equitable distribution to its beneficiaries.

In their Response filed October 11, 2016 (ECF No. 444), the Turnbull Plaintiffs ("Respondents") argue that the claims they have alleged in the state court suit against Dr. Palmaz are direct claims for which the Litigation Trust has no standing and for which the Debtor would not be directly liable. Additionally, Respondents argue that they do not seek to recover from any insurance proceeds as Dr. Palmaz and the Litigation Trustee contend. Rather, Respondents argue that they intend only to recover from the personal assets of Dr. Palmaz and the other responsible individuals—not the Debtor. Respondents further argue that the possibility that the D&O

insurance policy might advance defense costs to Dr. Palmaz is inapposite when considering that a release of third parties for direct claims on the basis that D&O coverage might be implicated would impermissibly convert every direct claim into a derivative claim and thereby, accomplish impermissible third party releases by confirmation of the bankruptcy plan. The Ehrenberg Plaintiffs did not file a response to Movant's Motion.

ANALYSIS

**A.     Jurisdiction and Authority**

This Court has subject matter jurisdiction to interpret the Plan and determine whether continuation of the Respondent's litigation would violate the Plan, Confirmation Order, and permanent injunction provided therein. In the Confirmation Order, the Court specifically retained jurisdiction over this case to resolve any disputes over the interpretation of the terms of the Plan (ECF No. 356, Confirmation Order ¶ F). Further, the Court always has jurisdiction to clarify and enforce its own orders. *See* 11 U.S.C. § 105(a); *see also* **In re U.S. Brass Corp.**, 277 B.R. 326, 328 (Bankr. E.D. Tex. 2002).

This Court's retention of jurisdiction is consistent with 28 U.S.C. § 1334, which grants the Court jurisdiction over "all cases under title 11" and "all civil proceedings arising under title 11 or arising in or related to cases under title 11." This grant of jurisdiction extends to resolving disputes regarding the interpretation of a confirmed plan. ***See In re Craig's Stores of Tex., Inc.***, 266 F.3d 388, 391 (5th Cir. 2001) (a bankruptcy court has jurisdiction over a civil proceeding if the litigated matter bears on the interpretation or execution of the debtor's plan); **In re Birting Fisheries, Inc.**, 300 B.R. 489, 501 (B.A.P. 9th Cir. 2003) (holding that "the bankruptcy court had exclusive jurisdiction to interpret and enforce its Plan and Confirmation Order"); **In re Resorts Int'l, Inc.**, 372 F.3d 154, 168-69 (3d Cir. 2004) ("[W]here there is a close nexus to the

bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement, retention of post-confirmation bankruptcy court jurisdiction is normally appropriate.").

Here, the Movant's Motion implicates interpretation of the Confirmation Order's injunction language. Specifically, the Confirmation Order provides:

> Except as otherwise expressly provided in the Plan or this Order, all Persons or entities who have asserted, held, hold or may hold Claims against or Equity Interests in the Debtors are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim against the Debtors, the Reorganized Debtors, the Litigation Trust, the Litigation Trustee, Litigation Trust Assets, or the D&O Insurance Policies . . .

(ECF No. 356, Confirmation Order ¶ N). An identical injunction provision is included in the Plan (ECF No. 356, Plan § 11.4). As such, the Court maintains jurisdiction and authority to interpret and implement its own Confirmation Order and administration of the confirmed Plan.

B. **Confirmation Order and Plan Provisions**

A critical provision of the Confirmation Order and Plan is creation of a Litigation Trust for the benefit of equity holders. In Paragraph 12 of the Confirmation Order, the Debtors retained "all claims belonging to the Debtors and the Bankruptcy Estates" including D&O Claims, as defined by the Plan. Thereafter, in the same paragraph, the Confirmation Order states:

> Pursuant to the provisions of the Plan, the Litigation Trust shall be the responsible party for pursuing the collection of these claims.
>
> The Litigation Trustee is and shall be deemed a representative of the Debtors' Estates pursuant to sections 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code, and shall be vested with standing to prosecute, settle and otherwise administer all Litigation Trust Assets transferred to the Litigation Trust, without

>   the need for Bankruptcy Court approval or any other notice of approval, except as set forth in the Trust Agreement.

