

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: February 21, 2018.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 16-50552-CAG |
| | § | |
| PALMAZ SCIENTIFIC INC., | § | CHAPTER 11 |
|     Debtor. | § | |
| | § | |
| IN RE: | § | CASE NO. 16-50555-CAG |
| | § | |
| ADVANCED BIO PROSTHETIC SURFACES, LTD., | § | CHAPTER 11 |
|     Debtor. | § | |
| | § | |
| IN RE: | § | CASE NO. 16-50556-CAG |
| | § | |
| ABPS MANAGEMENT, LLC, | § | CHAPTER 11 |
|     Debtor. | § | |
| | § | |
| IN RE: | § | CASE NO. 16-50554-CAG |
| | § | |
| ABPS VENTURE ONE, LTD., | § | CHAPTER 11 |
|     Debtor. | § | |
| | § | (**JOINTLY ADMINISTERED UNDER** |
| | § | **16-50552-CAG)** |

**CORRECTED MEMORANDUM OPINION AND ORDER REGARDING ADMIRAL'S
MOTION RELATING TO THE BANKRUPTCY INJUNCTION AND THE
EHRENBERG DEMAND (ECF NO. 540)**

Came on to be considered the above-numbered bankruptcy cases, and, in particular,

1

Admiral Insurance Company's ("Admiral") Motion Relating to the Bankruptcy Injunction and the Ehrenberg Demand (the "Motion"),[1] Trustee's Joinder in Motion Relating to the Bankruptcy Injunction and the Ehrenberg Demand (ECF No. 541) (the "Joinder"), Ehrenberg Response to Admiral's Motion Relating to the Bankruptcy Injunction and the Ehrenberg Demand (ECF No. 543) (the "Ehrenberg Response"), Julio Palmaz, M.D.'s and Steven Solomon's Response to Admiral's Motion Relating to the Bankruptcy Injunction and the Ehrenberg Demand [ECF No. 540]; Response to Colony's Motion Relating to the Bankruptcy Injunction and the Ehrenberg Demand [ECF No. 548]; Objection to Settlement Proposals; Motion for Stay; and Motion to Reconsider Order Regarding Injunction [ECF No. 485] (the "Palmaz and Solomon Response"),[2] and Supplement to Ehrenberg Response to Admiral's Motion Relating to the Bankruptcy Injunction and the Ehrenberg Demand (ECF No. 565) (the "Ehrenberg Response Supplement"). The Court held a hearing on the Motion on June 7, 2017, and took the matter under advisement. For the reasons stated below, the Court finds that the Ehrenberg Plaintiffs should be prohibited from continuing with the Ehrenberg Demand against Admiral.

## BACKGROUND AND PARTIES' CONTENTIONS

On March 4, 2016, the Jointly Administered Debtors filed their bankruptcy petitions under Chapter 11 of the Bankruptcy Code, in which the Court entered an Order Jointly Administering Cases on March 9, 2016 (ECF No. 35). On March 10, 2016, the Court entered its Order Granting Complex Chapter 11 Bankruptcy Case Treatment (ECF No. 42). Debtors filed their Joint

---

[1] Colony Insurance Company submitted Colony's Motion Relating to the Bankruptcy Injunction and the Turnbull Stowers Demand (ECF No. 548) ("Colony's Motion") seeking the same relief requested by Admiral in response to the Ehrenberg Demand. The Court will issue a separate ruling in response to Colony's Motion consistent with this Order.

[2] At oral arguments, for reasons stated on the record, the Court denied the Motion for Stay and Motion to Reconsider its Order Granting, in Part, and Denying in Part Dr. Palmaz's Motion for Enforcement of Injunction. (Trial Audio, 6/7/2017, 3:15:39).

Disclosure Statement (ECF No. 235) and Joint Chapter 11 Plan (ECF No. 236) on May 23, 2016, intending to sell substantially all of Debtors' assets and quickly obtain confirmation of a plan of reorganization.