(ECF No. 356, Confirmation Order ¶ 12). "Litigation Trust Assets" is defined in the Plan as "(i) the Expense Fund, (ii) the Causes of Action (iii) and [sic] (iv) the D&O Claims and which shall vest in the Litigation Trust on the Effective Date." (ECF No. 356, § Plan 1.1). The Plan defines "D&O Claims" as

>   any and all claims and causes of action arising from any act or omission, including, but not limited to misconduct, misfeasance, malfeasance, breach of fiduciary duty, breach of duty of loyalty, breach of duty of care, breach of duty of obedience, negligence, gross negligence, fraud or any other intentional tort, and any civil conspiracy or civil RICO claims for such misconduct against any current or former officer or director resulting in damage to the Debtors.

(ECF No. 356, Plan § 1.1). Movant and Trustee argue that the definition of D&O Claims clearly places the Respondents' claims against Dr. Palmaz in the Litigation Trust Assets, which only the Trustee has the standing to assert pursuant to the Confirmation Order. Respondents, however, focus on the qualifying language "resulting in damage to the Debtors" in the definition of D&O Claims, arguing that the definition is not broad enough to capture all claims asserted against Dr. Palmaz. Rather, Respondents assert that the claims which they have brought against Dr. Palmaz in state court are direct claims—not derivative—because their claims did not result in damage to the Debtors.

In interpreting the definition of D&O Claims under the Plan, the Court agrees with Respondents. A plain reading of the definition reflects that the qualifying phrase "resulting in damage to the Debtors" applies to "any and all claims and causes of action arising from any act or admission . . . against any current or former officer and director . . . ." As such, if Respondents assert claims against Dr. Palmaz which did not result in damage to the Debtors,

8

then such claim is not a part of the Litigation Trust Assets and the Confirmation Order does not vest standing to pursue such a claim in the Trustee.

Movant and Trustee also argue that the Plan and Confirmation Order give sole control of the D&O insurance to the Litigation Trust and asserts that any effort that implicates or diminishes the Trustee's ability to recover on those policies must be enjoined. Section 6.6(d) of the Plan provides:

> The right to control the D&O Claims and all D&O Insurance Recoveries, including negotiations relating thereto and settlements thereof, shall be vested in the Litigation Trust on and after the Effective Date. Notwithstanding the foregoing, the Debtors shall cooperate with the Litigation Trustee in pursuing the D&O Claims and the D&O Insurance through such means, and shall provide reasonable access to personnel and books and records of the Debtors relating to the D&O Claims and D&O Insurance to representatives of the Litigation Trust, to enable the Litigation Trustee to perform the Litigation Trustee's tasks under the Trust Agreement and the Plan. Nothing in this paragraph nor the Plan limits, excuses or in any way affects or impairs any coverage to which the current and/or former Officers and Directors are entitled to with respect to any and all D&O Insurance or other applicable insurance policies of the Debtors.

(ECF No. 356, Plan § 6.6(d)).

Movant and Trustee assert that Dr. Palmaz has already provided notice to the insurance carriers and requested coverage of his defense costs under the D&O policies as a result of the allegations in Respondents' Complaint. Trustee argues that such action triggers a bar on Respondents' claims, even if they are direct claims, because Dr. Palmaz may still be entitled to coverage or advancement of defense costs under the policies—notwithstanding the fact that Respondents do not name the Debtors or seek recovery from the D&O policies. Respondents point out that they do not contend they are entitled to recover from the D&O policies, but argue that they are well within their rights to demand and recover from the personal assets of Dr. Palmaz. Further, Respondents argue that the existence of D&O coverage or advancement of

9

defense costs should not be offensively used to deny Respondents the ability to seek recovery upon direct claims from the personal assets of Dr. Palmaz.