Upon drawing numerous objections to the disclosure statement, proposed plan and sale motions, Debtors filed a Modified Joint Disclosure Statement (ECF No. 273) and First Amended Joint Chapter 11 Plan (ECF No. 272) on June 9, 2016. Thereafter, at a hearing held June 10, 2016, this Court approved Debtors' Sale Motion (ECF No. 234); approved, as amended, Debtors' Joint Disclosure Statement; and granted Debtors' Motion to Shorten Time For Soliciting Votes and For Opportunity to Object to Joint Plan of Reorganization and to Set Expedited Hearing on Confirmation of Joint Plan of Reorganization (ECF No. 251). Debtors filed their Amended Disclosure Statement (ECF No. 281) and Second Amended Joint Plan of Reorganization (ECF No. 282) on that same day. On June 17, 2016, the Court entered Orders approving Debtors' Disclosure Statement, as modified (ECF No. 294); and shortening time to solicit votes and to object to plan, and setting an expedited hearing on plan confirmation (ECF No. 292). The Court set the deadlines to vote on the plan and file written objections to confirmation as June 24, 2016, and required the ballot summary to be filed by June 27, 2016. The confirmation hearing was set for June 27, 2016.

On June 24, 2016, Debtors filed a First Supplement to Debtors' Second Amended Joint Plan of Reorganization (ECF NO. 305). Objections to the Plan were filed by the Official Committee of Unsecured Creditors (ECF No. 308); Stock Holder John B. Foster, Interested Parties Brad Hickman, Bradley Hickman, Clifton Hickman, Brenda Kostohryz, Keely Kostohryz and Margaret Lane (ECF No. 307); the United States Trustee (ECF No. 303); and Norton Rose Fulbright US LLP (ECF No. 298). At the confirmation hearing held June 27, 2016, the Court entertained lengthy arguments regarding discrepancies in the plan and ballot's opt-in/opt-out

3

language for releases. Ultimately, releases by parties other than those given by the Debtor and the estate were struck to avoid the requirement to re-notice the plan. Upon resolution of numerous objections on the record, the Court confirmed Debtors' Joint Plan, as amended by the modifications stated on the record. Debtor incorporated those changes into a final plan and confirmation order, inclusive of all modifications and agreed to language, which the Court signed on July 15, 2016 (ECF No. 356). As a means for funding equity claims, the Plan created a Litigation Trust allocating defined Litigation Trust Assets including Director and Officer ("D&O") Claims.

Thereafter, on July 22, 2016, a group of investors in Debtor Palmaz Scientific (the "Turnbull Plaintiffs") filed a suit against Dr. Palmaz in Dallas County. Additionally, prior to the bankruptcy case, a second group of investors in Debtor Palmaz Scientific (the "Ehrenberg Plaintiffs") asserted claims against the Debtor, Julio Palmaz, M.D. ("Dr. Palmaz") and Steven Solomon ("Mr. Solomon") in state court in Dallas County. As a result of the bankruptcy filing, the Ehrenberg Plaintiffs' suit was stayed. The Ehrenberg Plaintiffs filed a Motion for Relief from Stay (ECF No. 119) on April 1, 2016; however, the hearing on that motion was voluntarily continued until after confirmation of the Plan and ultimately withdrawn on September 6, 2016 (ECF No. 392).

On September 30, 2016, Dr. Palmaz filed his Motion for Enforcement of Injunction (ECF No. 420) requesting this Court enjoin the Ehrenberg Plaintiffs and Turnbull Plaintiffs from their respective suits against Dr. Palmaz under the injunction provisions of the confirmed Joint Plan in this case (the "Bankruptcy Injunction"). On October 5, 2016, the Litigation Trustee joined Dr. Palmaz's motion and requested this Court likewise enjoin the Ehrenberg and Turnbull Plaintiffs from commencing or continuing their suits against Dr. Palmaz. On November 22, 2017, the Court

entered an Order Granting, in Part, and Denying In Part Dr. Palmaz's Motion for Enforcement of Injunction which granted the Motion for Enforcement of Injunction with respect to the Ehrenberg Plaintiffs and denied the Motion for Enforcement of Injunction with respect to the Turnbull Plaintiffs. Thereafter, the Ehrenberg Plaintiffs amended their state court petition eliminating claims against the Debtors and limiting their claims to Dr. Palmaz and Mr. Solomon individually.