With respect to the D&O policies, the Court finds that Section 6.6(d) of the Plan does not act as a bar to any direct claims brought against former directors and officers that may have an effect on the D&O policies. The Plan vests the right to control the D&O Insurance Recoveries, including negotiation and settlement, but explicitly does not limit the rights of the former officers and directors to seek coverage under the policies. The Plan defines "D&O Insurance Recoveries" as

> (a) the right to pursue and receive benefits and/or proceeds of the D&O Insurance Policies; and (b) the right to pursue and receive recovery from or as a result of any D&O Claims, including but not limited to consequential, contractual, extracontractual and/or statutory damages, or other proceeds, distributions, awards or benefits; and (c) the right to pursue and receive any other recovery related to the D&O Claims.

(ECF No. 356, Plan § 1.1). As previously stated, the Court finds that the claims asserted by Respondents do not fall within the definition of D&O Claims under the Plan. Therefore, the definition of D&O Insurance Recoveries and Section 6.6(d) of the Plan cannot act as a bar to non-D&O Claims against the former officers and directors.

The negotiated language of Section 6.6 of the Plan explicitly permits the former officers and directors of the Debtors to seek coverage from the D&O policies. To use that language as a tool for enjoining *any* claim against a former officer and director because the defendant may seek coverage from the D&O policies on a direct claim would amount to a non-consensual third party release in the Plan. The Court finds that, if Respondents only seek to recover from the personal assets of Dr. Palmaz and not the insurance policies, the Plan allows Dr. Palmaz to seek whatever coverage he is entitled to under the policies without barring Respondents' direct claims.

10

Based on the Court's reading of the language of the Plan and Confirmation Order, the Court must now consider whether the Respondents' Claims asserted in the state court litigation are direct or derivative claims.

## C. Respondents' Claims

Movant's Exhibit E is the Plaintiffs' Original Petition and Request for Disclosure against Julio Palmaz, M.D., and Steven B. Solomon which was filed in Dallas County District Court under Cause No. DC-16-08830 ("Complaint"). In their Complaint, Respondents state claims for fraud under the Texas Business and Commerce Code § 27.01, violations of the Texas Securities Act, negligent misrepresentation, breach of fiduciary duty, aiding and abetting, control person liability and the discovery rule of fraudulent concealment. Respondents assert that all of these claims are direct claims, not derivative, and resulted in no damage to the Debtor. Trustee, however, argues that the only way Respondents are able to prevail on their asserted claims is by showing damage to the Debtor and as such, the claims must be derivative.

The parties agree that the Supreme Court of Texas articulated the standard for determining whether a claim is derivative under Texas law in *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990), *superseded by statute on other grounds as stated in Sneed v. Webre*, 465 S.W.3d 169 (Tex. 2015).

> A corporate stockholder cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong.
>
>> Ordinarily, the cause of action for injury to the property of a corporation, or the impairment or destruction of its business is vested in the corporation, as distinguished from its stockholders, even though it may result indirectly in loss of earnings to the stockholders. Generally, the individual stockholders have no separate and independent right of action for injuries suffered by the corporation which merely result in the depreciation of the value of their stock . . .

11

> The rule does not, of course, prohibit a stockholder from recovering damages for wrongs done to him individually "where the wrongdoer violates a duty arising from contract or otherwise, and owing directly by him to the stockholder."

*Wingate*, 795 S.W.2d at 719 (quoting *Massachusetts v. Davis*, 140 Tex. 398, 407-08, *cert denied*, 320 U.S. 210 (1943)). In order to recover individually, "a stockholder must prove a personal cause of action and personal injury." *Wingate*, 795 S.W.2d at 719. Although "a corporate shareholder has no individual cause of action for personal damages caused solely by the wrong done to the corporation," a shareholder "may still bring suit if a director violates a duty arising from a contract or representation owing directly to the shareholder." ***Great Am. Food Chain, Inc. v. Andreottola***, 2016 WL 852962, at *3 (N.D. Tex. March 4, 2016) (citing ***Faour v. Faour***, 789 S.W.2d 620, 622 (Tex. App.—Texarkana 1990, writ denied)).