On March 28, 2017, the Ehrenberg Plaintiffs made a "Stowers"[3] Policy Limit Demand (the "Ehrenberg Demand") against Admiral seeking the remaining limits of the Admiral Policy. In response, on April 24, 2017, Admiral filed the Motion requesting the Court to determine whether the Ehrenberg Demand violates the Bankruptcy Injunction. The Trustee joined in the Motion arguing: (1) the Ehrenberg Demand violates the plain language of the Bankruptcy Injunction because the Ehrenberg Demand is an action against the D&O Insurance Policies and (2) the Ehrenberg Demand interferes with the Trustee's right to control D&O Insurance Recoveries under section 6.6(d) of the Plan, which includes the right to receive all of the benefits and all of the proceeds from the D&O Insurance Policies.[4] In response, the Ehrenberg Plaintiffs argue that the Bankruptcy Injunction only enjoins parties from commencing or continuing an action or proceeding against the D&O Insurance Policies if such action or proceeding is based on a claim against the Debtors and because their claim is Dr. Palmaz and Mr. Solomon individually, the Ehrenberg Demand does not violate the Bankruptcy Injunction. In response to the Trustee's argument that he has the sole right to control the D&O Claims and D&O Insurance Recoveries,

---

3 At oral arguments, Admiral opposed the characterization of the Ehrenberg Demand as a "Stowers Demand." (Trial Audio 6/7/2017, 1:27:43). The entry of this Order in no way speaks to whether the Ehrenberg Demand meets the elements of "Stowers."

4 The Trustee also argues that the Plan and Confirmation order bind the Ehrenberg Plaintiffs and enjoin them from proceeding against the D&O Insurance Policies. During oral arguments, the Ehrenberg Plaintiffs declared that they are not seeking to change the terms of the Confirmation Order and Plan; rather, they are arguing that the Ehrenberg Demand does not violate the terms of the Plan. (Trial Audio 6/7/2017, 3:06:50). Accordingly, the Court sees no reason to address this portion of the Trustee's argument.

5

the Ehrenberg Plaintiffs contend that such recoveries are limited to insurance covering D&O Claims and because the Ehrenberg Demand is not based on a D&O Claim, the terms of the Plan do not limit the Ehrenberg Plaintiffs' effort to settle their claims. Dr. Palmaz and Mr. Solomon align themselves with the Trustee in that the Ehrenberg Demand violates the Bankruptcy Injunction but argue that it violates the Bankruptcy Injunction because the Ehrenberg Plaintiffs lack standing to bring their suit as such claim belongs to the Litigation Trustee.[5] Moreover, Dr. Palmaz and Mr. Solomon argue that the Court should not approve the Ehrenberg Demand because such a piecemeal settlement will frustrate the spirit and purpose of the Confirmation Order, Plan, and Litigation Trust Agreement by creating a non-equitable distribution of the Litigation Trust Assets to the potential detriment of the insureds, whose rights to seek coverage under the D&O Insurance Policies remains unimpaired. In the Ehrenberg Response Supplement, the Ehrenberg Plaintiffs assert that acceptance of the Ehrenberg Demand is consistent with existing case law precedent and therefore the Court should hold that the Ehrenberg Demand does not violate the Bankruptcy Injunction.

## ANALYSIS

### A.   Jurisdiction and Authority

This Court has subject matter jurisdiction to determine whether the Ehrenberg Demand would violate the Bankruptcy Injunction or the Plan. "After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan. ***In re Craig Stores of Texas,***

---

[5] In the Palmaz and Solomon Response, Palmaz and Solmon state that they "agree with the Trustee that the Ehrenberg and Turnball Plaintiffs *Stowers* demands appear to violate the Confirmation Order for the reasons set forth in Dr. Palmaz's motion, ECF No. 420, which is fully incorporated herein. As discussed more fully below, the Court rejected this argument and found that because the Ehrenberg Plaintiffs and Turnball Plaintiffs are bringing direct claims and not D&O Claims, they do have standing to assert such claims.

*Inc.*, 266 F.3d 388, 390 (5th Cir. 2011). Here, the Admiral's Motion implicates execution of the Bankruptcy Injunction and/or the Plan. Specifically, the Bankruptcy Injunction provides:

> Except as otherwise expressly provided in the Plan or this Order, all Persons or entities who have asserted, held, hold or may hold Claims against or Equity Interests in the Debtors are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim against the Debtors, the Reorganized Debtors, the Litigation Trust, the Litigation Trustee, Litigation Trust Assets, or the D&O Insurance Policies . . . .