Respondents point this Court to the longstanding state court precedent from the Court of Appeals in Dallas in ***Cotten v. Republic Nat'l Bank of Dallas***, 395 S.W.2d 930, 941 (Tex. Civ. App.—Dallas 1965, writ ref'd n.r.e.).

> But some actions for fraud are by their nature personal to each creditor, or each stockholder, or each policyholder, and the receiver may not then maintain a suit in his representative capacity for their joint benefit. In such case each claimant and he alone may bring and maintain the suit himself, for the action is personal, separate and several, not joint, and extends no further than the individual loss of each particular creditor who sues. For example, one who proves that he relied on false representations as to the corporation's financial condition and was thereby induced to extend credit to the corporation, or to purchase stock in it, or to take out an insurance policy with it, must in his own name maintain a separate suit for his damages against the person who uttered the fraudulent representation. The aggrieved party and he alone may maintain the suit. Even then a creditor, stockholder, or policyholder who did not know or rely on such false representation, or was not induced by it to extend credit or invest his money cannot recover for the alleged fraud. The receiver has no right to bring or maintain such a suit.

*Id.* Respondents also cite this Court to a number of cases outside of Texas espousing the view held in ***Cotten***. *See **Stephenson v. Citco Grp. Ltd.,*** 700 F. Supp. 2d 599, 610-24 (S.D.N.Y.

2010) (Fraudulent inducement claims "are direct because they allege a harm suffered by plaintiff independent of the partnership and a duty to plaintiff that is not merely derivative of [the defendant's] fiduciary duties to the partnership."); *Medsker v. Feingold*, 307 F. App'x. 262, 265 (11th Cir. 2008) ("The complaint states that the defendants made intentional misrepresentations to these plaintiffs and thereby fraudulently induced them to invest their money into [the companies] which they would not otherwise have done. This is not an injury to the corporation, but to these investors, and the suit may be brought as a direct action."); *In re Smith Barney Transfer Agent Litig.*, 765 F. Supp. 2d 391, 399 (S.D.N.Y. 2011) (investment induced by misrepresentations was direct claim); *Anwar v. Farfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 401 (S.D.N.Y. 2010) (tortious inducement was direct claim); *Poptech, L.P. v. Stewardship Inv. Advisors, LLC*, 849 F. Supp. 2d 249, 263 (D. Conn. 2012) (non-disclosure in offer and sale of securities was direct claim); *Albert v. Alex. Brown Mgmt. Serv., Inc.*, Nos. Civ. A. 762-N, Civ. A 763-N, 2005 WL 2130607, at *12 (Del. Ch. Aug. 26, 2005) ("Generally, non-disclosure claims are direct claims.").

Movant and Trustee also cite this Court to *In re Chiron Equities, LLC*, 552 B.R. 674 (Bankr. S.D. Tex. 2016) (Bohm, J.). In *Chiron*, the plaintiff made a number of allegations against corporate officers of the debtor which the Court determined to be derivative. At first glance, the court's holding regarding a fraud allegation appears to be in contravention of the *Cotten* standard. In *Chiron*, Judge Bohm held that a fraud claim based on allegations that the defendant lied or tricked plaintiff into depositing funds into the debtor's account and then embezzled those funds was a derivative claim. 552 B.R. at 690-91.

> The fact that [defendant] may have lied to [plaintiff] . . ., or tricked [plaintiff] into transferring [plaintiff's] funds into the Debtor's account, or failed to disclose to [plaintiff] his embezzlement of the Debtor's funds, does not somehow give [plaintiff] a direct cause of action against [defendant].

13

> . . .
>
> The value of [plaintiff's] stock ownership interest in the Debtor may have declined due to improper draining of the Debtor's cash by [defendant], but, as set forth in *Wingate*, these circumstances do not give rise to a personal claim that [plaintiff] can prosecute; rather, they only give rise to a derivative claim of the Debtor. *See* 795 S.W.2d at 719. To reiterate, the draining of the funds may injure [plaintiff] insofar as the value of its stock ownership declines, *but this injury to [plaintiff] cannot occur without the injury to the Debtor*—and this nexus makes it a derivative claim.