(ECF No. 356, Confirmation Order ¶ N); (ECF No. 356, Plan § 11.4). Moreover, the Plan provisions speak to the rights of the Litigation Trustee with respect to the D&O Insurance Policies and D&O Insurance Recoveries. As such, the Court maintains jurisdiction and authority to execute the Bankruptcy Injunction and/or Plan provisions.

**B.     Order Granting in Part, and Denying, in Part, Julio Palmaz, M.D.'s Motion for Enforcement of Injunction (ECF No. 485)**

In its Order Granting In Part, and Denying, In Part, Julio Palmaz, M.D.'s Motion for Enforcement of Injunction (ECF No. 485), the Court was asked to enjoin the Turnbull and Ehrenberg Plaintiffs from their state-court lawsuits under the Bankruptcy Injunction. To determine whether the Bankruptcy Injunction applied to their suits, the Court had to decide whether the Turnbull and Ehrenberg Plaintiffs' state-suit claims were "D&O Claims" as defined by the Plan (i.e., whether the claims asserted resulted in "damage to the Debtors"). The Court found:

> The Plan defines "D&O Claims" as
>
>> any and all claims and causes of action arising from any act or omission, including, but not limited to misconduct, misfeasance, malfeasance, breach of fiduciary duty, breach of duty of loyalty, breach of duty of care, breach of duty of obedience, negligence, gross negligence, fraud or any other intentional tort, and any civil conspiracy or civil RICO claims for such misconduct against any current or former officer or director resulting in damage to the Debtors.

> (ECF No. 356, Plan § 1.1). Movant and Trustee argue that the definition of D&O Claims clearly places the Respondents' claims against Dr. Palmaz in the Litigation Trust Assets, which only the Trustee has the standing to assert pursuant to the Confirmation Order. Respondents, however, focus on the qualifying language "resulting in damage to the Debtors" in the definition of D&O Claims, arguing that the definition is not broad enough to capture all claims asserted against Dr. Palmaz. Rather, Respondents assert that the claims which they have brought against Dr. Palmaz in state court are direct claims—not derivative—because their claims did not result in damage to the Debtors.
>
> In interpreting the definition of D&O Claims under the Plan, the Court agrees with Respondents. A plain reading of the definition reflects that the qualifying phrase "resulting in damage to the Debtors" applies to "any and all claims and causes of action arising from any act or admission . . . against any current or former officer and director . . . ." As such, if Respondents assert claims against Dr. Palmaz which did not result in damage to the Debtors, then such claim is not a part of the Litigation Trust Assets and the Confirmation Order does not vest standing to pursue such a claim in the Trustee.

(ECF No. 485, p. 8–9). Ultimately, the Court found that, based on Texas law, the Turnbull Plaintiffs had asserted solely direct claims for which the Plan and Confirmation Order do not provide an Injunction or third-party release. (*Id.* at 15). Accordingly, the Motion to Enforce the Injunction against the Turnbull Plaintiffs was denied. With respect to the Ehrenberg Plaintiffs, the Court granted the Motion to Enforce the Injunction against them because their respective complaint named Palmaz Scientific Inc. (a "Debtor" under the Plan) as a named defendant and raised allegations of derivative claims. (*Id.*) Moreover, the Court required the Ehrenberg Plaintiffs to amend their complaint "within fourteen (14) days to reflect only those causes of action which they believed do not run afoul of the" Bankruptcy Injunction. (*Id.* at 15–16).

C.  **The Ehrenberg Demand**

Admiral has asked the Court to determine whether the Ehrenberg Demand violates the Bankruptcy Injunction. The Court finds that the Ehrenberg Demand does not; however, the Ehrenberg Demand does violate the terms of the Plan by interfering with the Trustee's right to "control . . . all D&O Insurance Recoveries, including negotiations relating thereto and settlements thereof[.]" (ECF No. 356, Plan § 6.6(d)). As such, with respect to the D&O Insurance Policies,

8

Admiral is not permitted to fund the Ehrenberg Demand and the Ehrenberg Plaintiffs are prohibited from continuing with the Ehrenberg Demand against Admiral.