*Id.* at 690-91. Specifically, in ***Chiron***, the allegations of wrongdoing related to what the defendant actually did with investments after they were made as opposed to what he represented the investments would be used for to induce the investment. Thus, upon closer examination, ***Chiron*** is distinguishable from ***Cotten*** and the allegations in this case.

Here, the allegations in the Complaint relate to the Movant's conduct in soliciting investments from the Respondents in the Debtor corporation. Unlike in ***Chiron***, there are no allegations of embezzlement or wrongdoing by the former officers and directors *to the corporation*. Rather, the Respondents allege inducement by way of false statements regarding the state of the corporation, the histories of the CEO and president, and the history of the corporation and its predecessors. In reviewing the Complaint and accepting all allegations as true, the Court concludes that the allegations listed support only personal causes of action and personal injury so that Respondents' claims cannot be considered derivative. Further, the allegations of harm are not caused solely by a wrong done to the corporation with investor monies after they were in the Debtors' control but, rather, a wrong done to the individual Respondents in solicitation of their specific investments. Indeed, no resulting wrong or harm to the Debtor corporation is alleged. Rather, the alleged wrongdoing took place prior to Respondents becoming stockholders. As in ***Cotten***, the Respondents' causes of action are

personal to each investor and do not necessarily result in harm to the Debtors or all stockholders in general. 395 S.W.2d at 941. Rather, it is possible that every stockholder would not be able to allege reliance on false representations in their decision to invest and therefore, could not recover for the alleged harm. As such, the Court concludes that the causes of action asserted in Respondents' Complaint are solely direct claims for which the Plan and Confirmation Order do not provide an injunction or third party release.[1]

C.     **Ehrenberg Plaintiffs' Claims**

As previously stated, the Ehrenberg Plaintiffs did not file a response to Movant's Motion for Enforcement of Injunction. Movant's Exhibit B provides the Ehrenberg Plaintiffs' Second Amended Original Petition filed in Dallas County District Court under Cause No. DC-15-11994 ("Ehrenberg Complaint"). The Ehrenberg Complaint differs from the Respondents' Complaint in several key ways that support enjoining the Ehrenberg suit. First, Palmaz Scientific, Inc. remains a named defendant. Second, the Ehrenberg Plaintiffs raise allegations of fraud or breach of duties for actions taken *after* the Plaintiffs invested in the corporation which affected all stockholders equally and would have caused harm to the Debtors. As previously discussed, such claims would be derivative and belong to the Litigation Trust. Third, the Ehrenberg Plaintiffs raise agency allegations which may require harm to have resulted to the Debtors if the corporation must be a named defendant in order to allege agency. Insofar as agency is alleged, the Court will not parse through the Ehrenberg Complaint in an attempt to presume what causes of action Plaintiffs may allege as direct claims. As such, the Court shall grant Movant's request to enforce the injunction and require the Ehrenberg Plaintiffs to amend their Complaint within

---

[1] The Court will note that the Complaint, as currently drafted, does not name any of the Debtors as defendants. If, however, Plaintiffs are required to name any of the Debtors as defendants in the state court litigation, this Court finds that such action is expressly prohibited by the Confirmation Order and Plan because harm would necessarily have resulted to the Debtors.

15

fourteen (14) days to reflect only those causes of action which they believe do not run afoul of the injunctive language of the Plan and Confirmation Order, given this Court's instant Order.

## CONCLUSION

IT IS THEREFORE ORDERED that Julio Palmaz M.D.'s Motion for Enforcement of Injunction (ECF No. 420) is DENIED as to the Turnbull Plaintiffs.

IT IS FURTHER ORDERED that Julio Palmaz M.D.'s Motion for Enforcement of Injunction (ECF No. 420) is GRANTED as to the Ehrenberg Plaintiffs. The Ehrenberg Plaintiffs must amend their state court complaint within fourteen (14) days to meet compliance with this Order or the state court case must be dismissed.

All other relief not specifically granted herein is DENIED.

# # #