When interpreting the provisions of a chapter 11 plan, the Fifth Circuit applies principles of contract interpretation. *McFarland v. Levh (In re Tex. Gen. Petroleum Corp.)*, 52 F.3d 1330, 1335 (5th Cir. 1995). In Texas, the plain language of a plan, unless ambiguous, represents the parties' intentions. *In re Comm. Energy*, 607 F.3d 153, 160 (5th Cir. 2010) (citation omitted). To ascertain such intent, "courts should examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (emphasis in original). "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Id.* (citing *Myers v. Gulf Coast Minerals Mgmt. Corp.*, 361 S.W.2d 193, 196 (Tex. 1962)). Here, after review of the entire Plan, the Court finds that the Plan is not ambiguous and therefore bases its holding on the plain language of the Plan.

### 1. The Bankruptcy Injunction

The Court begins its analysis by examining the plain language of the Bankruptcy Injunction, which states:

> Except as otherwise expressly provided in the Plan or this Order, all *Persons* or entities who have asserted, held, hold or may hold *Claims* against or *Equity Interests* in the *Debtors* are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such *Claim* against the *Debtors*, *the Reorganized Debtors*,[6] *the Litigation Trust, the Litigation Trustee, Litigation Trust Assets, or the D&O Insurance Policies* . . . .

---

6 The Court notes that "Reorganized Debtor," while capitalized here, is not a defined term in the Plan. The term, however, is not relevant to the Court's analysis and therefore, the Court attaches no significance to the missing definition.

(ECF No. 356, Confirmation Order ¶ N) (emphasis added). The Bankruptcy Injunction's capitalized terms are defined by section 1.1 of the Plan:

> "**Person**" means an individual, partnership, corporation, limited liability company, cooperative, trust, unincorporated organization, association, joint venture, government or agency or political subdivision thereof or any other form of legal entity.
>
> "**Claim**" means any claim against a Debtor within the meaning of section 101(5) of the Bankruptcy Code.
>
> "**Debtors**" means PALMAZ SCIENTIFIC, INC., ADVANCED BIO PROSTHETIC SURFACES, LTD., ABPS MANAGEMENT, LLC, and ABPS VENTURE ONE, LTD., the debtors and debtors in possession under 1107, and 1108 of the Bankruptcy Code
>
> "**D&O Insurance Policies**" means any insurance policy that provides or may provide coverage for D&O Claims and that are or may become available to provide such coverage.
>
> "**Equity Interest Holder**" means a person holding an Allowed Equity Interest as reflected in the Palmaz Scientific Inc.'s books and records as of the Petition Date, including but not limited to Foster and the Hickman investors.
>
> "**Litigation Trust**" means that certain trust that will come into existence on the Effective Date, which shall be formed pursuant to the terms of this Plan and the Trust Agreement, and that shall be governed by the Trust Agreement.
>
> "**Litigation Trust Assets**" means (i) the Expense Funds, (ii) the Causes of Action (iii) [sic] and (iv) the D&O Claims which shall vest in the Litigation Trust on the effective Date.

(ECF No. 356, Plan § 1.1). The Trustee argues that the Ehrenberg Demand is an action or other proceeding against the D&O Insurance Policies and therefore is enjoined by the Bankruptcy Injunction. The Court does not agree because the Trustee's interpretation ignores a critical modifying phrase. Under the Trustee's interpretation, the Bankruptcy Injunction states:

> Except as otherwise expressly provided in the Plan or this Order, all *Persons* or entities who have asserted, held, hold or may hold Claims against or Equity Interests in the Debtors are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind . . . against . . . the D&O Insurance Policies . . . .

To have the Bankruptcy Injunction operate in his favor, the Trustee would have the Court omit the phrase "on any such Claim." This phrase, however, modifies "any action or any proceeding of any

10

kind" thereby limiting the actions or proceedings being enjoined to actions or proceedings based on claims against the Debtor. Because the modifying nature of the phrase imposes a limitation as to the types of actions or proceedings being enjoined, the Court refrains from agreeing with the Trustee's interpretation.

The Ehrenberg Plaintiffs argue that the Bankruptcy Injunction only applies to actions or proceedings based on claims against the Debtor and because their claims are against Dr. Palmaz and Mr. Solomon individually, the Ehrenberg Demand is not enjoined by the Bankruptcy Injunction. The Court agrees. By its express terms, the Bankruptcy Injunction enjoins "commencing or continuing in any manner any action or other proceeding of any kind on any *such Claim* against the Debtors, the Reorganized Debtors, the Litigation Trust, the Litigation Trustee, Litigation Trust Assets, or the D&O Insurance Policies . . . ." (ECF No. 356, Confirmation Order ¶ N) (emphasis added). The Plan defines "Claim" as a "claim against a *Debtor* within the meaning of section 101(5) of the Bankruptcy Code." (ECF No. 356, Plan § 1.1) (emphasis added). Moreover, the term "Claim" is modified by the term "such" signifying that the term has been previously mentioned thereby narrowing the meaning of the term "Claim." Immediately preceding this phrase, the term "Claim" is used to identify to whom the Bankruptcy Injunction applies: "[A]ll Persons or entities who have asserted, held, hold or may hold *Claims against* or Equity Interests in *the Debtors*[.]" (ECF No. 356, Confirmation Order ¶ N) (emphasis added). Thus, "such Claims" refers to Claims belonging to "all Persons or entities who have asserted, held, hold or may hold Claims against . . . the Debtors." Read as a whole, the Bankruptcy Injunction applies to actions or proceedings based on claims against the Debtor.

The Court agrees with the Ehrenberg Plaintiffs inasmuch that the Bankruptcy Injunction does not enjoin their claims because the Ehrenberg Demand is not based on a claim against the

11

Debtor but rather, a claim against Dr. Palmaz and Mr. Solomon individually. Nonetheless, the Court finds that such a finding does not permit Admiral to fund the Ehrenberg Demand. The Bankruptcy Injunction is a function of section 524(a) which operates to "ensure[] that a discharge [received under section 1141] will be completely effective" by enjoining "the commencement or continuation of an action or the employment of process to collect or recover a debt as a personal liability of the [D]ebtors. Thus, it protects the [D]ebtors from a subsequent suit in a state court, or any other act to collect, *by a creditor whose claim had been discharged in the title 11 case*." 1 **COLLIER ON BANKR.** ¶ 524.02, at 524-19 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2017) (emphasis added). Despite the plain language of the Bankruptcy Injunction, the Ehrenberg Demand would not be subject to the Bankruptcy Injunction because it is not based on a claim that was part of the bankruptcy case. Accordingly, the Court finds that the question of whether the Ehrenberg Demand violates the Bankruptcy Injunction is not the proper question for determining whether or not the Ehrenberg Demand can be satisfied by the D&O Insurance Policy Proceeds.

### 2. The Litigation Trust

The Trustee argues that the allowing Admiral to pay the Ehrenberg Demand interferes with the Litigation Trustee's right to control the D&O Insurance Recoveries. The Court agrees.

It is not uncommon for a plan of reorganization to contain provisions that transfer assets to a litigation trust. 1 **COLLIER ON BANKR.** § 21.15[3], at 21-195. Litigation trusts are not expressly addressed in the Bankruptcy Code, but a plan proponent may rely on §§ 1123(a)(5)[7] and 1123(b)(6)[8] of the Bankruptcy Code to establish such a trust as a means to implement a plan so long as it the terms of the trust are not inconsistent with other provisions of the Bankruptcy Code.

---

[7] Section 1123(a)(5) requires a chapter 11 plan to provide adequate means for a plan's implementation. 11 U.S.C.A § 1123(a)(5).
[8] Section 1123(b)(6) allows a chapter 11 plan to "include any other appropriate provision not inconsistent with the applicable provisions" under title 11. 11 U.S.C.A § 1123(b)(6).

*Id.* Here, as a means of implementing the Plan, the Debtors established the Litigation Trust for the purpose of "liquidating and distributing its assets to the Litigation Trust Beneficiaries (who are holders of Classes 5 Equity Interests which are or may be Allowed)[.]" (ECF No. 356, Plan § 6.6(e)). Specifically, the Litigation Trustee is charged to:

> (i) collect and reduce the assets of the Litigation Trust to Cash, (ii) *prosecute, settle or otherwise administer the Litigation Trust Assets,* [sic] (ii) make distributions to the beneficiaries of the Litigation Trust in accordance with the terms of this Plan and the Trust Agreement and (iv) take all such other actions as may be reasonably necessary to accomplish the purposes of this section 6.6 of the Plan, as more specifically set forth in the Trust Agreement.

(*Id.*) The Litigation Trust Assets consist of i) the Expense Funds, (ii) the Causes of Action (iii) [sic] and (iv) the D&O Claims which shall vest in the Litigation Trust on the effective Date. D&O Claims are

> *any and all claims and causes of action* arising from any act or omission, including, but not limited to misconduct, misfeasance, malfeasance, breach of fiduciary duty, breach of duty of loyalty, breach of duty of care, breach of duty of obedience, negligence, gross negligence, fraud or any other intentional tort, and any civil conspiracy or civil RICO claims for such misconduct *against any current or former officer or director resulting in damage to the Debtors*.

(ECF No. 356, Plan § 1.1) (emphasis added). As this Court previously found, the Ehrenberg Plaintiffs' claims are direct claims and not D&O Claims. (ECF No. 485, p. 15).

In addition to transferring the Litigation Trust Assets into the Litigation Trust, the Plan vests the right to control the D&O Claims and all D&O Insurance Recoveries in the Litigation Trust:

> The right to control the D&O Claims and *all* D&O Insurance Recoveries, including negotiations relating thereto and settlements thereof, shall be vested in the Litigation Trust on and after the Effective Date.

(ECF No. 356, Plan § 6.6(d)) (emphasis added). "D&O Insurance Recovery(ies)" means

> (a) *the right to pursue and receive the benefits and/or proceeds of the D&O Insurance Policies*; and (b) the right to pursue and receive recovery from or as a result of any D&O Claims, including but not limited to consequential, contractual,

13

extracontractual and/or statutory damages, or other proceeds, distributions, awards or benefits; and (c) the right to pursue and receive any other recovery related to the D&O Claims.

(*Id.* at § 1.1) (emphasis added). "D&O Insurance Policies" broadly encompass "any insurance policy that provides or may provide coverage for D&O Claims and that are or may become available to provide such coverage." (*Id.*) The parties do not dispute that the Ehrenberg Demand is seeking payment from a D&O Insurance Policy—the Admiral Policy.

The Ehrenberg Plaintiffs argue that the Trustee's right to control all D&O Insurance Recoveries is limited to the extent that such negotiations and settlements relate to D&O Claims because the term "D&O Insurance Recoveries" is limited to insurance covering the D&O Claims. The Court disagrees. The express language of the Plan imposes no such limitation. Under the terms of the Plan, the Trustee has the right to control *all* D&O Insurance Recoveries. (*Id.* at § 6.6(d)) (emphasis added). D&O Insurance Recoveries are comprised of three rights, two of which are limited to recoveries under D&O Claims and one which entitles the Trustee "the right to pursue and receive the benefits and/or proceeds of the D&O Insurance Policies" without a limitation as to the type of claim being pursued. (*Id.* at § 1.1). Moreover, such limitation is not imposed by the definition of D&O Insurance Policies as the term is broadly defined to include any insurance policy that provides or contemplates providing coverage for D&O Claims. (*Id.*). Because the litigation trust vests "control . . . all D&O Insurance Recoveries, including negotiations relating thereto and settlements thereof" in the Trustee and such right is not limited by the type of claim being pursued, the Court finds that the Ehrenberg Demand violates the terms of the Plan.

The Ehrenberg Plaintiffs cite to a line of cases purportedly holding that even where insurance policies themselves are property of the estate, non-debtor insureds have a right equal to the debtor to the benefits provided by such policies. The Court finds these cases to be factually distinguishable as none of these cases involve plan provisions similar to those before the Court.

14

*See **In re MF Global Holdings, Ltd.**,* 469 B.R. 177, 192 (Bankr. S.D.N.Y. 2012); ***In re Global Crossing Securities and ERISA Litig.**,* 225 F.R.D. 436, 463 (S.D.N.Y 2004); ***In re Adelphia Comm'n Corp.**,* 298 B.R. 49, 52–54 (S.D.N.Y. 2003); ***In re Daisy Sys. Sec. Litig.**,* 132 B.R. 752, 755 (N.D. Cal. 1991). Also, two of these cases involve solely the right to use insurance proceeds to advance costs of defense—an issue not before the Court. ***In re MF Global Holdings, Ltd.**,* 469 B.R. at 192; ***In re Adelphia Comm'n Corp.**,* 298 B.R. at 52–54.

The Ehrenberg Plaintiffs also cite a number of cases where courts denied a litigation trustee's attempt to prevent individual shareholders from settling lawsuits against former directors and officers of a debtor. In addition to not being jurisdictionally binding on this Court, the Court finds that the Ehrenberg Plaintiffs' reliance on these cases is misplaced. In each case, the courts found that the trustee had failed to set forth a legal basis for why a trustee's claim to the D&O insurance proceeds held a higher priority than the contending party. ***Boles v. Turner (In re Enivid),*** 364 B.R. 139, 157 (Bankr. D. Mass. 2007) ("[The plan trustees] have not advanced a legitimate reason why their claims against the directors and officers of enivid and Sabine should be elevated to a higher priority than the claims of the [s]hareholder [p]laintiffs, which would be the effect of injunctive relief."); ***Reliance Acceptance Grp., Inc. et al v. Levin et al (In re Reliance Acceptance Grp.)**,* 235 B.R. 548, 561 (D. Del. 1999) ("The difficulty the [d]ebtors have had is in identifying a right to the relief; that is, they have been unable to identify a legal principle that stands for the proposition that the [e]state's claims for relief should take precedence over the [s]hareholder's claims."); ***Ochs v Lipson et al (In re First Cent. Fin. Corp.)**,* 238 B.R. 9, 21 (Bankr. E.D.N.Y. 1999) ("Although debtor liability policies have been shielded from third party suits that threaten to deplete estate assets, the [t]rustee has not pointed to a case, nor are we aware of one, in which a court has protected D&O policy proceeds so as to facilitate a prioritization in favor of a trustee or

15

debtor in possession to such funds."); *In re CHS Electronics, Inc.* 261 B.R. 538, 544 (Bankr. S.D. Fl. 2001) ("Unfortunately, [the chapter 7 trustee] does not cite to, and this [c]ourt is unaware of, any bankruptcy Code provision or case law that would give a bankruptcy trustee any different status than a non-bankruptcy plaintiff with an unliquidated claim against third-parties which may be covered by insurance proceeds about to be used to settle or satisfy a judgment entered in favor of other plaintiffs."). Here, the Trustee has presented to the court such a basis—the Plan provisions granting the Trustee the right to control the D&O Insurance Recoveries.

Lastly, the Ehrenberg Plaintiffs cite to *Collins v. Sydow (In re NC12, Inc.)*, for the proposition that a bankruptcy estate's recovery under directors' and officers' liability coverage will be on identical terms as other injured parties' recovery and that the estate does not have a greater interest in the proceeds than any other person suing on an indemnified claim. 478 B.R. 820, 838 (Bankr. S.D. Tex. 2012). The *Collins* court did indeed make such a statement; however, context in which the statement arose is important to understanding why the case has no bearing on this Court's decision. The issue before the *Collins* court was whether it had "related to" subject matter jurisdiction. *Id.* at 837. To make such a determination, the court had to evaluate the estate's conceivable right to the proceeds of a debtor's D&O insurance policy relative to other third parties. *Id.* In sum, the sole purpose of this assertion was to determine whether the court had related to subject matter jurisdiction and not to determine whether a trustee did or did not have a greater interest in the proceeds than another injured third party.

The *Central Financial* court observed the fact-intensive analysis required to determine which party maintains a superior right, if any, to D&O insurance policy proceeds. *In re First Cent. Fin. Corp.)*, 238 B.R. at 21 ("We might reach a different result given different facts."). The fact that the Plan provisions grant the Trustee the right to control the D&O Insurance Recoveries,

including negotiations relating thereto and settlements thereof, grants the Trustee a superior right to the D&O insurance proceeds as it relates to the Ehrenberg Plaintiffs.

Based on the foregoing analysis, the Court finds that the Ehrenberg Demand interferes with the Trustee's right to control D&O Insurance Recoveries and therefore, with respect to the D&O Insurance Policies, Admiral is not permitted to fund the Ehrenberg Demand and the Ehrenberg Plaintiffs are prohibited from continuing with the Ehrenberg Demand against Admiral.

## CONCLUSION

IT IS THEREFORE ORDERED that Admiral is not permitted to fund the Ehrenberg Demand with respect to the D&O Insurance Policies.

IT IS FURTHER ORDERED THAT the Ehrenberg Plaintiffs are prohibited from continuing with the Ehrenberg Demand against Admiral with respect to the D&O Insurance Policies.

All other relief not specifically granted herein is DENIED.

# # #